## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## TRENTON VICINAGE

| | |
|---|---|
| **DELAWARE RIVER PORT AUTHORITY,** | |
| **Plaintiff,** | **Civil Action No. 3:24-cv-8186** |
| **v.** | |
| **KEVIN D. WALSH, Acting New Jersey State Comptroller, in his official capacity,** | |
| **Defendant.** | |

## COMPLAINT

Plaintiff, the Delaware River Port Authority (the "DRPA"), by and through its attorneys, Archer & Greiner, P.C., in support of its Complaint against Defendant Kevin D. Walsh, Acting New Jersey State Comptroller, in his official capacity (the "NJ Comptroller"), allege and state as follows:

## I.    NATURE OF THE ACTION

1.    The DRPA brings this action based upon the NJ Comptroller's improper attempt to unilaterally apply New Jersey laws against the DRPA in contravention of federal law and the interstate compact between the Commonwealth of Pennsylvania and the State of New Jersey, authorized under the United States Constitution and approved by the United States Congress, through which the DRPA was created and empowered (the "Compact", attached as **Exhibit 1**).

2.    As a bi-state entity created pursuant to an interstate compact ratified by the United States Congress pursuant to the Compact Clause of the United States Constitution, the DRPA is,

1

as a matter of well-established federal law, not subject to unilateral regulation by either of the creator states.

3.     The NJ Comptroller's attempt to conduct investigations under authority granted to the NJ Comptroller under New Jersey law, and to further those investigations by issuing subpoenas under New Jersey law in an attempt to compel the DRPA to provide documents and witness testimony, infringes upon the DRPA's sovereign authority under the Compact and deprives the DRPA of its liberty, rights and privileges secured under the United States Constitution and federal law.

## II.     PARTIES

4.     The DRPA is a bi-state agency created pursuant to the Compact between the Commonwealth of Pennsylvania and the State of New Jersey, and authorized by the United States Congress.  The DRPA has offices at One Port Center, 2 Riverside Drive, Camden, New Jersey 08103.

5.     Kevin D. Walsh is the Acting New Jersey State Comptroller, with his office located at 20 West State Street, Trenton, New Jersey 08625.  The DRPA brings this action against Mr. Walsh in his official capacity as the Acting New Jersey State Comptroller.

## III.     JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, which grants original jurisdiction for all civil actions arising under the Constitution and the laws of the United States to the federal district courts.

7.     Specifically, this action arises under and involves interpretation of a compact between two states – Pennsylvania and New Jersey – which was ratified by Congress pursuant to the Compact Clause of the United States Constitution, U.S. Const. art. I, § 10, cl. 3.

8.      The interpretation of a bi-state compact approved by Congress presents a federal question.  International Union of Operating Eng'rs, Local 542 v. Delaware River Joint Toll Bridge Comm'n, 311 F.3d 273, 275 (3d Cir. 2002)

9.      Additionally, this action seeks declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.

10.     Venue is properly laid in the District of New Jersey pursuant to 28 U.S.C. § 1391, as all claims arise from events which took place in this district and the sole defendant resides in the State in which the District of New Jersey is located.

## IV.     FACTUAL BACKGROUND

### A.      The Creation of the Delaware River Port Authority

11.     In 1931, the State of New Jersey and the Commonwealth of Pennsylvania created the direct predecessor to the DRPA, the Delaware River Joint Commission.  N.J.S.A. §§ 32:3–1 to –18; Pa. Stat. Ann. tit. 36, §§ 3503 - 3509.

12.     The interstate compact (i.e., the Compact) was approved by the United States Congress in 1932.  Pub. Res. 26, ch. 258, 47 Stat. 308 (1932).

13.      The Delaware River Joint Commission was created for the purpose of developing and maintaining interstate transportation routes, namely bridges and port facilities, between the two states.  N.J.S.A. § 32:3–2; Pa. Stat. Ann. tit. 36, § 3503, art. I.

14.     In 1951, New Jersey and Pennsylvania changed the name of the Delaware River Joint Commission to the Delaware River Port Authority.

15.     "Bistate entities occupy a significantly different position in our federal system than do the States themselves.  The States, as separate sovereigns, are the constituent elements of the Union.  Bistate entities, in contrast, typically are creations of three discrete sovereigns: two

3

States and the Federal Government." Hess v. Port Auth. Trans-Hudson Corp., 513 U.S. 30, 40

(1994).

16.     "Because Compact Clause entities owe their existence to state and federal

sovereigns acting cooperatively, and not to any one of the United States, their political

accountability is diffuse; they lack the tight tie to the people of one State that an instrument of a

single State has . . . ." Id. at 42 (internal quotation marks and citation omitted).  "'An interstate

compact, by its very nature, shifts a part of a state's authority to another state or states, or to the

agency the several states jointly create to run the compact.'" Id. (quoting M. Ridgeway,

Interstate Compacts: A Question of Federalism 300 (1971)) (emphasis added).

17.     "Bistate entities thus are not 'extensions of each compacting state's authority,' but

are instead formed through each state's surrender of a portion of its sovereignty to the compact

entity." Spence-Parker v. Delaware River & Bay Auth., 616 F. Supp.2d 509, 515 (D.N.J. 2009)

(quoting Int'l Union of Op. Eng'rs, 311 F.3d at 275).

18.     "[B]istate entities created by compact . . . are not subject to the unilateral control

of any one of the States.'" Hess, 513 U.S. at 42.

**B.      The DRPA's Powers Granted and Duties Created Under the Compact**

19.     The Compact provides the DRPA with independent authority to perform a vast

number of essential government functions including, but not limited to, the operation and

maintenance of bridges, development of the Port District, studying and making recommendations

for the improvement of terminal, wharfage, warehouse, lighterage and other facilities necessary

for the promotion of commerce on the Delaware River, and the establishment and operation of a

rapid transit system. See Compact, Art. I.

20.     The Compact places external reporting requirements on the DRPA, including that

the DRPA will, within 90 days after the end of each fiscal year, submit to the governors and

4

legislatures of the Commonwealth of Pennsylvania and the State of New Jersey a complete and

detailed report of the following:

> (1) its operations and accomplishments during the completed fiscal
> year; (2) its receipts and disbursements or revenues and expenses
> during that year in accordance with the categories and
> classifications established by the Commission for its own operating
> and capital outlay purposes; (3) its assets and liabilities at the end
> of the fiscal year, including the status of reserve, depreciation,
> special or other funds including debits and credits of these funds;
> (4) a schedule of bonds and notes outstanding at the end of the
> fiscal year; (5) a list of all contracts exceeding $100,000 entered
> into during the fiscal year; (6) a business or strategic plan for the
> Commission and for each of its operating divisions; and (7) a five
> year capital plan.  Compact, Art. XII.

21.     The DRPA has consistently fulfilled its external reporting obligations under the

Compact.

22.     The Compact explicitly envisions that the DRPA – not either Pennsylvania or

New Jersey – shall investigate or otherwise audit the operational effectiveness of the DRPA.

The Compact states, in pertinent part:

> Not less than once every five years, the Commission shall cause a
> management audit of its operational effectiveness and efficiency to
> be conducted by an independent consulting firm selected by the
> commission. The first management audit to be conducted shall
> commence within 3 years of the date of coming into force of the
> supplemental compact or agreement authorized by this 1991
> Amendatory Act. This audit is in addition to any other audit which
> the Commission determines to conduct from time to time.
> Compact Art. XII (7).

23.     The Compact contains no language subjecting the DRPA to the jurisdiction of the

NJ Comptroller.

24.     The Compact contains no language subjecting the DRPA to the provisions of any

New Jersey law relating to investigation of New Jersey state agencies or their operations.

25.     The Compact contains a sweeping catch-all provision, giving the DRPA the authority:

> To exercise all other powers not inconsistent with the constitutions of the two States or of the United States, which may be reasonably necessary or incidental to the effectuation of its authorized purposes or to the exercise of any of the foregoing powers, except the power to levy taxes or assessments, and generally to exercise in connection with its property and affairs, and in connection with property within its control any and all powers which might be exercised by a natural person or a private corporation in connection with similar property and affairs.  Compact, Art. IV(n).

26.      The language quoted in the preceding Paragraph of this Complaint has been recognized by the Court of Appeals for the Third Circuit as constituting a broad surrender of sovereign authority, see Delaware River Joint Toll Bridge Commission v. Secretary Pennsylvania Department of Labor & Indus., 985 F.3d 189, 196 (3d Cir. 2021), such that New Jersey and Pennsylvania are regarded to have ceded sovereign authority to the DRPA over all subjects touched upon by the Compact, except as *expressly* reserved by one or both of the creator states.

27.     As the Compact delegates authority to the DRPA on the subject of conducting audits of management and operational activities, as well as providing reports regarding financial and operational activities to the governors of the respective creator states, the creator states have ceded their sovereign authority to the DRPA on such subject matters.

**C.     NJ Comptroller's Issuance of Subpoenas to the DRPA**

28.     The NJ Comptroller has attempted to enforce New Jersey law against the DRPA by issuing the subpoenas for documents and oral testimony and threatening to hold the DRPA in contempt and issue penalties for any non-compliance with the subpoenas.

29.     On July 2, 2024, the Comptroller served the DRPA with a subpoena duces tecum, attached hereto as **Exhibit 2** (the "Documents Subpoena"), stating that the DRPA was

6

"commanded" to search for, gather and provide documents related to seven separate categories of requested information.

30.     The Documents Subpoena demanded that a representative of the DRPA bring all of the requested information to the Office of the State Comptroller at 20 West State Street, 12th Floor, Trenton, New Jersey 08625 by July 16, 2024.

31.     In lieu of brining the documents directly to the NJ Comptroller, the DRPA was directed in the Documents Subpoena to mail or e-mail copies of the documents to the Investigation Division of New Jersey's Office of the State Comptroller, and include a signed certification which states that if any of the statements made in the certification are willfully false, the DRPA is "subject to punishment."

32.     The Documents Subpoena further states that "[t]his Subpoena is issued pursuant to the authority granted to the Office of the State Comptroller as set forth in N.J.S.A. § 52:15B-1 et seq. and N.J.S.A. § 52:15C-1 et seq.  Failure to comply with this Subpoena may render you liable for contempt of court and such other penalties as are provided by law."

33.     Instruction #3 of the Documents Subpoena states, in part:

> You have a continuing obligation to respond to this Subpoena,
> even after producing documents to the Office of the State
> Comptroller.  Therefore, if after you respond to this Subpoena, you
> create or receive a document or documents that this Subpoena
> seeks, you must promptly produce the document or documents to
> the Office of the State Comptroller.

34.     Instruction #3 of the Document Subpoena demands that the DRPA monitor its files on an ongoing basis, even after fully responding to the subpoena, and produce additional information to the NJ Comptroller on a perpetual basis for an unspecified period of time into the future.

35.     Instruction #11 of the Document Subpoena demands full "compliance" with the subpoena and "[i]f compliance with this Subpoena cannot be made in full, compliance shall be made to the fullest extent possible and shall include an explanation of how the compliance is less than full and why fuller compliance is not possible."

36.     On July 17, 2024, the Investigations Division sent a second subpoena to the DRPA, a subpoena ad testificandum, attached hereto as **Exhibit 3** (the "Testimony Subpoena"). This new subpoena "commanded" the DRPA to appear at the NJ Comptroller's Office in Trenton, New Jersey and provide sworn testimony on August 8, 2024.  The NJ Comptroller subsequently, by email dated July 29, 2024, changed the date for testimony to September 10, 2024.

37.     The Testimony Subpoena purports to require the DRPA to provide testimony concerning the DRPA's collection and maintenance of records, and practices and procedures for responding to requests for information from government entities.

38.     The Testimony Subpoena states that "[t]his Subpoena is issued pursuant to the authority granted to the Office of the State Comptroller as set forth in N.J.S.A. § 52:15B-1 et seq. and N.J.S.A. § 52:15C-1 et seq."

39.     The Testimony Subpoena also states that "[f]ailure to comply with this Subpoena may render you liable for contempt of court and such other penalties as provided by law."

40.     Instruction #2 of the Testimony Subpoena states that the DRPA has a "continuing obligation to respond to this subpoena."  In fact, the instruction states that the DRPA would have to appear for subsequent, additional depositions pursuant to the DRPA's ongoing obligations to respond to the subpoena for testimony.

41.     In short, the NJ Comptroller is demanding that the DRPA submit to the subpoena power of the NJ Comptroller on a perpetual basis.

42.     The DRPA, through its outside counsel, contacted the NJ Comptroller's Investigations Division and offered to voluntarily provide the documents requested in the Documents Subpoena, in exchange for the NJ Comptroller withdrawing the Subpoenas.  That offer was not accepted.

**D.      The NJ Comptroller and the New Jersey Laws that the NJ Comptroller is Attempting to Unilaterally Apply to the DRPA**

43.     The Documents and Testimony Subpoenas (together, the "Subpoenas") were issued by the New Jersey Office of State Comptroller's Investigation Division ("Investigations Division"), purportedly pursuant to authority established in two New Jersey statutes, N.J.S.A. § 52:15C-1 et seq. (the "Comptroller Statute") and N.J.S.A. § 52:15B-1 et seq. (the "Inspector General Statute").

44.     New Jersey's Legislature created the Office of the State Comptroller, and the position of NJ Comptroller, through the Comptroller Statute in 2007.

45.     The Investigations Division was formed in 2010 after the New Jersey Legislature consolidated the powers of New Jersey's Office of the Inspector General under the Office of the State Comptroller.

46.     According to the Office of the State Comptroller's website, "the Investigations Division is tasked with detecting and uncovering fraud, waste and abuse in New Jersey government through investigations, evaluations, inspections, and reviews.  See Office of the State Comptroller's website, What We Do Page, available at, https://www.nj.gov/comptroller/about/ work/investigations/.

47.     The NJ Comptroller purports to serve as "New Jersey's watchdog," seeking to promote "accountability and transparency across government and to advocate on behalf of taxpayers."  See Comptroller Website, Meet Kevin Walsh page, available at https://www.nj.gov/comptroller /about/director/.

48.     Law in the Third Circuit definitively establishes that one creator state can apply its statutes to a bi-state entity like the DRPA *only* in two limited circumstances: (1) if expressly authorized in the interstate compact, or (2) if the application of the particular statute to the bi-state entity was expressly "concurred in" by legislation of the other creator state.  See Int'l Union of Op. Eng'rs, 311 F.3d at 276-79.

49.     New Jersey and Pennsylvania have not mutually enacted legislation expressly concurring in the application of either the Comptroller Statute or the Inspector General Statute to the DRPA.

50.     In enacting the Comptroller Statute, the New Jersey State Legislature found that:

> As the size of State and local government agencies and authorities has grown over the last several decades to meet growing demands for governmental assistance and programs to meet new and growing societal needs, the State's ability to manage the various governmental systems of public financial control and accountability has not matched the State Government's responsibility to subject governmental financial activities to uniform, meaningful, and systematic public scrutiny.
> N.J.S.A. 52:15C-1.

51.     The powers and duties of the NJ Comptroller are described in Section 5 of the Comptroller Statute, which provides, in relevant part:

> The Office of the State Comptroller shall be responsible for conducting, in accordance with section 8 of this act, routine, periodic and random audits *of the Executive branch of State government, including all entities exercising executive branch authority, public institutions of higher education, independent State authorities, units of local government and boards of education* and for conducting assessments of the performance and

10

management of programs ***of the Executive branch of State
government, including all entities exercising executive branch
authority, public institutions of higher education, independent
State authorities, units of local government and boards of
education*** and the extent to which they are achieving their goals
and objectives. The Office of the State Comptroller shall also serve
as the office in which the Office of the State Inspector General,
which shall be responsible for all the duties assigned pursuant to
P.L.2005, c. 119 (C.52:15B-1 et seq.), is allocated within the
Department of the Treasury.  <u>N.J.S.A.</u> 52:15C-5.a. (emphasis
added).

52.     Thus, the NJ Comptroller's legislatively-designated responsibility and authority

applies only to "the Executive branch of [New Jersey] State government".

53.     The DRPA is not an independent State authority within the meaning of the

Comptroller Statute, nor is the DRPA within the Executive Branch of the New Jersey state

government.

54.     Section 14 of the Comptroller Statute, under the heading "Mandated assistance

and cooperation of other governmental entities; access to records; public inspection; providers

under governmental contracts", describes the NJ Comptroller's authority to obtain records and

the duty of entities within the Executive Branch of the New Jersey State government to comply

with the NJ Comptroller's records requests:

a. ***All units in the Executive branch of State government,
including entities exercising Executive branch authority,
independent State authorities, public institutions of higher
education, units of local government and boards of education***
and their employees shall provide full assistance and cooperation
with any audit, performance review or contract review by the State
Comptroller.

b. ***The State Comptroller shall have complete access to all
"government records" of "public agencies," as those terms are
defined pursuant to section 1 of P.L.1995,c.23 (C.47:1A-1.1)***,
including all information listed as confidential and specifically
excluded as a "government record," in section 1 of P.L.1995,c.23
(C.47:1A-1.1). Provided however, that any information listed as
confidential and specifically excluded as a "government record," in

> that section, to which the State Comptroller shall have access, shall directly relate to a program or expenditure that is the subject of an audit, performance review or contract review by the State Comptroller, and provided further that if a public agency provides the State Comptroller with access to information that is subject to a confidentiality agreement, the public agency shall promptly notify the parties to the agreement that the information is being provided to the State Comptroller.  <u>N.J.S.A.</u> 52:15C-14a.-b. (emphasis added).

55.    "Public agencies" as defined within New Jersey's Open Public Records Act, section 1 of P.L.1995, c.23 (C.47:1A-1.1), does not include bi-state authorities like the DRPA.

56.    The DRPA is not subject to New Jersey's Open Public Records Act.

57.    The Comptroller Statute does not expressly purport to apply to the DRPA nor does it expressly purport to apply in general to all bi-state authorities for which New Jersey was one of the creator states.

58.    The Inspector General Statute focuses on ensuring that New Jersey State funding is spent in a responsible manner.

59.    The Inspector General Statute authorizes the creation of a "program of investigation, to receive and investigate complaints concerning alleged fraud, waste, abuse, or mismanagement of ***State funds***, designed to provide increased accountability, integrity, and oversight of: ***all recipients of State funds***, including, but not limited to, State departments and agencies, independent authorities, county and municipal governments, and boards of education."  <u>N.J.S.A.</u> 52:15B-7 (emphasis added).

60.    The Inspector General Statute empowers the Inspector General with the authority to investigate:

> the awarding and the execution of ***contracts awarded by the State***, or any of its independent authorities, commissions, boards, agencies, or instrumentalities, which contracts involve a significant expenditure of public funds or are comprised of complex or unique components, or both, as determined by the Inspector General; and

> [to investigate] the performance of governmental officers, employees, appointees, functions, and programs in order to promote efficiency, to identify cost savings, and to detect and prevent misconduct within the programs and operations of any governmental agency funded by, or disbursing, ***State funds***.  Id. (emphasis added).

61.     The DRPA is not dependent upon funds from the State of New Jersey, but rather is self-funded, deriving its operating funds from issuance of bonds and from revenue from tolls on bridges operated by the DRPA and fares from the transit system operated by the DRPA's subsidiary, the Port Authority Transit Corporation.

62.     The essence of the Inspector General statute is that the power to investigate exists to protect State funds from mismanagement.

63.     To that end, the Inspector General is authorized in connection with an investigation into the potential mismanagement of State funds to issue subpoenas for documents and testimony.  See N.J.S.A. 52:15B-8(c).

64.      The provision of the Inspector General Statute authorizing issuance of subpoenas states:

> In furtherance of an investigation, the Inspector General may compel at a specific time and place, by subpoena, the appearance and sworn testimony of any person whom the Inspector General reasonably believes may be able to give information relating to a matter under investigation. For this purpose, the Inspector General is empowered to administer oaths and examine witnesses under oath, and compel any person to produce at a specific time and place, by subpoena, any documents, books, records, papers, objects, or other evidence that the Inspector General reasonably believes may relate to a matter under investigation.  Id.

65.     The Inspector General Statute does not expressly purport to apply to the DRPA nor does it expressly purport to apply in general to all bi-state authorities for which New Jersey was one of the creator states.

13

66.     Pennsylvania has not enacted legislation expressly purporting to concur in the application of either the Comptroller Statute or the Inspector General Statute to the DRPA.

67.     According to the Pennsylvania Auditor General's website, the "Pennsylvania Department of the Auditor General is the chief fiscal watchdog of the commonwealth. It is responsible for using audits to ensure that all state money is spent legally and properly." See https://www.paauditor.gov/about-the-department.

68.     The powers and duties of the Auditor General are set forth in 72 P.S. § 401, et seq. (the "Auditor General Statute").

69.     The Auditor General Statute does not contain any language purporting to apply to the DRPA.

70.     The Auditor General Statute does not contain any language purporting to concur in application of the Comptroller Statute or Inspector General Statute to the DRPA specifically or in general to all bi-state authorities for which New Jersey was one of the creator states.

71.     The NJ Comptroller's attempt to apply the Comptroller Statute and the Inspector General Statute to the DRPA, or to attempt to exercise against the DRPA investigatory and/or subpoena authority granted to the NJ Comptroller under the Comptroller Statute or the Inspector General Statute is improper, illegal, and invalid.

## COUNT I

## DECLARATORY JUDGMENT

72.     The DRPA incorporates each and every one of the preceding paragraphs as if set forth herein at length.

73.     There is a genuine and bona fide dispute and actual controversy and disagreement between the DRPA and the NJ Comptroller regarding the enforceability of certain New Jersey laws against the DRPA.

14

74. The NJ Comptroller's attempts to unilaterally impose legal obligations on the DRPA through the Subpoenas issued to the DRPA pursuant to the Comptroller Statute and the Inspector General Statute infringes on the protections afforded the DRPA in the Compact and is a violation of federal law.

75. The NJ Comptroller's assertion that the DRPA is subject to the unilateral regulation of the Office of the Comptroller, and that the DRPA is subject to the NJ Comptroller's investigatory and subpoena powers under the Comptroller Statute and the Inspector General Statute has given rise to a case of actual controversy in this Court's jurisdiction, requiring a declaration of the rights and other legal relations of the parties concerning the Compact and the Comptroller's authority over the DRPA.

**WHEREFORE**, pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, the DRPA respectfully requests that this Court determine the rights and legal relations between the DRPA and the NJ Comptroller, and declare the following:

a) Pursuant to the terms of the Compact, the Comptroller Statute and the Inspector General Statute do not apply to the DRPA;

b) The NJ Comptroller has no authority to investigate the DRPA and/or issue subpoenas to the DRPA, under the Comptroller Statute or the Inspector General Statute, or any other laws or regulations;

c) The Subpoenas are hereby invalid and unenforceable; and

d) The NJ Comptroller has no authority to compel the DRPA to participate in or cooperate with investigations by New Jersey's Office of the State Comptroller.

## COUNT II

### INJUNCTIVE RELIEF

76.     The DRPA incorporates each and every one of the preceding paragraphs as if set forth herein at length.

77.     The NJ Comptroller's demands that the DRPA comply with the Subpoenas infringes on the DRPA's sovereign authority and rights under the Compact, the United States Constitution, and other federal law.

78.     The NJ Comptroller's attempted unilateral regulation of the DRPA through the issuance of the Subpoenas violates the Compact and the Compact Clause of the United States Constitution, and contravenes the balance of interests agreed to between the State of New Jersey and its interstate compact partner, the Commonwealth of Pennsylvania.

79.     Without the issuance of injunctive relief, the DRPA will face immediate, irreparable and extraordinary harm resulting from the NJ Comptroller's unlawful actions.

80.     This irreparable harm will damage the DRPA and the public's interest in upholding the Congressionally-approved Compact.

81.     The public interest favors New Jersey's and Pennsylvania's purposeful surrender of a portion of their sovereign authority to the DRPA "in order to better serve the regional interest" by coordinating and streamlining the governance of transit operations within the Port District.  See Int'l Union of Op. Eng'rs, 311 F.3d at 276.

82.     The irreparable harm the DRPA will suffer absent injunctive relief includes, but is not limited to, erosion of the protections against current and future denials of the DRPA's rights under the Compact.

83.     In contrast, no harm will result if the requested injunctive relief is issued.  The NJ Comptroller has no authority or jurisdiction to unilaterally regulate or investigate the DRPA

through the Comptroller or Inspector General Statutes, and, therefore, has no authority to issue the Subpoenas to the DRPA.

84.     The legislatures of New Jersey and Pennsylvania have not passed any laws evincing an "express intent" to subject the DRPA to the unilateral imposition of the NJ Comptroller's investigatory and subpoena authority.  Accordingly, it is likely that the DRPA will succeed on the merits of its claim for declaratory judgment.

**WHEREFORE**, the DRPA respectfully requests that this Court enter judgment in its favor and as follows:

a)     Entering preliminary and permanent injunctions, enjoining the NJ Comptroller from attempting to enforce the Subpoenas against the DRPA;

b)     Entering preliminary and permanent injunctions enjoining the NJ Comptroller from issuing any further subpoenas to the DRPA pursuant to the Comptroller Statute, the Inspector General Statute or any other law or regulation;

c)     Entering preliminary and permanent injunctions enjoining the NJ Comptroller from attempting to compel the DRPA's participation or cooperation with investigations by New Jersey's Office of State Comptroller; and

d)     Providing such other relief as this Court may deem just and equitable.

Date: July 31, 2024

_____

CHRISTOPHER R. GIBSON, ESQUIRE
ARCHER & GREINER
A Professional Corporation
1025 Laurel Oak Road
Voorhees, NJ 08043
(856) 795-2121
cgibson@archerlaw.com
*Attorneys for Plaintiff, Delaware River Port Authority*

## CERTIFICATION PURSUANT TO L. CIV. R. 11.2

Pursuant to Local Civil Rule 11.2, I hereby certify that the matter in controversy is not the subject of other actions.

Date: July 31, 2024

CHRISTOPHER R. GIBSON, ESQUIRE
ARCHER & GREINER
A Professional Corporation
1025 Laurel Oak Road
Voorhees, NJ 08043
(856) 795-2121
cgibson@archerlaw.com
*Attorneys for Plaintiff, Delaware River Port Authority*

229178204 v2

18

# EXHIBIT 1

**An Agreement**

**Between**

**The Commonwealth of Pennsylvania**

**and**

**The State of New Jersey**

ARTICLE I

The body corporate and politic, heretofore created and known as the Delaware River Joint Commission hereby is continued under the name of the Delaware River Port Authority (hereinafter in this agreement called the "Commission"), which shall constitute the public corporate instrumentality of the Commonwealth of Pennsylvania and the State of New Jersey for the following public purposes, and which shall be deemed to be exercising an essential governmental function in effectuating such purposes, to wit:

(a) The operation and maintenance of the bridge, owned jointly by the two States, across the Delaware River between the city of Philadelphia in the commonwealth of Pennsylvania and the city of Camden, in the State of New Jersey, including its approaches, and the making of additions and improvements thereto.

(b) The effectuation, establishment, construction, acquisition, operation, and maintenance of railroad or other facilities for the transportation of passengers across any bridge or tunnel owned or controlled by the commission, including extensions of such railroad or other facilities necessary for efficient operation in the Port District.

(c) The improvement and development of the Port District for port purposes by or through the acquisition, construction, maintenance, or operation of any and all projects for the improvement and development of the Port District for port purposes, or directly related thereto, either directly by purchase, lease, or contract, or by lease or agreement with any other public or private body or corporation or in any other manner.

(d) Co-operation with all other bodies interested or concerned with, or affected by the promotion, development or use of the Delaware River and the Port District.

(e) The procurement from the government of the United States of any consents which may be requisite to enable any project within its powers to be carried forward.

(f) The construction, acquisition, operation and maintenance of other bridges and tunnels across or under the Delaware River, between the city of Philadelphia or the county of Delaware in the Commonwealth of Pennsylvania, and the State of New Jersey, including approaches and the making of additions and improvements thereto.

(g) The promotion as a highway of commerce of the Delaware River, and the promotion of increased passenger and freight commerce on the Delaware River and for such purpose the publication of literature and the adoption of any other means as may be deemed appropriate.

1

(h) To study and make recommendations to the proper authorities for the improvement of terminal, lighterage, wharfage, warehouse and other facilities necessary for the promotion of commerce on the Delaware River.

(i) Institution through its counsel, or such other counsel as it shall designate, or intervention in, any litigation involving rates, preferences, rebates, or other matters vital to the interest of the Port District; provided, that notice of any such institution of or intervention in litigation shall be given promptly to the Attorney General of the Commonwealth of Pennsylvania and to the Attorney General of the State of New Jersey, and provision for such notices shall be made in a resolution authorizing any such intervention or litigation and shall be incorporated in the minutes of the commission.

(j) The establishment, maintenance, rehabilitation, construction and operation of a rapid transit system for the transportation of passengers, express mail, and baggage, or any of them, between points in New Jersey within the Port District and points in Pennsylvania within the Port District, and intermediate points.  Such system may be established either by utilizing existing rapid transit systems, railroad facilities, highways, and bridges within the territory involved or by the construction or provision of new rail facilities where deemed necessary, and may be established either directly by purchase, lease, or contract, or by lease or agreement with any other public or private body or corporation, or in any other manner.

(k) The performance of such other functions which may be of mutual benefit to the Commonwealth of Pennsylvania and the State of New Jersey insofar as concerns the promotion and development of the Port District for port purposes and the use of its facilities by commercial vessels.

(l) The performance or effectuation of such additional bridge, tunnel, railroad, rapid transit, transportation, transportation facility, terminal, terminal facility, and port improvement and development purposes within the Port District as may hereafter be delegated to or imposed upon it by the action of either State concurred in by legislation of the other.

(m) The unification of the ports of the Delaware River through (i) the acquisition or taking control of any terminal, terminal facility, transportation facility or marine terminal or port facility or associated property within the Port District through purchase, lease, or otherwise, or by the acquisition, merger, becoming the successor to or entering into contracts, agreements, or partnerships with any other port corporation, port authority, or port related entity which is located within the Port District, all in accordance with the applicable laws of the State in which the facility, corporation or authority is located; (ii) the exercise of the other powers granted by this compact; or (iii) the establishment (whether solely or jointly with any other entity or entities) of such subsidiary corporation or corporations or maritime or port advisory committees as may be necessary or desirable to effectuate this purpose.

(n) The planning, financing, development, acquisition, construction, purchase, lease, maintenance, marketing, improvement and operation of any project, including but not limited to any terminal, terminal facility, transportation facility, or any other facility of commerce or economic development activity; from funds available after appropriate allocation for maintenance of bridge and other capital facilities.

2

*Ref:    Pennsylvania, 1992, April 3, P.L. 57, No. 19, ' 1, imd. effective;
36 P.S. ' 3503
New Jersey, P.L. 1991, c. 515, ' 2, eff. Jan. 19, 1992; N.J.S.A. 32:3-2.*


## ARTICLE II


The Commission shall consist of sixteen Commissioners, eight resident voters of the Commonwealth of Pennsylvania and eight resident voters of the State of New Jersey, who shall serve without compensation.

The Commissioners for the State of New Jersey shall be appointed by the Governor of New Jersey with the advice and consent of the Senate of New Jersey, for terms of five years, and in case of a vacancy occurring in the office of commissioner during a recess of the Legislature, it may be filled by the Governor by an ad interim appointment which shall expire at the end of the next regular session of the Senate unless a successor shall be sooner appointed and qualify and, after the end of the session, no ad interim appointment to the same vacancy shall be made unless the Governor shall have submitted to the Senate a nomination to the office during the session and the Senate shall have adjourned without confirming or rejecting it, and no person nominated for any such vacancy shall be eligible for an ad interim appointment to such office if the nomination shall have failed of confirmation by the Senate.

Six of the eight Commissioners for the Commonwealth of Pennsylvania shall be appointed by the Governor of Pennsylvania for terms of five years.  The Auditor General and the State Treasurer of said Commonwealth shall be ex officio Commissioners for said Commonwealth, each having the privilege of appointing a representative to serve in his place at a meeting of the Commission which he does not attend personally.

Any commissioner who is an elected public official shall have the privilege of appointing a representative to serve and act in his place at any meeting of the Commission which he does not attend personally.

All Commissioners shall continue to hold office after the expiration of the terms for which they are appointed or elected until their respective successors are appointed and qualify, but no period during which any commissioner shall hold over shall be deemed to be an extension of his term of office for the purpose of computing the date on which his successor's term expires.

*Ref:    Pennsylvania, 1992, April 3, P.L. 57, No. 19, ' 1, imd. effective;
36 P.S. ' 3503
New Jersey, P.L. 1991, c. 515, ' 3, eff. Jan. 19, 1992; N.J.S.A. 32:3-3.*


## ARTICLE III

The Commissioners shall have charge of the Commission's property and affairs and shall for the purpose of doing business constitute a board, but no action of the Commissioners shall be binding unless a majority of the members of the Commission from Pennsylvania and a majority of the members of the Commission from New Jersey shall vote in favor thereof.

Notwithstanding the above, each State reserves the right to provide by law for the exercise of a veto power by the Governor of that State over any action of any commissioner from that State at any time within 10 days (Saturdays, Sundays, and public holidays in the particular State excepted) after receipt at the Governor's office of a certified copy of the minutes of the meeting at which such vote was taken.  Each State may provide by law for the manner of delivery of such minutes, and for notification of the action thereon.

*Ref:   Pennsylvania, 1992, April 3, P.L. 57, No. 19, ' 1(1), imd. effective; 36 P.S. ' 3503*
*New Jersey, P.L. 1991, c. 515, ' 4, eff. Jan. 19, 1992; N.J.S.A. 32:3-4*

## Minutes of Meetings Delivered to the Governor; ten day veto power

a.      The minutes of every meeting of the Delaware River Port Authority, established under R.S. 32:3-1 et seq., shall, as soon as possible after the meeting, be delivered, by and under the certification of the secretary of the authority, to the Governor of the State of New Jersey, at the State House, in Trenton.

b.      No action taken by a New Jersey Commissioner at the meeting shall have force or effect for a period of 10 days, excepting Saturdays, Sundays and State public holidays, after the minutes have been delivered to the Governor under this section, unless the Governor approves the minutes, or any part thereof, in writing, by reciting the action approved, within this 10-day period. This veto power shall not be construed to affect the covenants contained in the bonds of the authority.

*Ref:   New Jersey, P.L. 1991, c. 516, ' 1, eff. Jan. 19, 1992; N.J.S.A. 32:3-4a.*

## Failure to return minutes within ten-day period; force and effect of commissioner's action

The Governor of New Jersey shall return the minutes to the Delaware River Port Authority, not later than the 10-day period described in subsection b. of section 1 of this act, either with or without a veto of any action recited in the minutes to have been taken by a

4

commissioner appointed from New Jersey. If the Governor does not return the minutes within the 10-day period, the action taken by the New Jersey commissioners shall have the force and effect as recited in the minutes, according to the wording thereof.

*Ref:   New Jersey, P.L. 1991, c. 516, ' 2, eff. Jan. 19, 1992; N.J.S.A. 32:3-4b.*

**Return of minutes within ten-day period with veto; force and effect of commissioner's action**

If the Governor of New Jersey, within the 10-day period described in subsection b. of section 1 of this act, returns the minutes to the Delaware River Port Authority with a veto against the action of a commissioner from New Jersey, the action of that commissioner shall be null and void and of no effect.

*Ref:   New Jersey, P.L. 1991, c. 516, ' 3, eff. Jan. 19, 1992; N.J.S.A. 32:3-4c.*

ARTICLE IV

For the effectuation of its authorized purposes the Commission is hereby granted the following powers:
    (a) To have perpetual succession.
    (b) To sue and be sued.
    (c) To adopt and use an official seal.
    (d) To elect a chairman, vice-chairman, secretary and treasurer, and to adopt suitable by-laws for the management of its affairs.  The secretary and treasurer need not be members of the commission.
    (e) To appoint, hire, or employ counsel and such other officers and such agents and employees as it may require for the performance of its duties, by contract or otherwise, and fix and determine their qualifications, duties, and compensation.
    (f) To enter into contracts.
    (g) To acquire, own, hire, use, operate, and dispose of personal property.
    (h) To acquire, own, use, lease, operate, mortgage, and dispose of real property and interests in real property, and to make improvements thereon.
    (i) To grant by franchise, lease, or otherwise, the use of any property or facility owned or controlled by the Commission and to make charges therefor.
    (j) To borrow money upon its bonds or other obligations, either with or without security, and to make, enter into, and perform any and all such covenants and agreements with the holders of such bonds or other obligations as the Commission may determine to be

necessary or desirable for the security and payment thereof, including without limitation of the foregoing, covenants and agreements as to the management and operation of any property or facility owned or controlled by it, the tolls, rents, rates, or other charges to be established, levied, made, and collected for any use of any such property or facility, or the application, use, and disposition of the proceeds of any bonds or other obligations of the Commission or the proceeds of any such tolls, rents, rates; or other charges or any other revenues or moneys of the commission.

(k) To exercise the right of eminent domain within the Port District.

(l) To determine the exact location, system and character of, and all other matters in connection with, any and all improvements or facilities which it may be authorized to own, construct, establish, effectuate, operate, or control.

(m) In addition to the foregoing, to exercise the powers, duties, authority, and jurisdiction heretofore conferred and imposed upon the aforesaid The Delaware River Joint Commission by the Commonwealth of Pennsylvania or the State of New Jersey, or both of the said two States.

(n) To exercise all other powers not inconsistent with the constitutions of the two States or of the United States, which may be reasonably necessary or incidental to the effectuation of its authorized purposes or to the exercise of any of the foregoing powers, except the power to levy taxes or assessments, and generally to exercise in connection with its property and affairs, and in connection with property within its control any and all powers which might be exercised by a natural person or a private corporation in connection with similar property and affairs.

(o) To acquire, purchase, construct, lease, operate, maintain, and undertake any project, including any terminal, terminal facility, transportation facility, or any other facility of commerce and to make charges for the use thereof.

(p) To make expenditures anywhere in the United States and foreign countries, to pay commissions, and hire or contract with experts or consultants, and otherwise to do indirectly anything which the Commission may do directly.

(q) To establish one or more operating divisions as deemed necessary to exercise the power and effectuate the purposes of this agreement.

The Commission shall also have such additional powers as may hereafter be delegated to or imposed upon it from time to time by the action of either State concurred in by legislation of the other.

It is the policy and intent of the Legislatures of the Commonwealth of Pennsylvania and the State of New Jersey that the powers granted by this article shall be so exercised that the American system of free competitive private enterprise is given full consideration and is maintained and furthered. In making its reports and recommendations to the Legislatures of the Commonwealth of Pennsylvania and the State of New Jersey on the need for any facility or project which the Commission believes should be undertaken for the promotion and development of the Port District, the Commission shall include therein its findings which fully set forth that the facility or facilities operated by private enterprise within the Port District and which it is intended shall be supplanted or added to are not adequate.

*Ref:   Pennsylvania, 1992, April 3, P.L. 57, No. 19, ' 1(1), imd. effective;*

*36 P.S. ' 3503*
*New Jersey, P.L. 1991, c. 515, ' 5, eff. Jan. 19, 1992; N.J.S.A. 32:3-5*

## ARTICLE V

If for any of its authorized purposes (including temporary construction purposes) the Commission shall find it necessary or convenient to acquire any real property in the Commonwealth of Pennsylvania or the State of New Jersey, whether for immediate or future use, the Commission may find and determine that such property, whether a fee simple absolute or a lesser interest is required for public use and, upon such determination, the said property shall be deemed to be required for a public use until otherwise determined by the Commission; and with the exceptions hereinafter specifically noted the said determination shall not be affected by the fact that such property has theretofore been taken for, or is then devoted to, a public use, but the public use in the hands or under the control of the Commission shall be deemed superior to the public use in the hands or under the control of any other person, association or corporation.

If the Commission is unable to agree with the owner or owners thereof upon terms for the acquisition of any such real property in the Commonwealth of Pennsylvania for any reason whatsoever, then the Commission may acquire such real property in the manner provided by Act Number Three Hundred and Thirty-Eight of the Commonwealth of Pennsylvania, approved July ninth, One thousand, nine hundred and nineteen, and acts amendatory thereof and supplementary thereto, for the acquisition of real property by the aforesaid Pennsylvania Commission.

If the Commission is unable to agree with the owner or owners thereof upon terms for the acquisition of any such real property in the State of New Jersey for any reason whatsoever, then the Commission may acquire, and is hereby authorized to acquire, such property, whether a fee simple absolute or a lesser interest, by condemnation or the exercise of the right of eminent domain, either under and pursuant to the provisions of the act of the State of New Jersey entitled, "An act to regulate the ascertainment and payment of compensation for property condemned or taken for public use" (Revision of nineteen hundred, approved March twentieth, nineteen hundred), and acts amendatory thereof and supplementary thereto, or under and pursuant to the provisions of an act entitled "An act concerning and regulating acquisition and taking of lands by the State of New Jersey or any agency thereof, providing a procedure therefor and the manner of making compensation for lands so taken," approved April twenty-first, one thousand, nine hundred and twenty, and the various acts amendatory thereof and supplementary thereto.

The power of the Commission to acquire real property by condemnation or the exercise of the power of eminent domain in the commonwealth of Pennsylvania and the State of New Jersey shall be a continuing power and no exercise thereof shall be deemed to exhaust it.

The Commission and its duly authorized agents and employees may enter upon any land in the Commonwealth of Pennsylvania or the State of New Jersey for the purpose of

making such surveys, maps or other examinations thereof as it may deem necessary or convenient for its authorized purposes.

However, anything contrary contained in this compact notwithstanding, no property now or hereafter vested in or held by any county, city, borough, village, township, or other municipality, or port district shall be taken by the Commission without the consent of such municipality or port district unless expressly authorized so to do by the Commonwealth or State in which such municipality or port district is located.  All counties, cities, boroughs, villages, townships, and other municipalities, and all public agencies and Commissions of the Commonwealth of Pennsylvania and the State of New Jersey, notwithstanding any contrary provision of law, are hereby authorized and empowered to grant and convey to the Commission upon its request, but not otherwise, upon reasonable terms and conditions, any real property which may be necessary or convenient to the effectuation of its authorized purposes, including real property already devoted to public use.

The Commonwealth of Pennsylvania and the State of New Jersey hereby consent to the use and occupation by the Commission of any real property of the said two States, or of either of them, which may be, or become, necessary or convenient to the effectuation of the authorized purposes of the Commission, including lands lying under water and lands already devoted to public use.

The term "real property" as used in this compact includes lands, structures, franchises and interests in land, including lands under water and riparian rights, and any and all things and rights usually included within the said term and includes not only fees simple absolute, but also any and all lesser interests such as easements, rights of way, uses, leases, licenses and all other incorporeal hereditaments, and every estate, interest or right, legal or equitable, including terms of years and liens thereon by way of judgments, mortgages or otherwise, and also claims for damage to real estate.

> Ref:   *Pennsylvania 1931 - Act No. 200, P.L 575; 36 P.S. ' 3503.*
> *New Jersey 1931 - Chapter 391, N.J.S.A. 32:3-6.*


## ARTICLE VI


The control, operation,tolls and other revenues of the aforesaid existing bridge across the Delaware River between the City of Philadelphia and the City of Camden, and of all real and personal property appurtenant thereto or used in connection therewith, shall vest in the Commission on the first day of July, one thousand nine hundred and thirty-one, and the terms of the members of the aforesaid Pennsylvania Commission and the aforesaid New Jersey Interstate Bridge Commission shall cease and terminate on that date.

On or before the thirtieth day of June, one thousand nine hundred and thirty-two, or as soon thereafter as practicable, the Commission shall pay to the Commonwealth of Pennsylvania, the State of New Jersey and the City of Philadelphia the following sums out of moneys raised by said Commission on its bonds or other obligations:

(a) An amount equal to the moneys contributed by the Commonwealth of Pennsylvania toward the cost of acquiring property for, and constructing, said bridge and

the approaches thereto, and expenditures incident thereto, with interest at the rate of four per centum per annum, such interest to be computed from the dates on which installments of such funds were paid to the Delaware River Bridge Joint Commission by the said Commonwealth of Pennsylvania as shown by the records of its State Treasurer less, however, the amount returned to the Commonwealth of Pennsylvania from the net revenues of the bridge between July first, one thousand, nine hundred and twenty-six and June thirtieth, one thousand, nine hundred and thirty-one, and less interest at the rate of four per centum per annum upon such amount computed from the dates of repayment to the Commonwealth of Pennsylvania.

(b) An amount equal to the moneys contributed by the State of New Jersey toward the cost of acquiring property for, and constructing, said bridge and the approaches thereto, and expenditures incident thereto, with interest theretofore actually paid by the State of New Jersey or accrued upon the bonds issued by said State to borrow money to pay its share of the cost of acquiring property for, and construction of, said bridge and approaches thereto, and all expenditures incident thereto, less, however, the amount returned to the State of New Jersey from the net revenues of the bridge between July first, one thousand, nine hundred and twenty-six and June thirtieth, one thousand, nine hundred thirty-one, and less interest at the rate of four and one-fourth per centum per annum upon such amount computed from the dates of repayment to the State of New Jersey.

(c) An amount equal to the moneys contributed by the City of Philadelphia toward the cost of acquiring property for, and constructing, said bridge and the approaches thereto, and expenditures incident thereto, with interest theretofore actually paid by the City of Philadelphia or accrued upon the bonds issued by said city to borrow money to pay its share of the cost of acquiring property for, and construction of, said bridge and approaches thereto, and all expenditures incident thereto, less, however, the amount returned to the City of Philadelphia from the net revenues of the bridge between July first, one thousand, nine hundred and twenty-six and June thirtieth, one thousand, nine hundred thirty-one, and less interest at the rate of four and one-fourth per centum per annum upon such amount computed from the dates of repayment to the City of Philadelphia.

(d) As soon as is practicable subsequently to July first, one thousand, nine hundred and thirty-one, the Commission shall determine with the Commonwealth of Pennsylvania, the State of New Jersey and the City of Philadelphia the net amounts due to each, respectively, as of the first day of July, one thousand nine hundred and thirty-one, and from that date until the date of payment, interest shall be paid by the Commission to the Commonwealth of Pennsylvania at the rate of four per centum per annum, and to the State of New Jersey and to the City of Philadelphia at the rate of four and one-fourth per centum per annum.

(e) The amount payable by the Commission to the Commonwealth of Pennsylvania as aforesaid shall be paid to the State Treasurer of the Commonwealth of Pennsylvania upon a voucher signed and audited by said State Treasurer who is hereby authorized to consummate the said transaction.  The amount payable to the State of New Jersey shall be paid to the Comptroller of said state upon a voucher signed and audited by said Comptroller who is hereby authorized to consummate the said transaction.  The amount payable to the City of Philadelphia shall be paid to the treasurer of the said city upon a voucher signed and audited by said treasurer, who is hereby authorized to consummate the

said transaction. Upon the receipt of the proper payment each of said officials shall certify to The Delaware River Joint Commission that all moneys payable by The Delaware River Joint Commission to the Commonwealth, State or city, as the case may be, have been duly paid.

(f) Nothing herein contained shall be construed to affect, diminish or impair the rights and obligations created by, or to repeal any of the provisions of Chapter Three hundred and fifty-two of the Laws of New Jersey of one thousand nine hundred and twenty and Chapter Two hundred and sixty-two of the Laws of New Jersey of one thousand nine hundred and twenty-four, and Chapter Three hundred and thirty-six of the Laws of New Jersey of one thousand nine hundred and twenty-six and Chapter Thirty-three of the Laws of New Jersey of one thousand nine hundred and twenty-seven and Chapter Sixty-four of the Laws of New Jersey of one thousand nine hundred and twenty-eight.

(g) Of the money paid to the State of New Jersey under the provisions of this agreement there shall be paid to the Sinking Fund Commission created by the provisions of the foregoing statutes (Chapter 352 of the Laws of New Jersey of 1920 and Chapter 262 of the Laws of New Jersey of 1924) such sum or sums as said Sinking Fund Commission may deem necessary to meet the then existing indebtedness and obligations set forth in said statutes, together with such interest and other charges as may be due or may grow due. The amount thus to be paid to the Sinking Fund Commission shall be arrived at and determined by said Sinking Fund Commission within ninety days after payment is made to the State of New Jersey pursuant to the provisions of this agreement.  The moneys to be paid to and received by said Sinking Fund Commission are hereby appropriated by the State of New Jersey and are to be used for sinking fund purposes according to law.

(h) No failure on the part of the Commission to make the aforesaid payments to the Commonwealth of Pennsylvania, to the State of New Jersey or to the City of Philadelphia shall affect, diminish or impair the rights of the holders of any bonds or other securities or obligations of said Commission as security for which the tolls and other revenues of said bridge may be pledged.

*Ref:   Pennsylvania 1931 - Act No. 200, P.L 575; 36 P.S. ' 3503.*
*New Jersey 1931 - Chapter 391, N.J.S.A. 32:3-7.*

## ARTICLE VII

Notwithstanding any provision of this agreement, the Commission shall have no power to pledge the credit of the Commonwealth of Pennsylvania or the credit of the State of New Jersey or the credit of any county, city, borough, village, township or other municipality of said Commonwealth or of said State, or to create any debt of said Commonwealth or of said State or of such municipality.

> *Ref:   Pennsylvania 1931 - Act No. 200, P.L 575; 36 P.S. ' 3503.*
> *New Jersey 1931 - Chapter 391, N.J.S.A. 32:3-8.*

## ARTICLE VIII

The Commission is hereby authorized to make and enforce such rules and regulations and to establish, levy, and collect (or to authorize by contract, franchise, lease or otherwise, the establishment, levying and collection of) such tolls, rents, rates, and other charges in connection with the aforesaid existing bridge across the Delaware River and any other properties which it may hereafter construct, erect, acquire, own, operate or control, as it may deem necessary, proper, desirable and reasonable, which said tolls, rents, rates and other charges shall be at least sufficient to meet the expenses thereof, including interest and sinking fund charges, and the Commission is hereby authorized and empowered to pledge such tolls, rates, rents and other revenues, or any part thereof, either presently received or to be received in the future, or both, as security of the repayment with interest, of any moneys borrowed by it, or advanced to it, for any of its authorized purposes and as security for the satisfaction of any other obligation assumed by it in connection with such loans or advances.

> *Ref:   Pennsylvania 1931 - Act No. 200, P.L 575; 36 P.S. ' 3503.*
> *New Jersey 1931 - Chapter 391, N.J.S.A. 32:3-9.*

## ARTICLE IX

The Commonwealth of Pennsylvania and the State of New Jersey hereby covenant and agree with each other and with the holders of any bonds or other securities or obligations of the Commission for which there may or shall be pledged the tolls, rents, rates or other revenues, or any part thereof, of any property or facility owned, operated or controlled by the Commission (including the said bridge across the Delaware River and the

11

facilities for the transportation of passengers across the said bridge) that (so long as any of said bonds or other securities or obligations remain outstanding and unpaid, and unless and until adequate provision is made by law for the protection of those advancing money upon such obligations) the Commonwealth and the said State will not diminish or impair the power of the Commission to own, operate or control said properties and facilities or to establish, levy and collect tolls, rents, rates and other charges in connection with such properties or facilities.

The Commonwealth of Pennsylvania and the State of New Jersey hereby covenant and agree with each other and with the holders of any bonds or other securities or obligations of the Commission for which the tolls, rents, rates or other revenues, or any part thereof, of the aforesaid existing bridge across the Delaware River shall have been pledged, that the said Commonwealth and the said State will not authorize or permit the authorization of the construction, operation or maintenance of any additional vehicular bridge or tunnel, or any additional bridge or tunnel having railroad or other facilities for the transportation of passengers, between the said Commonwealth and the said State, over or under the Delaware River, by any other person or body than the Commission, within a distance of ten miles in either direction from the said bridge, measured along the boundary line between the said Commonwealth and the said State.

Ref:   *Pennsylvania 1931 - Act No. 200, P.L 575; 36 P.S. ′ 3503.*
       *New Jersey 1931 - Chapter 391, N.J.S.A. 32:3-10.*


ARTICLE X


The bonds or other securities or obligations which may be issued by the Commission for any of its authorized purposes, and as security for which there may be pledged the tolls, rents, rates and other revenues, or any part thereof, of any properties or facilities owned, operated or controlled by the Commission (including the aforesaid existing bridge across the Delaware River and the aforesaid facilities for the transportation of passengers across the said bridge) are hereby made securities in which all state and municipal officers and bodies of the Commonwealth of Pennsylvania and State of New Jersey, all banks, bankers, trust companies, savings banks, saving and loan associations, investment companies and other persons carrying on a banking business, all insurance companies, insurance associations and other persons carrying on an insurance business, and all administrators, executors, guardians, trustees and other fiduciaries and all other persons whatsoever who are now or may hereafter may be authorized to invest in bonds or other obligations of the Commonwealth of Pennsylvania or of the State of New Jersey, may properly and legally invest any funds, including capital, belonging to them or within their control; and said bonds or other securities or obligations are hereby made securities which may properly and legally be deposited with and received by any state or municipal officer or agency of the Commonwealth of Pennsylvania or the State of New Jersey for any purpose for which the

12

deposit of bonds or other obligations, either of the Commonwealth or the State, is now or may hereafter be authorized.

> *Ref:   Pennsylvania 1931 - Act No. 200, P.L 575; 36 P.S. ' 3503.*
> *New Jersey 1931 - Chapter 391, N.J.S.A. 32:3-11.*

## ARTICLE XI

The effectuation of its authorized purposes by the Commission is and will be in all respects for the benefit of the people of the Commonwealth of Pennsylvania and the State of New Jersey, for the increase of their commerce and prosperity and for the improvement of their health and living conditions; and since the Commission will be performing essential governmental functions in effectuating said purposes, the Commission shall not be required to pay any taxes or assessments upon any property acquired or used by it for such purposes, and the bonds or other securities or obligations issued by the Commission, their transfer and the income therefrom (including any profits made on the sale thereof) shall at all times be free from taxation within the Commonwealth of Pennsylvania and the State of New Jersey.

To the end that municipalities may not suffer undue loss of tax revenue by reason of the acquisition and ownership of property therein by the Commission, the Commission is hereby authorized and empowered, in its discretion, to enter into a voluntary agreement or agreements with any municipality, whereby it will undertake to pay a fair and reasonable sum or sums to compensate the said municipality for any loss of tax revenue in connection with any property acquired by the Commission after one thousand nine hundred and fifty other than property acquired for bridge, tunnel or passenger transportation purposes.  Any such payment or payments which the Commission is hereby authorized and empowered to make may be made on an annual basis, in which case the payment or payments shall not be in excess of the amount of the taxes upon the property when last assessed prior to the time of its acquisition by the Commission, or such payment or payments may be made in a lump sum or sums, or over a stated period of years, as shall be agreed upon by and between the Commission and such municipality.  Every municipality wherein the property shall be acquired by the Commission is authorized and empowered to enter into such agreement or agreements with the Commission to accept the payment or payments which the Commission is herein authorized and empowered to make.

> *Ref:   Pennsylvania 1931 - Act No. 200, P.L 575; 36 P.S. ' 3503.*
> *New Jersey 1931 - Chapter 391, N.J.S.A. 32:3-12.*

13

ARTICLE XII

The Commission shall, within 90 days after the end of each fiscal year, submit to the Governors and Legislatures of the Commonwealth of Pennsylvania and the State of New Jersey a complete and detailed report of the following:

(1) its operations and accomplishments during the completed fiscal year;

(2) its receipts and disbursements or revenues and expenses during that year in accordance with the categories and classifications established by the Commission for its own    operating and capital outlay purposes;

(3) its assets and liabilities at the end of the fiscal year, including the status of reserve, depreciation, special or other funds including debits and credits of these funds;

(4) a schedule of bonds and notes outstanding at the end of the fiscal year;

(5) a list of all contracts exceeding $100,000 entered into during the fiscal year;

(6) a business or strategic plan for the Commission and for each of its operating divisions; and

(7) a five year capital plan.

Not less than once every five years, the Commission shall cause a management audit of its operational effectiveness and efficiency to be conducted by an independent consulting firm selected by the commission.  The first management audit to be conducted shall commence within 3 years of the date of coming into force of the supplemental compact or agreement authorized by this 1991 Amendatory Act.  This audit is in addition to any other audit which the Commission determines to conduct from time to time.

The Commission shall, not later than two years after the date of the coming into force of the supplemental compact or agreement authorized by this 1991 amendatory act, prepare a comprehensive master plan for the development of the Port District. The plan shall include, but not be limited to, plans for the construction, financing, development, reconstruction, purchase, lease, improvement, and operation of any terminal, terminal facility, transportation facility or any other facility of commerce or economic development activity.  The master plan shall include the general location of such projects and facilities as may be included in the master plan and shall to the maximum extent practicable include, but not be limited to, a general description of each such project and facility, the land use requirements necessary therefor, and estimates of project costs and of a schedule for commencement of each such project.  Prior to adopting such master plan, the Commission shall give written notice to, afford a reasonable opportunity for comment, consult with and consider any recommendations from State, county and municipal governments, as well as commissions, public corporations and authorities, and the private sector.  The Commission may modify or change any part of the plan in the same form and manner as provided for the adoption of the original plan.  At the time the Commission authorizes any project or facility, the Commission shall promptly provide to the Governor and Legislature of each State a detailed report on the project, including its status  within the master plan.  The Commission shall include within the authorization a status of the project or facility in the master plan and any amendment thereof, and no project shall be authorized if not included

14

in the master plan or amendment thereof.  Any project which has been commenced and approved by the Commission prior to the adoption of the master plan shall be included, for informational purposes only, in the master plan.  The Commission shall provide notice of such on-going projects to those State, county and municipal governments, as well as entities in the private sector who would be entitled to such notice had the project not been commenced in anticipation of adopting the master plan, but there shall be no requirement that the project be delayed or deferred due to these provisions.

In addition to other powers conferred upon it, and not in limitation thereof, the Commission may acquire all right, title and interest in and to the Tacony-Palmyra bridge, across the Delaware River at Palmyra, New Jersey, together with any approaches and interests in real property necessary thereto.  The acquisition of such bridge, approaches and interests by the Commission shall be by purchase or by condemnation in accordance with the provisions of the Federal law consenting to or authorizing the construction of such bridge or approaches; or the acquisition of such bridge, approaches or interests by the Commission shall be pursuant to and in accordance with the provisions of sections 48:5-22 and 48:5-23 of the Revised Statutes of New Jersey, and for all the purposes of said provisions and sections the Commission is hereby appointed as the agency of the State of New Jersey and Commonwealth of Pennsylvania exercising the rights and powers granted or reserved by said Federal law or sections to the State of New Jersey and the Commonwealth of Pennsylvania jointly or to the State of New Jersey acting in conjunction with the Commonwealth of Pennsylvania.  The Commission shall have authority to so acquire such bridge, approaches and interests, whether the same be owned, held, operated or maintained by any private person, firm, partnership, company, association or corporation or by any instrumentality, public body, commission, public agency or political subdivision (including any county or municipality) of, or created by or in, the State of New Jersey or the Commonwealth of Pennsylvania, or by any instrumentality, public body, commission, or public agency of, or created by or in, a political subdivision (including any county or municipality) of the State of New Jersey or the Commonwealth of Pennsylvania. None of the provisions of the preceding paragraph shall be applicable with respect to the acquisition by the commission, pursuant to this paragraph, of said Tacony-Palmyra bridge, approaches and interests. The power and authority herein granted to the Commission to acquire said Tacony-Palmyra Bridge approaches and interests shall not be exercised unless and until the Governor of the State of New Jersey and the Governor of the Commonwealth of Pennsylvania have filed with the Commission their written consents to such acquisition.

Notwithstanding any provision of this agreement, nothing herein contained shall be construed to limit or impair any right or power granted or to be granted to the Pennsylvania Turnpike Commission or the New Jersey Turnpike Authority, to finance, construct, operate, and maintain the Pennsylvania Turnpike System or any turnpike project of the New Jersey Turnpike Authority, respectively, throughout the Port District, including the right and power, acting alone or in conjunction with each other, to provide for the financing, construction, operation, and maintenance of one bridge across the Delaware River south of the city of Trenton in the State of New Jersey; provided that such bridge shall not be constructed within a distance of ten miles, measured along the boundary line between the Commonwealth of Pennsylvania and the State of New Jersey, from the existing bridge,

operated and maintained by the commission, across the Delaware River between the city of Philadelphia in the Commonwealth of Pennsylvania and the city of Camden in the State of New Jersey, so long as there are any outstanding bonds or other securities or obligations of the Commission for which the tolls, rents, rates, or other revenues, or any part thereof, of said existing bridge shall have been pledged.  Nothing contained in this agreement shall be construed to authorize the Commission to condemn any such bridge.

Anything herein contained to the contrary notwithstanding, no bridge or tunnel shall be constructed, acquired, operated, or maintained by the Commission across or under the Delaware River north of the boundary line between Bucks County and Philadelphia county in the Commonwealth of Pennsylvania as extended across the Delaware River to the New Jersey shore of said river, and any new bridge or tunnel authorized by or pursuant to this compact or agreement to be constructed or erected by the Commission may be constructed or erected at any location south of said boundary line notwithstanding the terms and provisions of any other agreement between the Commonwealth of Pennsylvania and the State of New Jersey.  Except as may hereafter be otherwise provided in conformity with Article IX hereof with respect to specific properties designated by action of the Legislatures of both of the signatory States, no property or facility owned or controlled by the Commission shall be acquired from it by any exercise of powers of condemnation or eminent domain.

> Ref:   Pennsylvania, 1992, April 3, P.L. 57, No. 19, ' 1(1), imd. effective;
> 36 P.S. ' 3503.
> New Jersey, P.L. 1991, c. 515, ' 6, eff. Jan. 19, 1992; N.J.S.A. 32:3-13.


## ARTICLE XII-A


(1)  In addition to other public purposes provided for it and other powers and duties conferred upon it, and not in limitation thereof, and notwithstanding the provisions of any other article hereof, The Delaware River Joint Commission by whatever name said Commission may be designated, shall have among its authorized purposes, and it shall have the power and duty to effectuate, the construction, operation and maintenance of a bridge for vehicular traffic across the Delaware River, between a point or points within a one-mile radius of Morgan street and Broadway in the City of Camden, New Jersey, and a point or points within a one-mile radius of Oregon avenue and Swanson street in the City of Philadelphia, Pennsylvania, with such approaches thereto and highway connections as may be necessary or desirable, or, in lieu of such bridge, a tunnel or tunnels for vehicular traffic under the Delaware River, between a point or points within a one-mile radius of Morgan street and Broadway in the City of Camden, New Jersey, and a point or points within a one mile radius of Oregon avenue and Swanson street in the City of Philadelphia, Pennsylvania with such approaches thereto and highway connections as may be necessary or desirable.

(2)   For the effectuation of any of its purposes authorized by this Article, the Commission is hereby granted, in addition to any other powers heretofore or hereafter granted to it, power and authority to acquire in its name by purchase or otherwise, on such terms and conditions and in such manner as it may deem proper, or by the exercise of the power of eminent domain any land and other property which it may determine is reasonably necessary for the bridge or tunnel referred to in this article or for the construction of such approaches thereto or highway connections as the Commission shall deem necessary and any and all rights, title and interest in such land and other property, including public lands, parks, playgrounds, reservations, highways, or parkways, owned by or in which any county, city, borough, town, township, village, or other political subdivision of the State of New Jersey or the Commonwealth of Pennsylvania has any right, title or interest, or parts thereof or rights therein and any fee simple absolute or any lesser interest in private property, and any fee simple absolute in, easements upon, or the benefit of restrictions upon, abutting property to preserve and protect such bridge or tunnel, the approaches thereto or highway connections.  Upon the exercise of the power of eminent domain under this paragraph, the compensation to be paid with regard to property located in the State of New Jersey shall be ascertained and paid in the manner provided in Chapter One of Title 20 of the Revised Statutes of New Jersey insofar as the provisions thereof are applicable and not inconsistent with the provisions contained in this paragraph, and with regard to property located in the Commonwealth of Pennsylvania shall be ascertained and paid in the manner provided by any applicable condemnation law in force in such Commonwealth. The Commission may join in separate subdivisions in one petition or complaint the description of any number of tracts or parcels of land or property to be condemned and the names of any number of owners and other parties who may have an interest therein and all such land or property included in said petition or complaint may be condemned in a single proceeding; *provided, however,* that separate awards shall be made for each tract or parcel of land or property; *and provided further,* that each of said tracts or parcels of land or property lies wholly in or has a substantial part of its value lying wholly within the same county.

(3)  For the effectuation of any of its authorized purposes, the Commission is hereby granted the following powers in addition to any other powers heretofore or hereafter granted to it:

(a)  In connection with the borrowing of money upon its bonds or other obligations, to make, enter into and perform any and all such covenants and agreements with the holders of such bonds or other obligations as the Commission may determine to be necessary or desirable for the security and payment thereof, including without limitation of the foregoing, covenants and agreements as to the management and operation of any property or facility owned or controlled by it, the tolls, rents, rates or other charges to be established, levied, made and collected for any use of any such property or facility, or the application, use and disposition of the proceeds of any bonds or other obligations of the Commission or the proceeds of any such tolls, rents, rates or other charges or any other revenues or moneys of the Commission.

17

(b)  To pledge for the security or payment of any bonds or other obligations of the Commission any moneys of the Commission either presently received or in hand or to be received in the future, or both.

(c)  To make expenditures anywhere in the United States and foreign countries, to pay commissions, and hire or contract with experts and consultants, and otherwise to do indirectly anything which the Commission may do directly.

(d)  To have and exercise such additional powers as may hereafter be delegated to or imposed upon it from time to time by act of the Legislature of either signatory State concurred in by act of the Legislature of the other.

(4)  Notwithstanding any of the provisions of this Article, the Commission shall not, in connection with the bridge or tunnel referred to in this article, construct any approach or highway connection in the Commonwealth of Pennsylvania unless and until the Department of Highways of said Commonwealth shall have filed with the Commission its written consent to such construction, and the Commission shall not, in connection with said bridge or tunnel, construct any approach or highway connection in the State of New Jersey unless and until the State Highway Department of said State shall have filed with the Commission its written consent to such construction.  As used in this paragraph, the term "approach" or "highway connection" means and includes any highway, road or structure for passage of vehicles, located inland of any of the established bulkhead lines of the Delaware River, including any highway, road or structure for passage of vehicles necessary to create access to the bridge or tunnel referred to in this Article or to connect such bridge or tunnel with a highway system or other traffic facilities, or necessary to facilitate the flow of traffic in the vicinity of such bridge or tunnel.

(5)  Before commencing construction of the bridge or tunnel referred to in this Article, the Commission shall set aside in a special reserve fund to be held by it the sum of twenty-two million dollars ($22,000,000.00) or such lesser sum as the Governors of the signatory States may in writing approve as sufficient for the purposes of this paragraph.  The moneys in this special reserve fund may be expended and used by the Commission for the construction, maintenance and operation of approaches and highway connections, and no moneys in said fund shall be applied to any purpose except (1) such construction, maintenance or operation, (2) temporary investment pending some other authorized application or (3) any other purpose authorized by the Commission and approved in writing by the Governors of the signatory States.  The Governors for the time being of the signatory States are authorized from time to time to make and sign any and all approvals contemplated by this paragraph and any such approvals so made and signed by both Governors shall be binding upon the signatory States and the said Governors and their successors, and shall not be revoked or amended except with the consent of the Commission.

(6)  Any pledge of tolls, rates, rents or revenues, or any part thereof, or of any moneys of the Commission made or created by the Commission pursuant to Article VIII or any other provision hereof shall be valid and binding from the time when the pledge is made; the revenues or other moneys so pledged and thereafter received by the Commission shall immediately be subject to the lien of such pledge without any physical

18

delivery thereof or further act; the lien of any such pledge shall be valid and binding as against all parties having claims of any kind in tort, contract or otherwise against the Commission, irrespective of whether such parties have notice thereof; and neither the resolution nor any other instrument by which such a pledge is created need be filed or recorded except in the records of the Commission.

(7)   The effectuation of any of the purposes authorized by this article, and the exercise or performance by the Commission of any of its powers or duties in connection with effectuation of such purpose, shall not be subject to any restrictions, limitations or provisions provided for or set forth in Article XII  hereof.  The bridge or tunnel referred to in this article may be constructed or erected by the Commission notwithstanding the terms and provisions of any other agreement between the Commonwealth of Pennsylvania and the State of New Jersey.  Except as may hereafter be otherwise provided in conformity with Article IX hereof with respect to specific properties designated by action of the Legislatures of both of the signatory States, no property or facility owned or controlled by the Commission shall be acquired from it by any exercise of powers of condemnation or eminent domain.

(8)  The Commission shall not construct or erect the bridge or tunnel referred to in this Article, unless and until the Governor of the State of New Jersey and the Governor of the Commonwealth of Pennsylvania shall have filed with the Commission their written consents to such construction or erection.

> *Ref:   Pennsylvania, 1951, April 10, P.L. 1206, No. 274 ' 1; 36 P.S. ' 3503.*
> *New Jersey, P.L. 1951, c. 287, ' 1; N.J.S.A. 32:3-13.12.*

## ARTICLE XII-B

(1) In addition to other public purposes provided for it and other powers and duties conferred upon it, and not in limitation thereof, and notwithstanding the provisions of any other article hereof, the Commission shall have among its authorized purposes, and it shall have the power to effectuate, the construction, operation and maintenance of a bridge for vehicular traffic across the Delaware River, between a point or points in the Township of Logan, New Jersey, and a point or points in the City of Chester, Pennsylvania, including approaches thereto.

(2) In addition to other public purposes provided for it and other powers and duties conferred upon it, and not in limitation thereof, and notwithstanding the provisions of any other Article hereof, the Commission shall have among its authorized purposes, and it shall have the power to effectuate, the establishment, rehabilitation, equipment, construction, maintenance and operation of ferries for passengers and vehicular traffic over and across the Delaware River within the Port District between the Commonwealth of Pennsylvania

19

and the State of New Jersey.  Such ferries may be established either directly by purchase, lease or contract, or by lease or agreement with any other public or private body or corporation, or in any other manner, and may be established by utilizing any existing ferries within the Port District across the Delaware River between said Commonwealth and said State and by the construction or provision of new facilities where deemed necessary.  Any such ferry may include such approach highways and interests in land or other property necessary therefor in the Commonwealth of Pennsylvania or the State of New Jersey as may be determined by the Commission to be necessary to facilitate the flow of traffic in the vicinity of any such ferry or to connect any such ferry with the highway system or other traffic facilities in said Commonwealth or said State.

(3) (a) For the effectuation of any of its purposes authorized by this article, the Commission is hereby granted, in addition to any other powers heretofore or hereafter granted to it, power and authority to acquire in its name by purchase or otherwise, on such terms and conditions and in such manner as it may deem proper, or by the exercise of the power of eminent domain, any such land and other property which it may determine is reasonably necessary to acquire for any of its purposes authorized by this article and any and all rights, title and interest in such land and other property, including public lands, parks, playgrounds, reservations, highways, or parkways, owned by or in which any county, city, borough, town, township, village, or other political subdivision of the State of New Jersey or the Commonwealth of Pennsylvania has any right, title or interest, or parts thereof or rights therein, and any fee simple absolute or any lesser interest in private property, and any fee simple absolute in, easements upon, or the benefit of restrictions upon, abutting property to preserve and protect such land and other property.  Upon the exercise of the power of eminent domain under this paragraph, the compensation to be paid with regard to property located in the State of New Jersey shall be ascertained and paid in the manner provided in Title 20 of the Revised Statutes of New Jersey insofar as the provisions thereof are applicable and not inconsistent with the provision contained in this paragraph, and with regard to property located in the Commonwealth of Pennsylvania shall be ascertained and paid in the manner provided by the act approved the ninth day of July, one thousand nine hundred nineteen (Pamphlet Laws 814) and acts amendatory thereof and supplementary thereto, insofar as the provisions are applicable and not inconsistent with the provisions contained in this paragraph.  The Commission may join in separate subdivisions in one petition or complaint the descriptions of any number of tracts or parcels of such land and other property to be condemned, and the names of any number of owners and other parties who may have an interest therein, and all such land and other property included in said petition or complaint may be condemned in a single proceeding: Provided, however, That separate awards shall be made for each tract or parcel of such land or other property: And provided further, That each of said tracts or parcels of such land or other property lies wholly in or has a substantial part of its value lying wholly within the same county.

(b) Whenever the Commission acquires under this paragraph (3) the whole or any part of the right of way of a public utility located in the Commonwealth of Pennsylvania, the Commission shall, at its own expense, provide a substitute right of way on another and

20

favorable location.  Such public utility shall thereupon provide for the transfer to, or reconstruction upon, in, under or above said substitute right of way of any structures and facilities of said public utility located upon, in, under or above said original right of way at the time the same is so acquired.  The Commission is hereby authorized to enter into agreements with such public utility to contribute toward the expense of such transfer or reconstruction, and in the event that they are unable to agree on the amount to be paid, the matter shall be referred to the Pennsylvania Public Utility Commission which shall, after hearing thereon, make a finding of the amount to be paid to such public utility by the Commission.  In case of failure of such public utility, within a reasonable time after notice so to do, to remove its facilities to such substitute right of way, the Pennsylvania Public Utility Commission shall have jurisdiction, on petition of the Commission, to order such transfer or reconstruction.  Any party to such proceedings shall have the right of appeal from the ruling of the Pennsylvania Public Utility Commission.  The Delaware River Port Authority is hereby authorized to acquire, by purchase or by the exercise of the power of eminent domain, any necessary land or right of way for the relocation of any such public utility right of way and facilities.  The substitute right of way thus acquired shall be equal in estate to the original right of way acquired from the public utility, and the Commission shall deliver to the public utility a deed, duly executed and acknowledged, conveying to it an estate in the substitute right of way at least equal to that owned by the public utility in the original right of way, or if such a substitute right of way is to be acquired by purchase, the Commission shall procure and deliver to the public utility a deed conveying such estate to it from the owner of the land on which such substitute right of way is located.

This sub-paragraph (b) shall have no application to the relocation of public utility facilities located in the beds of public streets, roads or highways.

(c) In addition to any other powers heretofore or hereafter granted to it, the Commission, in connection with construction or operation of any project for the effectuation of any of its purposes authorized by this article, shall have power to make reasonable regulations for the installation, construction, maintenance, repair, renewal, relocation and removal of tracks, pipes, mains, conduits, cables, wires, towers, poles or any other equipment and appliances (in this sub-paragraph (c) called "works") located in the State of New Jersey of any public utility as defined in section 48:2-13 of the revised statutes of New Jersey, in, on, along, over or under any such project.  Whenever in connection with the construction or operation of any such project the Commission shall determine that it is necessary that any such works, which now are or hereafter may be located in, on, along, over or under any such project should be relocated in such project, or should be removed therefrom, the public utility owning or operating such works shall relocate or remove the same in accordance with the order of the Commission, provided, however, That, except in the case of the relocation or removal of such works located in, on, along, over or under public streets, roads or highways, the cost and expenses of such relocation or removal, including the cost of installing such works in a new location or new locations, and the cost of any lands or any rights or interest in lands or any other rights acquired to accomplish such relocation or removal, less the cost of any lands or any rights or interests in lands or any other rights of the public utility paid to the public utility in connection with the relocation

or removal of such works, shall be paid by the Commission and shall be included in the cost of such project.  In case of any such relocation or removal of works as aforesaid, the public utility owning or operating the same, its successors or assigns, may maintain and operate such works, with the necessary appurtenances, in the new location or new locations for as long a period, and upon the same terms and conditions, as it had the right to maintain and operate such works in their former location.

In case of any such relocation or removal of works, as aforesaid, the Commission shall own and maintain, repair and renew structures within the rights of way of railroad companies carrying any such project over railroads, and the Commission shall bear the cost of maintenance, repair and renewal of structures within the rights of way of railroad companies carrying railroads over any such project, but this provision shall not relieve any railroad company from responsibility for damage caused to any authority or railroad structure by the operation of its railroad.  Such approaches, curbing, sidewalk paving, guard rails on approaches and surface paving on such projects as shall be within the rights of way of a railroad company or companies shall be owned and maintained, repaired and renewed by the Commission; rails, pipes and lines shall be owned and maintained, repaired and renewed by the railroad company or companies.

(4) The power and authority granted in this article to the Commission to construct new or additional approach highways shall not be exercised unless and until the Department of Highways of the Commonwealth of Pennsylvania shall have filed with the Commission its written approval as to approach highways to be located in said Commonwealth and the State Highway Department of the State of New Jersey shall have filed with the Commission its written approval as to approach highways to be located in said State.

(5) The effectuation of any of the purposes authorized by this article, and the exercise or performance by the Commission of any of its powers or duties in connection with effectuation of any such purpose, shall not be subject to any restrictions, limitations or provisions provided for or set forth in Article XII hereof.  The bridge or ferries referred to in this article may be established, constructed or erected by the Commission notwithstanding the terms and provisions of any other agreement between the Commonwealth of Pennsylvania and the State of New Jersey.

(6) The Commission shall not construct or erect the bridge referred to in this Article unless and until the Governor of the State of New Jersey and the Governor of the Commonwealth of Pennsylvania shall have filed with the Commission their written consents to such construction or erection.

(7) The Commission is hereby granted the following powers in addition to any other powers heretofore or hereafter granted to it:

22

(a) To abandon, close off, dismantle, sell or otherwise dispose of, any project or facility, or any part thereof, or any other property, which the Commission may determine to be no longer useful or necessary for public use.

(b) To effectuate any of its authorized purposes either directly or indirectly by or through wholly owned subsidiary corporations.  Any such subsidiary corporation shall be a public corporate instrumentality of the Commonwealth of Pennsylvania and the State of New Jersey for such purposes and shall be deemed to be exercising an essential governmental function in effectuating such purposes.  Any such subsidiary corporation and any of its property, functions and activities shall have such of the privileges, immunities, tax and other exemptions of the Commission and of the Commission's property, functions and activities, and such of the rights, powers and duties of the Commission, as the Commission shall determine.

(8) The power of the Commission, which is hereby confirmed, to purchase, construct, lease, finance, operate, maintain and own a terminal facility consisting in whole or in part of a parking area or place, garage, building, improvement, structure, or other accommodation for the parking or storage of motor or other vehicles, including all real or personal property necessary or desirable in connection therewith, shall, notwithstanding any other provision of this agreement, be exercised only at such place, in the vicinity of and in connection with, or as a part of any bridge, tunnel, ferry, railroad, rapid transit system, transportation or terminal facility, as the Commission may determine to be necessary or desirable.

*Ref:   Pennsylvania, 1963, June 11, P.L. 102, ' 1(2); 36 P.S. ' 3503.*
*New Jersey, P.L. 1991, c. 92, ' 1, amended P.L. 1964,*
*c. 124, ' 1; N.J.S.A. 32:3-13.42.*


## ARTICLE XIII


As used herein, unless a different meaning clearly appears from the context:

"Port District" shall mean all the territory within the counties of Bucks, Chester, Delaware, Montgomery, and Philadelphia in Pennsylvania, and all territory within the counties of Atlantic, Burlington, Camden, Cape May, Cumberland, Gloucester, Ocean, and Salem in New Jersey.

"Commission" shall mean the Delaware River Port Authority and, when required by the context, the board constituting the governing body thereof in charge of its property and affairs.

"Commissioner" shall mean a member of the governing body of the Delaware River Port Authority.

"Economic development activity" or "economic development" means any structure or facility or any development within the Port District in connection with manufacturing, port-oriented development, foreign trade zone site development or research, commercial,

23

industrial, or recreational purposes, or for purposes of warehousing or consumer and supporting services directly relating to any of the foregoing or to any authority project or facility which are required for the sound economic development of the Port District.

"Terminal" shall include any marine, motor truck, motorbus, railroad, and air terminal or garage, also any coal, grain, and lumber terminal and any union freight and other terminals used or to be used in connection with the transportation of passengers and freight, and equipment, materials, and supplies therefor.

"Transportation facility" and "facilities for transportation of passengers" shall include railroads operated by steam, electricity, or other power, rapid transit lines, motor trucks, motorbuses, tunnels, bridges, airports, boats, ferries, carfloats, lighters, tugs, floating elevators, barges, scows, or harbor craft of any kind, and aircraft, and equipment, materials, and supplies therefor.

"Terminal facility" shall include wharves, piers, slips, berths, ferries, docks, drydocks, ship repair yards, bulkheads, dock walls, basins, carfloats, floatbridges, dredging equipment, radio receiving and sending stations, grain or other storage elevators, warehouses, cold storage, tracks, yards, sheds, switches, connections, overhead appliances, bunker coal, oil, and fresh water stations, markets, and every kind of terminal, storage, or supply facility now in use, or hereafter designed for use to facilitate passenger transportation and for the handling, storage, loading, or unloading of freight at terminals, and equipment, materials, and supplies therefor.

"Transportation of passengers" and "passenger transportation" shall mean the transportation of passengers by railroad or other facilities.

"Rapid transit system" shall mean a transit system for the transportation of passengers, express mail, and baggage by railroad or other facilities, and equipment, materials, and supplies therefor.

"Project" shall mean any improvement, betterment, facility or structure authorized by or pursuant to this compact or agreement to be constructed, erected, acquired, owned, or controlled or otherwise undertaken by the commission. 'Project' shall not include undertaking for purposes described in Article I, subdivisions (d), (e), (g), (h), and (i).

"Railroad" shall include railways, extension thereof, tunnels, subways, bridges, elevated structures, tracks, poles, wires, conduits, powerhouses, substations, lines for the transmission of power, carbarns, shops, yards, sidings, turnouts, switches, stations, and approaches thereto, cars, and motive equipment.

"Bridge" and "tunnel" shall include such approach highways and interests in real property necessary therefor in the Commonwealth of Pennsylvania or the State of New Jersey as may be determined by the Commission to be necessary to facilitate the flow of traffic in the vicinity of a bridge or tunnel or to connect a bridge or tunnel with the highway system or other traffic facilities in said Commonwealth or said State; provided, however, that the power and authority herein granted to the Commission to construct new or additional approach highways shall not be exercised unless and until the Department of Transportation of the Commonwealth of Pennsylvania shall have filed with the Commission its written approval as to approach highways to be located in said Commonwealth and the State Highway Department of the State of New Jersey shall have filed with the Commission its written approval as to approach highways to be located in said State.

24

"Facility" shall include all works, buildings, structures, property, appliances, and equipment, together with appurtenances necessary and convenient for the proper construction, equipment, maintenance, and operation of a facility or facilities or any 1 or more of them.

"Personal property" shall include choses in action and all other property now commonly, or legally defined as personal property, or which may hereafter be so defined.

"Lease" shall include rent or hire.

"Municipality" shall include a county, city, borough, village, township, town, public agency, public authority, or political subdivision.

Words importing the singular number include the plural number and vice versa.

Wherever legislation or action by the Legislature of either signatory State is herein referred to it shall mean an act of the Legislature duly adopted in accordance with the provisions of the Constitution of such State.

*Ref:   Pennsylvania, 1992, April 3, P.L. 57, No. 19, ' 1, imd. effective;*
*36 P.S. ' 3503.*
*New Jersey, P.L. 1991, c. 515, ' 7, eff. Jan. 19, 1992; N.J.S.A. 32:3-23.*

**NOTE:**      The foregoing is the text of the Compact comprising the initial and supplemental Agreements Between the Commonwealth of Pennsylvania and the State of New Jersey approved by the United States Congress as required under Article 1, Section 10 of the United States Constitution. The following pages contain the text of statutory provisions enacted by both the Commonwealth and the State granting additional powers to the DRPA Commission as provided for in Article IV of the Compact.

Article IV provides in part that "the Commission shall have additional powers as may hereafter be delegated to or imposed upon it from time to time by the action of either state concurred in by legislation of the other." This clause has been interpreted to mean that both jurisdictions must enact substantially similar legislation in order for such additional legislation to apply to the Commission.

Following is the additional statutory enactments which apply to the Commission. In many cases the wording of such statutes are the same in both jurisdictions. In such cases the provisions are reproduced with citations to both Pennsylvania and New Jersey statutes. However, in some cases, even though the meaning is substantially the same, the wording of the statutes are different. In these cases the provisions are reproduced separately as worded by each jurisdiction.

# I. COMPACT TO HAVE FORCE AND EFFECT OF STATUTE

Upon its signature on behalf of the State of New Jersey and by the Governor on behalf of the commonwealth of Pennsylvania, the aforesaid compact or agreement shall be and become binding and shall have the force and effect of a statute of the [Commonwealth of Pennsylvania/State of New Jersey], and the Delaware River Joint Commission shall thereupon become vested with all the powers, rights and privileges, and be subject to the duties and obligations, contained in said compact or agreement as though the same were specifically authorized and imposed by statute, and the [Commonwealth of Pennsylvania/State of New Jersey] shall be bound by all of the obligations assumed by it under said compact or agreement and the [Governor/New Jersey Interstate Bridge Commission] shall transmit an original signed copy thereof to the Secretary of the [Commonwealth/State] for filing in his office.

*Ref:   Pennsylvania, 1931, June 12, P.L. 575, No. ' 2; 36 P.S. ' 3504*
*New Jersey, L. 1931, c. 391, ' 2, p. 1234; N.J.S.A. 32:3-14*

# II. RULES & REGULATION - POLICEMEN

## A. Policemen; rules and regulations

The Delaware River Port Authority, a body corporate and politic, functioning under the legislation enacted by the Commonwealth of Pennsylvania and the State of New Jersey, and the express consent of the Congress of the United States, and its wholly-owned subsidiary corporations through which it is effectuating its authorized purposes, shall have the power and authority to appoint the number of policemen as is found necessary to keep safety and preserve order upon the bridges and tunnels and approaches thereto, and upon the rapid transit systems, ferries, facilities and other property as the Delaware River Port Authority or such subsidiary corporations does or may hereafter own, lease or operate; to administer to such policemen an oath or affirmation faithfully to perform the duties of their respective positions or offices; and to provide for the payment of such policemen from the tolls, fares, charges and other revenue of the Delaware River Port Authority or such subsidiary corporations. The policemen so appointed shall have the power and authority to make arrests for any crimes, misdemeanors, and offenses committed under the laws of the State of New Jersey or the Commonwealth of Pennsylvania upon the bridges or within the tunnels or approaches thereto, on the rapid transit systems, ferries, facilities or other property, leased or operated by the DRPA or such subsidiary corporations, for disorder or breach of the peace, or for violations of any lawful regulation which may be adopted by the Delaware River Port Authority, or such subsidiary corporations. The policemen shall be authorized and empowered to make arrests or issue citations for evasion or attempts to evade payment of tolls, fares or other charges which may be fixed or may have been fixed for the use of such bridge, tunnel, rapid transit system, or ferry, facility or other property owned, leased or operated by the DRPA or such subsidiary corporations.

In addition, while acting within any other areas of the port district, police officers appointed by the DRPA or such subsidiary corporations shall have all of the powers, including the right to carry firearms while on duty, and all of the immunities conferred by law on police officers or municipal police officers in the enforcement of the laws of the state of New Jersey and the Commonwealth of Pennsylvania, provided that no police officer shall be so empowered unless the officer has satisfied all the training and requalification requirements of section 1.1.

To pass over any part of the bridges or through the tunnels and approaches thereto in any vehicle for which tolls are collectible, or for any person or vehicle to use the rapid transit systems or ferries or other facilities or property without passing through the toll gates or paying the necessary tolls, fares or charges constitutes an evasion and shall subject the person so evading or attempting to evade the payment of tolls, fares, or charges to arrest or receipt of a citation.  Under the apprehension or arrest of any person or persons for any of the foregoing reasons, the offender may be taken before any proper judicial officer of the Commonwealth of Pennsylvania or of the State of New Jersey without respect to the portion of the bridge, tunnel, ferry facility, rapid transit system, facilities or other property upon or within which such offense may have been committed or attempted or such offender arrested, and thereupon such judicial officer shall have power and authority to punish the offender as hereinafter provided.  The Delaware River Port Authority, and its wholly-owned subsidiary corporations through which it is effectuating its authorized purposes shall have the power to adopt such rules and regulations as they may respectively deem expedient for the proper government of the bridges, tunnels, approaches thereto, rapid transit systems, ferries, facilities or other property and for the preservation of good order, safe traffic, and proper conduct thereon or therein.

Any person violating any of the provisions of this act, or of any rule or regulation adopted by the Delaware River Port Authority, or its said subsidiary corporations, or who evades or attempts to evade payment of tolls, fares or charges shall, upon summary conviction before a proper judicial officer of this Commonwealth, or of a proper judicial officer of the State of New Jersey, be sentenced to pay a fine of not less than ten dollars ($10), nor more than twenty-five dollars ($25), and costs of prosecution, and in default of the payment thereof, shall undergo imprisonment for not less than ten days nor more than thirty days, and upon conviction of any subsequent offense, shall be sentenced to pay a fine of not less than twenty-five dollars ($25), nor more than fifty dollars ($50), and costs of prosecution, or to undergo imprisonment for not less than thirty days nor more than sixty days.

*Ref:   Pennsylvania, 1970, Nov. 25, P.L. 735, No. 238, ' 1; 1984, Dec. 18, P.L. 1081,*

*No. 21, ' 1, imd. effective; 36 P.S. ' 3504.1*[1]

---

[1] See explanatory note, *supra*, p. 25.

**B.  Police officers; appointment, oath and compensation; powers and authority; procedure upon issuance of summons, apprehension or arrest; rules and regulations of authority; violations; penalties**

The Delaware River Port Authority, a body corporate and politic, functioning under the legislation enacted by the Commonwealth of Pennsylvania and the State of New Jersey, and the express consent of the Congress of the United States, and its wholly-owned subsidiary corporations through which it is effectuating its authorized purposes, shall have the power and authority to appoint such number of police officers as may be found necessary to keep in safety and preserve order upon such bridges and tunnels and approaches thereto, and upon the rapid transit systems, ferries, facilities and other property as the Delaware River Port Authority or subsidiary corporations do or may hereafter own, lease or operate; to administer to the police officers an oath or affirmation faithfully to perform the duties of their respective positions or offices; and to provide for the payment of the police officers from the tolls, fares, charges and other revenue of the Delaware River Port Authority's or subsidiary corporations.  The police officers so appointed shall have the power and authority to make arrests for any crimes, misdemeanors, and the offenses committed under the laws of the State of New Jersey or the Commonwealth of Pennsylvania, upon said bridges or within said tunnels or approaches thereto, on the rapid transit systems, ferries, facilities or other property owned, leased or operated by the Delaware River Port Authority or a subsidiary corporation, for disorder or breach of the peace, or for violations of any lawful regulation which may be or may heretofore have been adopted by the Delaware River Port Authority or subsidiary corporations.  Police officers shall be further authorized and empowered to make arrests or issue summonses for evasion or attempt to evade the payment of tolls, fares or other charges which may be fixed or may have been fixed for the use of a bridge, tunnel, rapid transit system, or ferry, facility or other property owned, leased or operated by the Delaware River Port Authority or a subsidiary corporation.  In addition, while acting within any other areas of the port district, police officers appointed by the Delaware River Port Authority shall have all of the powers, including the right to carry firearms while on duty, and all of the immunities conferred by law on police officers or municipal police officers in the enforcement of the laws of the State of New Jersey and the Commonwealth of Pennsylvania; provided that no police officer shall be so empowered unless the officer has satisfied all the training and requalification requirements of section 2 of this amendatory and supplementary act.  To pass over any part of said bridges or through said tunnels and approaches thereto in any vehicle for which tolls shall be collectible, or for any person or vehicle to use the rapid transit systems or ferries or other facilities or property without passing through the toll gates or paying such tolls, fares or charges, shall constitute such evasion and shall subject the person so evading or attempting to evade such payment to arrest or receipt of a summons as aforesaid.  Any such summons shall direct such person to appear before any proper judicial officer as defined in this section at such time as the summons shall direct.  Upon the return of such summons or upon the apprehension or arrest of any person or persons for any of the other foregoing reasons, the offender may be taken before any proper judicial officer of

the Commonwealth of Pennsylvania or of the State of New Jersey, without respect to the portion of the bridge, tunnel, ferry facility, rapid transit system, facilities or other property upon or within which such offense may have been committed or attempted or such offender arrested, and thereupon such judicial officer shall have the power and authority to punish such offender as hereinafter provided.  The Delaware River Port Authority and its wholly-owned subsidiary corporations through which it is effectuating its authorized purposes shall have the power to adopt such rules and regulations as they may respectively deem expedient for the proper government of said bridges, tunnels, approaches thereto, rapid transit systems, ferries, facilities or other property and for the preservation of good order, safe traffic, and proper conduct thereon or therein.  For any violation of any of the foregoing provisions of this act or of any rule or regulation adopted by the Delaware River Port Authority, or its said subsidiary corporations, or for any evasion or attempt to evade payment of tolls, fares or charges, the offender or offenders shall be subject to a fine or penalty or not less than $10.00 or more than $25.00, together with costs, to be adjudged by the proper judicial officer of the city and county of Philadelphia or other proper judicial officer of the Commonwealth of Pennsylvania or of the State of New Jersey before whom such offender or offenders may be brought; and on default of payment of such fine or penalty, then to imprisonment of not less than 10 days or more than 30 days in the place of incarceration decreed by said magistrate or other judicial officer; and upon conviction of any subsequent offense, shall be subject to a fine or penalty of not less than $25.00 or more than $50.00, together with costs, or to imprisonment of not less than 30 days or more than 60 days, or both, at the discretion of the said magistrate or other judicial officer.

> *Ref:  New Jersey, L. 1957, c. 35, p. 64, ' 1. Amended L. 1969, c. 290, ' 1; L. 1975, c. 348, ' 1; L. 1986, c. 209, ' 1, N.J.S.A. 32:4-6*[2]

## C.  Police officers; completion of police training course; exemptions; compliance with annual firearms qualifications

a. The Delaware River Port Authority shall require a police officer appointed under section 1 of P.L. 1957, c. 35 (C. 32:4-6) to successfully complete a police training course jointly approved and authorized by the Attorneys General of the State of New Jersey and the Commonwealth of Pennsylvania, and shall further require that the police officer shall fully comply with the annual firearms qualifications standards established under subsection j. of N.J.S.A. 2C:39-6.

b. A police officer may be exempted from the police training requirements of subsection a. of this section if he demonstrates that he has successfully completed a police training course conducted by any federal, state or other public or private agency, the requirements of which are determined by the attorneys general of the two states to be substantially equivalent to the police training course requirements of subsection a. of this

---

[2] See explanatory note *supra*, p. 25.

section; but notwithstanding such exemption, the police officer shall fully comply with the annual firearms qualification standards referenced in subsection a. of this section.

*Ref:   New Jersey, L. 1986, c. 209, ' 2; N.J.S.A. 32:4-6.1*[3]

## D.  Police training requirements; firearms qualifications standards

The Delaware River Port Authority and such subsidiary corporations shall require a police officer appointed under section 1 to successfully complete a police training course jointly agreed to by the Attorney General of the State of New Jersey and the Municipal Police Officers' Education and Training Commission with the approval of the Attorney general of the Commonwealth of Pennsylvania and shall further require that the police officer shall fully comply with the annual firearms qualifications standards as approved by the Attorney General of the Commonwealth of Pennsylvania.

A police officer may be exempted from the police training requirements of this section if he demonstrates that he has successfully completed a police training course conducted by any Federal, State or other public or private agency, the requirements of which are determined by the Attorney General of New Jersey and the Municipal Police Officers' Education and Training Commission with the approval of the Attorney General of the Commonwealth of Pennsylvania to be substantially equivalent to the police training course requirements of this section, but notwithstanding such exemption, the police officer shall fully comply with the annual firearms qualification standards set forth in this section.

*Ref:   Pennsylvania, 1957, April 12, P.L. 61, No. 34, ' 1.1, added 1994, Dec. 7, P.L. 792, No. 110, ' 2, imd. effective; 36 P.S. ' 3504.1a.*

---

[3] See explanatory note, *supra*, p. 25.

## III. CUMULATIVE NATURE OF POWERS

The powers vested in the Delaware River Port Authority by this act shall be construed as being in addition to and not in diminution of the powers heretofore vested in the Delaware River Port Authority.

> *Ref:   Pennsylvania, 1957, April 12, P.L. 64, ' 2; 36 P.S. ' 3504.2*
> *New Jersey, L. 1957, c.35, p. 65 ' 2; N.J.S.A. 32:4-7*

## IV. GOVERNOR TO APPLY TO CONGRESS FOR CONSENT AND APPROVAL

The Governor is hereby authorized to apply, on behalf of the Commonwealth of Pennsylvania, to the Congress of the United States for its consent and approval to the aforesaid compact or agreement; but in the absence of such consent and approval, The Delaware River Joint Commission shall have all of the powers which the Commonwealth of Pennsylvania and the State of New Jersey may confer upon it without the consent and approval of Congress.

> *Ref:   Pennsylvania, 1931, June 12, P.L. 575, ' 3; 36 P.S. 3505*
> *New Jersey, L. 1931, c. 391, ' 3, p. 1234; N.J.S.A. 32:3-15*

## V. DELAWARE RIVER BRIDGE BONDS

### A. Delaware river bridge bonds; acceptance of bonds as reimbursement for moneys contributed

In lieu of the moneys provided for to be paid to the Commonwealth of Pennsylvania and the City of Philadelphia from the sale of bonds or other obligations by the Delaware River Joint Commission, in accordance with the provisions of the act, approved the twelfth day of June, one thousand nine hundred and thirty-one (Pamphlet Laws, five hundred seventy-five), entitled "An act providing for joint action by Pennsylvania and New Jersey in the development of the ports on the lower Delaware River, and the improvement of the facilities for transportation across the river; authorizing the Governor, for these purposes, to enter into an agreement with New Jersey; creating The Delaware River Joint Commission and specifying the powers and duties thereof including the power to finance projects by the issuance of revenue bonds; transferring to a new commission all the powers of the Delaware River Bridge Joint Commission; and making an appropriation," and the similar act of the State of New Jersey, by which the said states have heretofore entered into an

32

agreement, the Governor, Auditor General, and State Treasurer, acting on behalf of the Commonwealth of Pennsylvania, the mayor, city controller, and city treasurer of the City of Philadelphia, acting on behalf of the said city, and the proper officers designated by reciprocal legislation of the State of New Jersey, acting on behalf of said state, are hereby authorized to accept from the Delaware River Joint Commission, which commission is hereby authorized to issue and deliver to said states and city, bonds or other obligations of a par value equal to the amount determined by said commission to be due, respectively, the Commonwealth of Pennsylvania, the City of Philadelphia, and the State of New Jersey for moneys contributed towards the cost of acquiring property for and constructing the bridge over the Delaware River between the cities of Philadelphia and Camden, and the approaches thereto, as provided in said acts.  Said bonds shall bear interest at a rate to be fixed by said commission, but not less than four per centum (4%), and shall be issued in accordance with and under the authority of said act approved the twelfth day of June, one thousand nine hundred and thirty-one (Pamphlet Laws, five hundred seventy-five), and similar legislation of the State of New Jersey.

*Ref:   Pennsylvania, 1933, May 22, P.L. 892, ' 1; 36 P.S. ' 3506*[4]

## B. Acceptance of bonds from Delaware Rive Joint Commission; sale

L.1933, c. 282, p. 756, entitled "An act authorizing the commonwealth of Pennsylvania, the city of Philadelphia, and the state of New Jersey, to accept from the Delaware River Joint Commission bonds or other obligations, in lieu of moneys, for the repayment of the amounts due for moneys advanced in the construction of the Delaware river bridge, between the cities of Camden, New Jersey, and Philadelphia, Pennsylvania, and its approaches, and in the acquisition of property in connection therewith; providing for the disposition of such bonds, if delivered; authorizing the purchase thereof by custodial funds of the commonwealth of Pennsylvania, and by various boards, agencies, and commissions of the said city of Philadelphia and the state of New Jersey; and providing that this act shall become effective upon the adoption of reciprocal legislation by the commonwealth of Pennsylvania," approved June twenty-six, one thousand nine hundred and thirty-three, saved from repeal. [A reciprocal act authorizing New Jersey, Pennsylvania and Philadelphia to accept bonds of the Delaware River Joint Commission in payment of moneys advanced for the construction of the Camden-Philadelphia bridge, and provides for the sale or other disposition of such bonds.]

*Ref:   New Jersey, L. 1933, c. 282, p. 756, N.J.S.A. ' 32:6-2.*[5]

---

[4] See explanatory note *supra*, p. 25.

[5] See explanatory note, *supra*, p. 25.

## VI. DUTY OF COMMISSION TO INCREASE COMMERCE

**Increased commerce on Delaware river; duty of commission**

The Delaware River Joint Commission created under the authority of the act, approved the twelfth day of June, one thousand nine hundred thirty-one [Pamphlet Laws 575/chapter No. 391, laws of New Jersey 1931], entitled "An act providing for joint action by Pennsylvania and New Jersey in the development of the ports on the lower Delaware River, and the improvement of the facilities for transportation across the said river; authorizing the [Governor/New Jersey Interstate Bridge Commission on behalf of the State of New Jersey], for these purposes, to enter into an agreement with [New Jersey/the Commonwealth of Pennsylvania] creating The Delaware River Joint Commission and specifying the powers and duties thereof, including the power to finance projects by the issuance of revenue bonds; transferring to the new commission all the powers of the Delaware River Bridge Joint Commission; and making an appropriation," and a similar act of the [State of New Jersey/Commonwealth of Pennsylvania] is hereby directed to exercise its function in effectuating the purpose of Article I, paragraph (g), of the compact authorized by the aforesaid act, which reads as follows: "(g) The promotion of increased commerce on the Delaware River, both freight and passenger, and for this purpose, the publication of such literature and adoption of such means as may be deemed appropriate."

*Ref:  Pennsylvania, 1947, June 13, P.L. 598 ' 1; 36 P.S. ' 3509*
*New Jersey, L. 1947, c. 282, p. 988, ' 1; N.J.S.A. 32:5A-1*

## VII. POWER TO PROCEED WITH PROJECT

The Delaware River Port Authority (hereinafter sometimes called the "Authority") after investigation and study, having concluded plans, with estimates of cost and means of financing, for a new project for transportation across the Delaware River within the Port District, consisting of a new toll bridge for vehicular traffic across the Delaware River between a point or points within a one-mile radius of the intersection of Hedley Street and Delaware Avenue, in the City of Philadelphia, Commonwealth of Pennsylvania, and a point or points within a one-mile radius of the intersection of Derousse Avenue and River Road in the Township of Pennsauken, County of Camden, State of New Jersey, together with such approaches thereto and such highway connections as may be necessary or desirable (herein sometimes called collectively "new toll bridge"), and the Authority having made to the Legislatures of the Commonwealth of Pennsylvania and the State of New Jersey a

detailed report in 1963 dealing only with said project and having requested of said Legislatures authority to proceed with the project described in said report, all pursuant to, in accordance with and as provided in the Compact or Agreement between the Commonwealth of Pennsylvania and the State of New Jersey hereinafter mentioned, the Authority is hereby authorized and empowered to finance, construct, erect, acquire, operate, maintain and own such a new toll bridge for vehicular traffic, together with such approaches thereto and highway connections as the Authority may deem necessary or desirable, and to proceed with the said project outlined in said detailed report.  The Authority, in addition to other public purposes now or hereafter provided for it and other powers and duties now or hereafter conferred upon it and not in limitation thereof and notwithstanding any of the provisions of any act, shall have among its authorized purposes such financing, construction, erection, acquisition, operation, maintenance and ownership of such new toll bridge for vehicular traffic all pursuant to, in accordance with and as provided in this act and the Agreement or Compact as heretofore amended or supplemented (herein sometimes called the "Compact") between the Commonwealth of Pennsylvania and State of New Jersey creating The Delaware River Port Authority as a body corporate and politic, and defining its powers and duties, which said Compact as amended or supplemented to January 1, 1963, is duly authorized by the Acts of the Commonwealth of Pennsylvania, approved June twelve, one thousand nine hundred thirty-one, Act No. 200, Pamphlet Laws 575, July eighteen, one thousand nine hundred fifty-one, Act No. 214, Pamphlet Laws 1010, August ten, one thousand nine hundred fifty-one, Act No. 274, Pamphlet Laws 1206; and by the laws of the State of New Jersey, approved June thirty, one thousand nine hundred thirty-one, Chapter 391, Pamphlet Laws 1931, June twenty-six, one thousand nine hundred fifty-one, Chapter 287, Pamphlet Laws 1951, June twenty-six, one thousand nine hundred fifty-one, Chapter 288, Pamphlet Laws 1951, and has been duly consented to by the Congress of the United States by Public Resolution No. 26, Seventy-second Congress (S.J. Resolution 41) approved June fourteen, one thousand nine hundred thirty-two, Public Law 573, Chapter 921, Eighty-second Congress, Second Session, approved July seventeen, one thousand nine hundred fifty-two, Public Law 574, Chapter 922, Eighty-second Congress, Second Session, approved July seventeen, one thousand nine hundred fifty-two.

*Ref:   Pennsylvania 1963, Aug. 24, P.L. 1206, No. ' 1; 36 P.S. 3581*
*New Jersey L. 1964, c. 276, ' 1; N.J.S.A. 32:3-13.50*


## VIII. ACQUISITION OF PROPERTY

### A. Acquisition of property

(a) For the effectuation of any of its purposes, authorized by this act, the Authority is hereby granted, in addition to and in support of any other powers heretofore or hereafter granted to it, power and authority to acquire in its name by purchase or otherwise, on such terms and conditions and in such manner as it may deem proper, or by the exercise of the power of eminent domain, any land and other property which it may determine is

reasonably necessary for the new toll bridge referred to in this act or for the construction of such approaches thereto or highway connections as the Authority shall deem necessary, and any and all rights, title and interest in such land and other property, including public lands, parks, playgrounds, reservations, highways, or parkways, owned by or in which any county, city, borough, town, township, village, or other political subdivision of the Commonwealth of Pennsylvania or State of New Jersey has any right, title or interest, or parts thereof or rights therein and any fee simple absolute or any lesser interest in private property, and any fee simple absolute in easements upon, or the benefit of restriction upon, abutting property to preserve and protect such bridge, the approaches thereto or highway connections.  Upon the exercise of the power of eminent domain under this act, the compensation to be paid with regard to property located in the Commonwealth of Pennsylvania shall be ascertained and paid as provided by the act of July nine, one thousand nine hundred nineteen (Pamphlet Laws 814) and acts amendatory thereof and supplementary thereto insofar as the provisions thereof are applicable and not inconsistent with the provisions of the Compact and of this act, and upon the exercise of the power of eminent domain, the compensation to be paid with regard to property located in the State of New Jersey shall be ascertained and paid in the manner provided in chapter one of Title 20 of the Revised Statutes of New Jersey insofar as the provisions thereof are applicable and not inconsistent with the provisions of the Compact and of this act.  The Authority may join, in separate subdivisions in one petition or complaint, the descriptions of any number of tracts or parcels of land or property to be condemned and the names of any number of owners and other parties who may have an interest therein and all such land or property included in said petition or complaint may be condemned in a single proceeding: Provided, however, That separate awards shall be made for each tract or parcel of land or property: And provided further, That each of said tracts or parcels of land or property lies wholly in or has a substantial part of its value lying wholly within the same county.

(b) Whenever the Authority acquires under this section 2 the while or any part of the right of way of a public utility located in the Commonwealth of Pennsylvania, the Authority shall at its own expense, provide a substitute right of way on another and favorable location.  Such public utility shall thereupon provide for the transfer to or reconstruction upon, in, under or above said substitute right of way of any structures and facilities of said public utility located upon, in, under or above said original right of way at the time the same is so acquired.  The Authority is hereby authorized to enter into agreements with such public utility to contribute toward the expense of such transfer or reconstruction, and in the event that they are unable to agree on the amount to be paid, the matter shall be referred to the Pennsylvania Public Utility Commission, which shall, after hearing thereon, make a finding of the amount to be paid to such public utility by the Authority.  In case of failure of such public utility, within a reasonable time after notice so to do, to remove its facilities to such substitute right of way, the Pennsylvania Public Utility Commission shall have jurisdiction, on petition of the Authority, to order such transfer or reconstruction.  Any party to such proceedings shall have the right of appeal from the ruling of the Pennsylvania Public Utility Commission.  The Authority is hereby authorized to acquire, by purchase or by the exercise of the power of eminent domain, any necessary land or right of way for the relocation of any such public utility right of way and facilities.  The substitute right of way thus acquired shall be equal in estate to the original right of way acquired from the public

utility and the Authority shall deliver to the public utility a deed, duly executed and acknowledged, conveying to it an estate in the substitute right of way, at least equal to that owned by the public utility in the original right of way, or if such substitute right of way is to be acquired by purchase, the Authority shall procure and deliver to the public utility a deed conveying such estate to it from the owner of the land on which such substitute right of way is located.  This subsection (b) shall have no application to the relocation of public utility facilities located in the beds of public streets, roads or highways.

*Ref:   Pennsylvania, 1963, Aug. 24, P.L. 1206, No. ' 1; 36 P.S. 3582*[6]


## B. Additional powers; acquisition of property; regulations for installation, maintenance, etc., of public utility works

(a) for the effectuation of any of its purposes authorized by this act, the authority is hereby granted, in addition to and in support of any other powers heretofore or hereafter granted to it, power and authority to acquire in its name by purchase or otherwise, on such terms and conditions and in such manner as it may deem proper, or by the exercise of the power of eminent domain, any land and other property which it may determine is reasonably necessary for the new toll bridge referred to in this act or for the construction of such approaches thereto or highway connections as the authority shall deem necessary, and any and all rights, title and interest in such land and other property, including public lands, parks, playgrounds, reservations, highways, or parkways, owned by or in which any county, city, borough, town, township, village, or other political subdivision of the Commonwealth of Pennsylvania or State of New Jersey has any right, title or interest, or parts thereof or rights therein and any fee simple absolute in, easements upon, or the benefit of restrictions upon, abutting property to preserve and protect such bridge, the approaches thereto or highway connections.  Upon the exercise of the power of eminent domain under this act, the compensation to be paid with regard to property located in the Commonwealth of Pennsylvania shall be ascertained and paid as provided by the act of July 9, 1919 (Pamphlet Laws 814) and acts amendatory thereof and supplementary thereto insofar as the provisions thereof are applicable and not inconsistent with the provisions of the compact and of this act, and upon the exercise of the power of eminent domain, the compensation to be paid with regard to property located in the State of New Jersey shall be ascertained and paid in the manner provided in chapter 1 of Title 20 of the Revised Statutes of New Jersey insofar as the provisions thereof are applicable and not inconsistent with the provisions of the compact and of this act.  The authority may join, in separate subdivisions in one petition or complaint, the descriptions of any number of tracts or parcels of land or property to be condemned and the names of any number of owners and other parties who may have an interest therein and all such land or property included in said petition or complaint may be condemned in a single proceeding:  Provided, however, That

---

[6] See explanatory note, *supra*, p. 25.

separate awards shall be made for each tract or parcel of land or property:  And provided further, That each of said tracts or parcels of land or property lies wholly in or has a substantial part of its value lying wholly within the same county.

(b)  In addition to any other powers heretofore or hereafter granted to it, the authority, in connection with construction or operation of the project authorized by this act, shall have power to make reasonable regulations, for the installation, construction, maintenance, repair, removal, relocation and removal of tracks, pipes, mains, conduits, cables, wires, towers, poles or any other equipment and appliances (in this paragraph (b) called "works") located in the State of New Jersey or any public utility as defined in section 48:2-13 of the Revised Statutes of New Jersey, in, on, along, over or under any such project.  Whenever in connection with the construction or operation of such project the authority shall determine that it is necessary that nay such works, which now are or hereafter may be located in, on, along, over or under such project should be relocated in such project, or should be removed therefrom, the public utility owning or operating such works shall relocate or remove the same in accordance with the order of the authority, provided, however, that the cost and expenses of such relocation or removal, including the cost of installing such works in a new location or new locations, and the cost of any lands or any rights or interest in lands or any other rights acquired to accomplish such relocation or removal, less the cost of any lands or any rights or interests in lands or nay other rights of the public utility paid to the public utility in connection with the relocation or removal of such works, shall be paid by the authority and shall be included in the cost of such project.  In case of any such relocation or removal of works as aforesaid, the public utility owning or operating the same, its successors or assigns, may maintain and operate such works, with the necessary appurtenances, in the new location or new locations for as long a period, and upon the same terms and conditions, as it had the right to maintain and operate such works in their former location.

Ref:   *New Jersey, L. 1964, c. 276 Sec 2. N.J.S.A. 32:3-13.51*[7]

## IX. DEFINITION OF PROPERTY

The term "property", as used herein, includes, lands, structures, franchises and interests in land, including lands under water and riparian rights, and any and all things and rights usually included within the said term and includes not only fees simple absolute, but also any and all lesser interests such as easements, rights of way, uses, leases, licenses and all other incorporeal hereditaments, and every estate, interest or right, legal or equitable, including terms of years and liens thereon by way of judgments, mortgages or otherwise, claims for damages to real estate, and includes also personal property, franchises and any other rights granted by any statute or covenant.

Ref:   *Pennsylvania, 1955, Dec. 13, P.L. 830, No. ' 4; 36 P.S. ' 3584*
        *New Jersey L. 1964, c. 276, ' 3, N.J.S.A. 32:3-13.52*

---

[7] See explanatory note, *supra*, p. 25.

38

## X. ENTRY UPON LANDS FOR PURPOSE OF SURVEYS

The Authority and its duly authorized agents and employees may enter upon any land in the Commonwealth of Pennsylvania and State of New Jersey for the purpose of making such surveys, maps or other examinations thereof as it may deem necessary or convenient for the purpose of constructing the bridge, approaches and highway connections authorized hereby.

*Ref:    Pennsylvania, 1955, Dec. 13, P.L. 830, No. ' 5; 36 P.S. ' 3585*
*New Jersey L. 1964, c. 276, ' 4; N.J.S.A. 32:3-13.53*

## XI. TAX EXEMPTIONS

In addition to all tax exemptions given by the Compact to the Authority, to its property, and to the bonds or other securities or obligations issued by it, no property, real or personal, nor its transfer or use, shall be subject to any tax by the Commonwealth of Pennsylvania or the State of New Jersey, or any political subdivisions of either of them, imposed on the purchase, use, sale, transfer or on the privilege of transferring title to such property, or on the execution, delivery or recording of any written instrument in connection therewith, to or by the Authority, in carrying out the project authorized by this act or in carrying out any other undertaking of the Authority.

*Ref:    Pennsylvania, 1955, Dec. 13, P.L. 830, No. ' 6; 36 P.S. ' 3586*
*New Jersey L. 1964, c. 276, ' 5; N.J.S.A. 32:3-13.54*

## XII. APPROACHES AND HIGHWAY CONNECTIONS

Notwithstanding any of the provisions of this act the Authority shall not, in connection with the new toll bridge, construct any approach or highway connection in the Commonwealth of Pennsylvania unless and until the Department of Highways of said Commonwealth shall have filed with the Authority its written consent to the location and general plans of the approaches and highway connections, and the Authority shall not, in connection with the new toll bridge, construct any approach or highway connection in the State of New Jersey unless and until the State Highway Department of said State shall have filed with the Authority its written consent to the location and general plans of the approaches and highway connections.  As used in this paragraph, the term "approach" or "highway connection" means and includes any highway, road or structure for passage of vehicles, located inland of any of the established bulkhead lines of the Delaware River, including any highway, road or structure for passage of vehicles, necessary to create

access to the new toll bridge referred to in this acto or to connect such bridge with a highway system or other traffic facilities, or necessary to facilitate the flow of traffic in the vicinity of such bridge.

*Ref:   Pennsylvania, 1955, Dec. 13, P.L. 830, No. ' 7; 36 P.S. ' 3587*
*New Jersey L. 1964, c. 276, ' 6; N.J.S.A. 32:3-13.55*


## XIII. TOLL AND OTHER CHARGES

As provided in the Compact and, in any event, not in derogation of any powers granted therein or in any manner heretofore, the Authority is authorized to establish, levy, collect and combine tolls, rents, rates, and other charges and revenues in accordance with the Compact and the Congressional consents thereto as it may deem convenient or necessary for the use of the new toll bridge and of other bridges, projects and other undertakings authorized by the Compact and to use and pledge the same as provided in the Compact and the Congressional consents thereto.   The new toll bridge may be constructed, in whole or in part, with funds to be raised by the Authority on bonds or other securities or obligation issued or incurred by it pursuant to the Compact.

*Ref:   Pennsylvania, 1963, Aug. 24, P.L. 1206, No. ' 1; 36 P.S. ' 3588*
*New Jersey L. 1964, c. 276, ' 7, N.J.S.A. 32:3-13.56*


## XIV. PLEDGE OF CREDIT

Notwithstanding any provision of this act the Authority shall have no power to pledge the credit of the Commonwealth of Pennsylvania, or the credit of the State of New Jersey, or the credit of any county, city, borough, village, township or other municipality of said Commonwealth or of said State, or to create any debt of said Commonwealth or of said State or of such municipality.

*Ref:   Pennsylvania, 1955, Dec. 13, P.L. 830, No. ' 9; 36 P.S. ' 3589*
*New Jersey L. 1964, c. 276, ' 8; N.J.S.A. 32:3-13.57*

## XV. CUMULATIVE NATURE OF POWERS GRANTED

Any powers vested in the Authority by this act shall be in addition to and not in diminution of the powers heretofore vested by law in the Authority.

*Ref:   Pennsylvania, 1955, Dec. 13, P.L. 830, No. ' 10; 36 P.S. ' 3590*
*New Jersey L. 1964, c. 276, ' 9; N.J.S.A. 32:3-13.58*

## XVI. EFFECTIVE DATE - CONCOMITANT LEGISLATION

**A.**    This act shall take effect immediately but the Delaware River Port Authority shall not proceed with construction of the new toll bridge until or unless the State of New Jersey shall have enacted a substantially similar act.

*Ref:   Pennsylvania, 1955, Dec. 13, P.L. 830, No. ' 11; 36 P.S. ' 3591*

**B.**    The Commonwealth of Pennsylvania having heretofore enacted substantially similar legislation by Act No. 241 (Pamphlet Laws 830) approved December 13, 1955, and Act No. 507 approved August 24, 1963, this act shall take effect immediately.

*Ref:   New Jersey L. 1964, c. 276, ' 12; N.J.S.A. 32:3-13.61*

## XVII. COMPACT

The provisions of the agreement of Compact authorized by the Acts of the Commonwealth of Pennsylvania, approved the twelfth day of June, one thousand nine hundred thirty-one (Pamphlet Laws 575), the eighteenth day of July, one thousand nine hundred fifty-one (Pamphlet Laws 1010) and the tenth day of August, one thousand nine hundred fifty-one (Pamphlet Laws 1206) and by the Acts of the State of New Jersey approved the thirtieth day of June, one thousand nine hundred thirty-one, Chapter 391, the twenty-sixth day of June, one thousand nine hundred fifty-one, Chapter 288, and the twenty-sixth day of June, one thousand nine hundred fifty-one, Chapter 287 are maintained in full force and effect.

*Ref:   Pennsylvania, 1955, Dec. 13, P.L. 830, No. ' 12; 36 P.S. ' 3592*
*New Jersey L. 1964, c. 276, ' 10; N.J.S.A. 32:3-13.59*

## XVIII. SEVERABILITY

If any provision of this act or the application thereof to any person or circumstance is held invalid, such invalidity shall not affect other provisions or application of the act which can be given effect without the invalid provision or application and, to this end, the provisions of this act are declared to be severable.

*Ref:   Pennsylvania, 1955, Dec. 13, P.L. 830, No. ' 13; 36 P.S. ' 3593*
*New Jersey L. 1964, c. 276, ' 11; N.J.S.A. 32:3-13.60*

# EXHIBIT 2

Kevin D. Walsh
Acting State Comptroller
Office of the State Comptroller
20 West State Street
Trenton, New Jersey 08625
609-984-2888



## SUBPOENA DUCES TECUM
## THE OFFICE OF THE STATE COMPTROLLER

Delaware River Port Authority
C/O John T. Hanson, Chief Financial Officer
One Port Center
2 Riverside Drive
Camden, New Jersey 08101

You are hereby commanded to appear before the Office of the State Comptroller, located at 20 West State Street, 12th Floor, Trenton, New Jersey 08625, on **July 16, 2024 at 10:00a.m.**, to produce all original documentation and information set forth in **Schedule A**, attached. In lieu of your appearance, you may provide true copies of the documents and information identified in **Schedule A** on or before the return date to the address listed above by Certified Mail, Return Receipt Requested or via email to Suzanne.Davies@osc.nj.gov addressed to the attention of the New Jersey Office of the State Comptroller – Investigations Division. If you choose to do so, you must also complete and return the provided **Certification of True Copy**. For full instructions, see **Schedule B**, attached.

This Subpoena is issued pursuant to the authority granted to the Office of the State Comptroller as set forth in N.J.S.A. §52:15B-1 *et seq.* and N.J.S.A. §52:15C-1 *et seq.* Failure to comply with this Subpoena may render you liable for contempt of court and such other penalties as are provided by law.

Very truly yours,

KEVIN D. WALSH
ACTING STATE COMPTROLLER

By: */s/ Suzanne Davies*
Suzanne Davies, Esq.
Assistant Director
Investigations Division

Date: July 2, 2024

## SCHEDULE A

## DOCUMENTS AND INFORMATION BEING SOUGHT

1.   Any and all current policies and procedures governing the procurement of goods and services by the Delaware River Port Authority (the "Authority"), including guidelines, directives, and other guidance for the acquisition of goods and services, both publicly bid and otherwise, and internal procedures for reviewing and awarding public bids;

2.   A comprehensive list of any and all of the Authority's contracts for goods or services, including construction, professional (e.g., legal, financial), and technical services, between the Authority and any vendor, individual, business, or company, from January 1, 2021, to December 31, 2023. Include a detailed description of the goods or services provided, indication of whether the procurement was publicly bid, the vendor's name, the names of all known owners of the vendor, procurement dates, and the corresponding amounts;

3.   A comprehensive list of all current vendors providing goods and/or services to the Authority, including construction, professional, and technical services;

4.   Any and all current leases, subleases, and rental agreements between the Authority and any individual, company, or business for use of real property owned, leased, or controlled by the Authority in the State of New Jersey;

5.   Any and all documents related to the 1984 lease agreement between the Authority and Holt Logistics Corp. and related entities ("Holt") for real property beneath the Walt Whitman Bridge, specifically in connection with Holt's wharf and marine terminal operations in Gloucester City, New Jersey. This request includes the original lease agreement and any subsequent amendments, modifications, or related agreements reducing rent payments or otherwise altering the lease terms;

6.   Any and all procurement-related documents pertaining to Alpha Painting & Construction Co. and related entities; and

7.   Any and all documents related to independent external assessments conducted on the Authority's Office of the Inspector General. This

1

includes reports, correspondence, and any other materials indicating whether such assessments have occurred.

## SCHEDULE B

## INSTRUCTIONS

1. You have a right to consult with an Attorney and to receive said Attorney's advice with regard to this Subpoena.

2. Unless otherwise specifically indicated, the period of time encompassed by this subpoena shall be June 1, 2020 through the present.

3. You have a continuing obligation to respond to this Subpoena, even after producing documents to the Office of the State Comptroller. Therefore, if after you respond to this Subpoena, you create or receive a document or documents that this Subpoena seeks, you must promptly produce the document or documents to the Office of the State Comptroller. If subsequent appearances pursuant to your continuing obligation to respond to this Subpoena are required, the Office of the State Comptroller will make reasonable efforts to coordinate with you to identify dates that are mutually agreeable.

4. In complying with this Subpoena, you are required to produce all responsive documents that are in your possession, custody, or control, whether held by you or your past or present agent, employee, or representative acting on your behalf. You are also required to produce documents that you have a legal right to obtain, that you have a right to copy, or to which you have access, including bank records, as well as documents that you have placed in the temporary possession, custody, or control of any third party. No records, documents, data, or information called for by this request shall be destroyed, modified, removed, transferred, or otherwise made inaccessible to the Office of the State Comptroller.

5. If one or more documents or any portions thereof requested herein are withheld under a claim of privilege or otherwise, you must raise your objections on or before the date specified in the Subpoena for the documents to be produced. You must also identify each document or portion thereof as to which the objection is made, together with each author or maker of the document; each addressee or recipient of the document or person to whom its contents were disclosed or explained; the date thereof; the title or description of the general nature of the subject matter of the document and the number of pages; the present location of the document; each person who has possession, custody or control of the document; and the basis on which the objection is made.

6. In the event that any document which you would have reason to believe the Office of the State Comptroller might regard as responsive to this Subpoena has been (or is claimed to have been) destroyed or discarded or to otherwise be no longer within your possession, custody, or control, provide the following information concerning such document: identify that document (including a description of the document's subject

3

matter) and also include the date of that document's destruction or discard; the reason for the destruction or discard; the persons authorizing and/or carrying out such destruction or discard; and, the name and address of each recipient of the original or a copy of the document, together with the date or approximate date when each recipient received the document.

7. If the original records are not available, you may, at your expense, produce a certified true copy of all documents which are clear, complete, and legible and contain all four margins on each page. You must also complete the **"Certification of True Copy"** form, which is attached.

8. If a document is maintained solely on microfilm, microfiche, email, or by other electronic means (including but not limited to mass storage devices such as computer hard drives, flash drives or disks), please advise our office so that we may determine how best to obtain the documents.

9. Any draft, preliminary version, modification, revision, or amendment of a document, and any version that otherwise differs in any respect, such as having marginalia, markings, other notations or attachments, or otherwise, shall be considered a separate document and shall also be furnished as responsive.

10. In the event that any entity, organization, or individual denoted in this Subpoena is or has been also known by any other name than that herein denoted, this Subpoena shall be read also to include them under that alternative identification.

11. If compliance with this Subpoena cannot be made in full, compliance shall be made to the fullest extent possible and shall include an explanation of how the compliance is less than full and why fuller compliance is not possible.

12. If a date or other descriptive detail set forth in this Subpoena referring to a document or event is inaccurate, but the actual date or other descriptive detail is known to you or is otherwise apparent from the context of the request, you should produce all documents which would be responsive as if the date or other descriptive detail were correct.

<u>DEFINITIONS AND RULES OF CONSTRUCTION</u>

1.     **"Activities"** includes affairs, affiliations, agreements, alliances, arrangements, associations, contracts, plans, promises, pursuits, relationships, understandings, or undertakings, directly or indirectly, of a personal and professional nature.

2.     **"Any"** includes all.

3.     **"Communications"** or **"Correspondence"** includes, but is not limited to documents, letters, memoranda or notes, whether hardcopy (either handwritten, printed, or printed out

4

from an electronic format), or electronic (existing only as an email, text message or voicemail not printed out), sent or transmitted to another or others via personal delivery, U.S. or international postal mail, private delivery service (whether regularly scheduled or private courier), interoffice delivery, facsimile/fax machines, telephone, cellular phone, internet, email, instant messaging, or text message transmissions and any records thereof.

4.      "**Concerning**" means constituting, describing, evidencing, involved with, referring to, or relating to.

5.      "**Document,**" "**Documentation,**" or "**Submission**" includes, as applicable, any memorialization, whether typed, written, recorded, printed, or otherwise produced by hand, or produced by an electronic or digital process or otherwise. It includes, without limitation, agreements, letters or other correspondence, facsimile, email, telephone messages, logs or records, memoranda, notes, diaries, graphs, formulas, models, bulletins, computer printouts, transcripts, analyses, returns, summaries, accounts, estimates, projections, comparisons, messages, press releases, circulars, reviews, opinions, offers, studies, reports, official filings and submissions, investigations, questionnaires, surveys, work sheets, statistical data, notebooks, manuals, charts or other graphic matter analyses, commentary, expense reports, books, instructions, financial reports, working papers, records, notes, notices, confirmations, telegrams, teletypes, interoffice or intra office communications, cables, minutes, notations or other records of any type of any conversation, interview, telephone call, meeting, conference, discussion, or other communication.   It includes any transmittal slip, attachment, appendix, or other document referenced therein. It includes, without limitation, any information contained on audiotape, microfilm, or microfiche, as well as any electronically stored information that has been created using, or is otherwise maintained on, digital repositories or other electronic media including, but not limited to, personal computers, office workstations, laptops, hard drives, handheld devices (such as Palm, Trio or Blackberry), phones (office, cellular and/or home), removable electronic storage devices (such as CDs, DVDs, USB or thumb/travel drives and memory cards), shared network drives and servers (including email and/or file servers) and back-up tapes (or other disaster recovery/archiving media).

6.      "**Employee**" means any person, including independent contractor, who has performed any service for you, on your behalf, or under your name (whether on a full-time, part-time, piece-work, or other basis, and whether paid or unpaid).

7.      "**Person,**" "**persons,**" and "**anyone**" includes, without limitation, natural persons, firms, partnerships, associations, corporation, subsidiaries, divisions, departments, joint ventures, proprietorships, syndicates, or other legal, business, or governmental entities, and all subsidiaries, affiliates, divisions, departments, branches, and other units thereof.

8.     **"You," "your,"** and **"yours"** refers to (a) the entity to whom this subpoena is addressed and any predecessors; (b) the parent organization(s), subsidiaries or affiliates (if any) of the entity to whom this subpoena is addressed and any predecessors thereto; and, (c) present and former officers, directors, managers, employees, agents, and representatives of the entity to whom this subpoena is addressed.

9.     The terms **"and"** and **"or"** shall be construed broadly and either conjunctively or disjunctively to bring within the scope of this subpoena any information which might otherwise be construed to be outside its scope.

10.     The terms **"including"** and **"includes,"** with respect to any given subject, shall be construed broadly so that specification of any particular matter shall not be construed to exclude any documents that you have reason to believe the Office of the State Comptroller might regard as responsive.

11.     The terms **"referring," "relating," "related to,"** and **"concerning"** with respect to any given subject, shall be construed broadly to mean anything that constitutes, contains, embodies, reflects, identifies, concerns, states, refers to, deals with, or is in any manner whatsoever pertinent to that subject.

12.     The singular form of a word shall be construed to include within its meaning the plural form of the word and vice versa, so that neither shall be construed as a limitation.

13.     The use of any tense or any verb shall be considered to also include all other tenses, in a manner that gives this subpoena schedule the broadest reading.

14.     The masculine and feminine genders each include the other.

## CERTIFICATION OF TRUE COPY

      I certify that all documents produced in compliance with the Subpoena issued by the Office of the State Comptroller with the return date of July 16, 2024 are true copies of the original documents requested in the Subpoena.

      I certify that the foregoing statements made by me are true. I am aware that if any of the statements made by me are willfully false, I am subject to punishment.

Dated: _____

                           _____
                           Signature

                           _____
                           Print Name

                           _____
                           Title or Position

# EXHIBIT 3

Kevin D. Walsh
Acting State Comptroller
Office of the State Comptroller
20 West State Street
Trenton, New Jersey 08625
609-984-2888

:
:
:
:
:
:
:
:
:



## SUBPOENA AD TESTIFICANDUM
## OFFICE OF THE STATE COMPTROLLER

To: Raymond J. Santarelli
Office of General Counsel
Delaware River Port Authority
One Port Center
2 Riverside Drive
P.O. Box 1949
Camden, New Jersey 08101

You are hereby commanded to appear before the Office of the State Comptroller located at 20 West State Street, 12th Floor, Trenton, New Jersey 08625, on **Thursday, August 8, 2024, at 10:00 a.m.,** to provide sworn testimony under oath concerning the Delaware River Port Authority's collection and maintenance of records, and practice and procedures for responding to requests for information from government entities. Instructions for this subpoena are attached as Schedule A.

This Subpoena is issued pursuant to the authority granted to the Office of the State Comptroller as set forth in N.J.S.A. §52:15B-1 *et seq.* and N.J.S.A. §52:15C-1 *et seq.*

Failure to comply with this Subpoena may render you liable for contempt of court and such other penalties as provided by law.

Very truly yours,

KEVIN D. WALSH
ACTING STATE COMPTROLLER

DATE: July 17, 2024

By: /s/ *Suzanne Davies*
Suzanne Davies, Esq.
Assistant Director – Investigation Division

## SCHEDULE A

## INSTRUCTIONS

    1.    You have a right to consult with an attorney and to receive said attorney's advice with regard to this subpoena.

    2.    You have a continuing obligation to respond to this subpoena. The Office of the State Comptroller will make reasonable efforts to coordinate with you to identify dates that are mutually agreeable for subsequent appearances pursuant to your continuing obligation to respond to this subpoena.