**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DELAWARE RIVER PORT AUTHORITY,<br><br>Plaintiff,<br><br>v.<br><br>KEVIN D. WALSH, Acting New Jersey State Comptroller, in his official capacity,<br><br>Defendant. | Civil Action No. 3:24-cv-8186<br><br>Hon. Michael A. Shipp, U.S.D.J.<br><br>Motion Day: November 18, 2024<br><br>**ORAL ARGUMENT REQUESTED** |

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

Connell Foley LLP
56 Livingston Avenue
Roseland, NJ 07068
Tel.: (973) 535-0500
Fax.: (973) 535-9217
*Attorneys for Defendant,*
*Kevin D. Walsh, Acting New Jersey State Comptroller, in his official capacity*

*Of Counsel*:
John P. Lacey, Esq.

*On the Brief*:
John P. Lacey, Esq.
Alexander J. Gacos, Esq.

# TABLE OF CONTENTS


PRELIMINARY STATEMENT .... 1

BACKGROUND .... 3

A. The Office of the State Comptroller .... 3

B. The Delaware River Port Authority .... 4

C. OSC's Past Investigation into Complaints of Fiscal Impropriety at DRPA .... 6

D. OSC's Current Investigation of DRPA .... 7

LEGAL ARGUMENT .... 9

POINT I .... 10

DRPA'S CLAIMS ARE NOT RIPE FOR REVIEW AND THEREFORE THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THE COMPLAINT. .... 10

POINT II .... 12

THE COMPLAINT MUST BE DISMISSED BECAUSE DRPA FILED THIS LAWSUIT WITHOUT PROPER AUTHORIZATION FROM ITS BOARD .... 12

POINT III .... 13

DRPA'S STATE-LAW CLAIMS ARE BARRED BY SOVEREIGN IMMUNITY .... 13

POINT IV .... 15

DRPA'S COMPLAINT SHOULD BE DISMISSED BECAUSE THE SUBPOENAS ARE WITHIN OSC'S STATUTORY AUTHORITY. .... 15

A. State Law Grants OSC Clear Authority to Subpoena DRPA. .... 15

B. DRPA's Claims of Immunity from State Subpoenas Are Legally Unfounded and Contrary to the Compact's Provisions for Accountability. .... 23

1. The Compact's Express Terms and Structure Make Clear that the States Did Not Cede Sovereign Investigative Authority Over DRPA. .... 24

2. DRPA's Past Compliance With OSC Subpoenas Undermines Its Position on OSC's Investigative Authority. ........ 28

3. Other State Compacts Do Not Cede Investigative Authority Over Bi-State Agencies. ........ 28

4. DRPA's Claim of Immunity Violate the Compact's Accountability Provisions. ........ 29

CONCLUSION ........ 31

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alpha Painting & Constr. Co. v. Del. River Port Auth. of Pa.*,
No. 16-cv-05141, 2018 U.S. Dist. LEXIS 104695 (D.N.J. June 22, 2018)....30

*Antonelli v. New Jersey*,
419 F.3d 267 (3d Cir. 2005)....14

*Armstrong World Indus., Inc. v. Adams*,
961 F.2d 405 (3d Cir. 1992)....9

*Barsky v. United States*,
167 F.2d 241 (D.C. Cir. 1948)....27

*Battou v. Sec'y United States Dep't of State*,
811 F. App'x 729 (3d Cir. 2020)....9

*Benak v. All. Capital Mgmt. L.P.*,
435 F.3d 396 (3d Cir. 2006)....6, 15

*Blatchford v. Native Vill. of Noatak & Circle Vill.*,
501 U.S. 775 (1991)....13

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013)....11

*In re Cnty. of Atl.*,
230 N.J. 237 (2017)....29

*Cnty. of Morris v. Fauver*,
153 N.J. 80 (1998)....29

*Cnty. of Ocean v. Grewal*,
475 F. Supp. 3d 355 (D.N.J. 2020)....14

*Defense Distributed v. Platkin*,
697 F. Supp. 3d 241 (D.N.J. 2023)....14

*Del. River Joint Toll Bridge Comm'n v. Oleksiak*,
612 F. Supp. 3d 428 (E.D. Pa. 2020)....25

*Delaware River Joint Toll Bridge Commission v. Secretary Pennsylvania Department of Labor & Industry*,
985 F.3d 189 (3d Cir. 2021)....26, 27



15644345-10

*Hardy ex rel. Dowdell v. Abdul-Matin*,
198 N.J. 95 (2009) ....................29

*In re Energy Future Holdings Corp.*,
842 F.3d 247 (3d Cir. 2016)....................18

*First Choice Women's Resource Centers, Inc. v. Platkin*,
No. 23-cv-23076, 2024 U.S. Dist. LEXIS 6993 (D.N.J. Jan. 12, 2024)
(Shipp, J.) .................... *passim*

*Furando v. Ortiz*,
No. 20-cv-3739, 2020 U.S. Dist. LEXIS 70171 (D.N.J. Apr. 20, 2020)....................5

*Gil v. Clara Maass Med. Ctr.*,
450 N.J. Super. 368 (Super. Ct. App. Div. 2017) ....................20

*Gould Electronics Inc. v. United States*,
220 F.3d 169 (3d Cir. 2000)....................10

*Grasso Foods, Inc. v. Entex Techs., Inc.*,
No. 21-cv-17788, 2022 U.S. Dist. LEXIS 101300 (D.N.J. June 7, 2022)....................29

*Great Atl. & Pac. Tea Co. v. Borough of Point Pleasant*,
137 N.J. 136 (1994) ....................20

*Greenberg v. Lehocky*,
81 F.4th 376 (3d Cir. 2023) ....................11

*Hartig Drug Co. v. Senju Pharm. Co.*,
836 F.3d 261 (3d Cir. 2016)....................9

*Health Def., Inc. v. Rutgers*,
93 F.4th 66 (3d Cir. 2024) ....................5

*Hickson v. Marina Associates*,
743 F. Supp. 2d 362 (D.N.J. 2010) ....................13

*In re Horizon Healthcare Servs. Data Breach Litig.*,
846 F.3d 625 (3d Cir. 2017)....................10

*Idaho v. Coeur D'Alene Tribe*,
794 F.3d 1039 (9th Cir. 2015) ....................25

*Ill. Nat'l Ins. Co. v. Wyndham Worldwide Operations, Inc.*,
653 F.3d 225 (3d Cir. 2011)....................18

*Int'l Union of Operating Eng'rs, Local 542 v. Del. River Joint Toll Bridge Comm'n*,
311 F.3d 273 (3d Cir. 2002)....................23, 26, 27, 30

*Interstate Commerce Comm'n v. Goodrich Transit Co.*,
224 U.S. 194 (1912)....................27

*Iwanowa v. Ford Motor Co.*,
67 F. Supp. 2d 424 (D.N.J. 1999)....................10

*Jefferson Branch Bank v. Skelly*,
66 U.S. 436 (1862)....................23, 30

*Kastigar v. United States*,
406 U.S. 441 (1972)....................24

*King v. Christie*,
981 F. Supp. 2d 296 (D.N.J. 2013)....................14

*Klebanow v. N.Y. Produce Exch.*,
344 F.2d 294 (2d Cir. 1965)....................12

*Kokinda v. Pa. Dep't of Corr.*,
779 F. App'x 944 (3d Cir. 2019)....................10

*Lee v. TMZ Prod., Inc.*,
710 F. App'x 551 (3d Cir. 2017)....................6

*Levin v. Parsippany-Troy Hills*,
82 N.J. 174 (1980)....................20

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)....................11

*Maliandi v. Montclair State Univ.*,
845 F.3d 77 (3d Cir. 2016)....................5

*Manahawkin Convalescent v. O'Neill*,
217 N.J. 99 (2014)....................29

*Mayer v. Belichick*,
605 F.3d 223 (3d Cir. 2010)....................9

*Metro. Wash. Airports Auth. v. Pan*,
106 F.4th 355 (4th Cir. 2024)....................27

*Moore v. Del. River Port Auth.*,
80 F. Supp. 2d 264 (D.N.J. 1999)....................4

*Mortensen v. First Fed. Sav. & Loan Ass'n*,
549 F.2d 884 (3d Cir. 1977)....................10

*Murphy v. Waterfront Comm'n*,
378 U.S. 52 (1964) (White, J., concurring) ....................24

*N.J. Payphone Ass'n v. Town of W. N.Y.*,
130 F. Supp. 2d 631 (D.N.J. 2001) ....................14

*N.J. Sports & Exposition Auth. v. McCrane*,
61 N.J. 1 (1972) ....................19

*Nat'l Shooting Sports Found. v. Att'y Gen. of New Jersey*,
80 F.4th 215 (3d Cir. 2023) ....................11, 23

*New York v. New Jersey*,
598 U.S. 218 (2023)....................23

*NJ Criminal Interdiction LLC v. Walsh*,
No. A-4009-21, 2022 N.J. Super. Unpub. LEXIS 2311 (N.J. Super. Ct. App. Div. Nov. 23, 2022), *leave to appeal denied*, 253 N.J. 278 (2023) ....................17

*Onyiuke v. New Jersey State Supreme Court*,
435 F. App'x 111 (3d Cir. 2011) ....................13

*Pa. Fed'n of Sportsmen's Clubs v. Hess*,
297 F.3d 310 (3d Cir. 2002)....................13

*Pennhurst State School & Hosp. v. Halderman*,
465 U.S. 89 (1984)....................13, 14

*Priest v. Roncone,* N.J. Super. 537, 544 (Super. Ct. App. Div. 2004)....................20

*Saliba v. Attorney General of the United States*,
828 F.3d 182 (3d Cir. 2016)....................10

*Santiago v. Warminster Twp.*,
629 F.3d 121 (3d Cir. 2010)....................10

*Seila L. LLC v. CFPB*,
591 U.S. 197 (2020)....................22

*Serico v. Rothberg*,
234 N.J. 168 (2018) ....................29

*Sheridan v. NGK Metals Corp.*,
609 F.3d 239 (3d Cir. 2010)....................10

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) ....................9

*Strategic Environmental Partners, LLC v. Bucco*,
184 F. Supp. 3d 108 (D.N.J. 2016) ....................14

*Tarrant Reg'l Water Dist. v. Herrmann*,
569 U.S. 614 (2013) ....................23, 27

*Texas v. New Mexico*,
462 U.S. 554 (1983) ....................23

*Trump v. New York*,
592 U.S. 125 (2020) ....................11

*United States Bank Nat'l Ass'n v. B-R Penn Realty Owner, LP*,
No. 21-cv-0502, 2023 U.S. Dist. LEXIS 34643 (E.D. Pa. Mar. 2, 2023) ....................5

*Vanderklok v. United States*,
868 F.3d 189 (3d Cir. 2017) ....................5

*Wayne Land & Mineral Grp. LLC v. Del. River Basin Comm'n Maya Van Rossum*, 894 F.3d 509 (3d Cir. 2018) ....................25

**Statutes**

36 Pa. Stat. Ann. § 3401, art. II ....................26

36 Pa. Stat. Ann. §§ 3503 to 3509 ....................4

36 Pa. Stat. Ann. § 3503 ....................5, 20, 25, 27

36 Pa. Stat. Ann. § 3503.7 ....................18

28 U.S.C. § 1367 ....................14

N.J. Stat. Ann. § 32:3-1 to -18 .................... *passim*

N.J. Stat. Ann. § 34:1B-163 ....................22

N.J. Stat. Ann. § 43:15A-73 ....................22

N.J. Stat. Ann. § 52:15B .................... *passim*

N.J. Stat. Ann. § 52:15C ....................3, 4, 16, 17, 22

Pub. L. No. 74-411, § 9, 49 Stat. ....................26

Pub. L. No. 573, ch. 921, 66 Stat. 738, 739 (1952) ....................5

Pub. L. No. 574, ch. 922, 66 Stat. 747, 748 (1952) ....5

47 Stat. 308 No. 26, ch. 258 (1932) ....5

**Rules**

Fed. R. Civ. P. 12(b)(1)....10, 11

Fed. R. Civ. P. 12(b)(6)....10, 12

**Other Authorities**

Eleventh Amendment....13

Authority, MERRIAM-WEBSTER.COM DICTIONARY ....21

DRPA, *2010 ACFR* (June 28, 2011)....19

DRPA, *2012 ACFR* (July 26, 2013)....19

DRPA, *2014 ACFR* (June 19, 2015)....19

DRPA, *2016 ACFR* (June 30, 2017)....19

DRPA, *2018 ACFR* (June 30, 2019)....19

DRPA, *2020 ACFR* (June 30, 2021)....19

DRPA, *2022 ACFR* (July 27, 2023)....19

DRPA, *2023 Annual Comprehensive Financial Report*, at 7, 15 (July 16, 2024) ("*2023 ACFR*") ....18, 19

DRPA, *Board Resolution DRPA-10-040: Amending DRPA-10-040 Adopted August 18, 2010* (Aug. 25, 2010)....6, 26

DRPA, *Board Resolution DRPA-10-040: Requiring the Authority to Create an Audit Committee* (Aug. 18, 2010) ....26

DRPA, *Board Resolution DRPA-12-019: Glassboro-Camden Line EIS* (Feb. 15, 2012)....20

DRPA News Release, DRPA Issues Statement Regarding Complaint Forwarded to the Office of the State Comptroller (Jan. 29, 2020)....7, 8

DRPA News Release, DRPA's Statement on New Jersey Comptroller's Report (Mar. 29, 2012) ....7

Exec. Order 18 ....28

*Governor Rendell, Governor Christie Release New Correspondence Regarding Delaware River Port Authority Reforms*, PR NEWSWIRE (July 30, 2010, 12:02 p.m.) ........ 6

*Independent Agency*, BLACK'S LAW DICTIONARY (12th ed. 2024) ........ 21

*Independent Agency*, MERRIAM-WEBSTER.COM DICTIONARY ........ 21

*Instrumentality*, BLACK'S LAW DICTIONARY (12th ed. 2024) ........ 21

*Instrumentality*, MERRIAM-WEBSTER.COM DICTIONARY ........ 21

N.Y. Comp. Codes R. & Regs. Tit. 9 § 6.18 ........ 28

NJ Transit, *NJ Transit Board Advances South Jersey Transportation Projects* (Dec. 9, 2009) ........ 19

OSC Investigative Report, DRPA (Mar. 29, 2012) ........ 7

*Project* (May 31, 2023), at 11 ........ 20

*State Agency*, BLACK'S LAW DICTIONARY (12th ed. 2024) ........ 21

United States Constitution Article III ........ 9, 10



15644345-10

## PRELIMINARY STATEMENT

Defendant Kevin D. Walsh, the Acting New Jersey State Comptroller (the Comptroller), moves to dismiss the complaint filed by Plaintiff Delaware River Port Authority (DRPA) seeking to avoid answering two subpoenas that the Comptroller lawfully issued to DRPA.

In 2010, the governor of New Jersey called for the Office of the State Comptroller (OSC) to investigate claims of fiscal impropriety at DRPA, an agency created jointly by the states of New Jersey and Pennsylvania, which collects and uses public funds to operate bridges between the two states across the Delaware River. The claims of impropriety proved to be well-founded, as detailed in a public report of OSC's findings following a two-year investigation.

This case stems from OSC's follow-up investigation into similar claims of fiscal impropriety at DRPA. In July 2024, OSC served DRPA with two subpoenas for documents and witness testimony. DRPA objected—despite years of complying with OSC's investigations, including the current one—offering to produce the information requested only if OSC withdrew the subpoenas. Before OSC responded to DRPA's proposal or even sought to enforce DRPA's compliance, DRPA filed this federal action for relief from the subpoenas. DRPA's Complaint asks the Court to "determine the rights and legal relations between" DRPA and the Comptroller; declare, among other things, that the Comptroller cannot enforce the subpoenas against DRPA; and enjoin the Comptroller from so enforcing the subpoenas—even though, when DRPA filed this action, the Comptroller had not attempted to enforce the subpoenas. DRPA's request should be rejected, and its Complaint dismissed, for four reasons.

First, DRPA's claims are not ripe for review, because a state court has not decided whether to enforce OSC's "non-self-executing state-administrative" subpoenas against DRPA. When this exact issue was presented in *First Choice Women's Resource Centers, Inc. v. Platkin*, No. 23-cv-23076, 2024 U.S. Dist. LEXIS 6993 (D.N.J. Jan. 12, 2024) (Shipp, J.), this Court dismissed *sua*



15644345-10

*sponte* the complaint for lack of subject matter jurisdiction. This Court explained that a federal court should not adjudicate "a dispute regarding the enforceability of the State's non-self-executing state-administrative subpoena" before "the state court tasked by [state law] with overseeing subpoena enforcement proceedings like this will, in fact, enforce the [s]ubpoena in its current form." *Id.* at *5, 11. So too here. OSC must apply to the state court to enforce these subpoenas, and no penalties or contempt for noncompliance can issue before then. N.J. Stat. Ann. § 52:15B-8. Unless and until that state-court enforcement occurs, as in *First Choice*, DRPA has not suffered an actual or imminent injury. The Court therefore lacks subject matter jurisdiction over this action.

Second, DRPA failed to satisfy the statutory prerequisites required to file this lawsuit. Specifically, DRPA needed its governing commissioners to vote in favor of its proposed lawsuit and memorialize that vote in a formal resolution. DRPA also had to notify the attorneys general of Pennsylvania and New Jersey of its intent to sue the Comptroller. DRPA failed to complete these steps. As a result, DRPA lacks the legally required authorization to bring this action, and it filed this suit in violation of its own organic compact.

Third, although this Court may adjudicate whether OSC's subpoenas are preempted by the Compact (a question of federal law), the sovereign immunity doctrine bars DRPA from suing the Comptroller in federal court under state law. The Complaint asks the Court to declare that the Comptroller cannot investigate or subpoena DRPA "under the Comptroller Statute or the Inspector General Statute," two New Jersey state statutes. Compl. ¶¶ 52–65, p.15. To the extent that DRPA claims that the Comptroller exceeded his authority under state law in issuing the subpoenas—i.e., that his conduct violates ***state*** statutes—the claim cannot proceed here.

Finally, despite the lack of ripeness and the sovereign immunity bar, the Complaint still fails as a matter of law because it relies on two meritless theories for excusing DRPA's failure to comply with OSC's subpoenas. First, DRPA incorrectly claims that it is not subject to OSC's subpoena powers. But state law broadly empowers OSC to subpoena "any person" who it "reasonably believes" has "information related to a matter under investigation." The matters may concern, for instance, a recipient of state or public funds, the process of public contracting, the performance of public officials, or an entity exercising executive branch authority. DRPA fits within all—certainly at least one—of these classes. As for its second theory, DRPA engineers the untested legal theory that under federal law and the interstate compact that created DRPA, New Jersey is powerless to subpoena DRPA. Not only is this novel theory legally baseless and inconsistent with DRPA's past course of conduct; if accepted, it would eviscerate all accountability of DRPA, giving DRPA free rein to ignore subpoenas from OSC, the state judiciary, grand juries, and other administrative agencies.

For these reasons, the Court should grant the Comptroller's motion to dismiss the Complaint.

## BACKGROUND

### A. The Office of the State Comptroller

OSC exists to ensure financial oversight, accountability, and integrity in government operations at all levels, including state agencies, local governments, and educational institutions. N.J. Stat. Ann. § 52:15C-1. In relevant part, it derives its authority from two "enabling statutes": *first*, the statute that created the Office of the Inspector General (OIG), N.J. Stat. Ann. §§ 52:15B-1 to 52:15B-16 (the "OIG Statute"); and *second*, the statute that established OSC as an independent office reporting directly to the governor, N.J. Stat. Ann. §§ 52:15C-1 to C-16 (the "Comptroller

Statute").[1] OSG later absorbed OIG, along with the Office of the Medicaid Inspector General (OMIG), and all its "functions, powers, and duties." N.J. Stat. Ann. §§ 52:15C-20 to C-24. Those powers include the power to conduct investigations, evaluations, inspections, and other reviews, and issue subpoenas. N.J. Stat. Ann. §§ 52:15B-7 to B-8(c); N.J. Stat. Ann. §§ 52:15C-21(c), 23(c).

The enabling statutes equip OSC with the powers to fulfill its statutory purpose. For instance, OSC may establish a full-time program of audit, investigation, and performance review to ensure accountability and oversight of recipients of state funds; to audit and monitor the awarding and execution of contracts involving significant public expenditures; and to investigate government officers, employees, and programs to promote efficiency and prevent misconduct. N.J. Stat. Ann. § 52:15B-7. When OSC receives complaints about fraud, waste, abuse, or mismanagement of state funds, it may investigate those complaints, exercising all necessary powers to fulfill this responsibility, including conducting investigations, audits, evaluations, inspections, and other reviews according to professional standards applicable in government contexts. *Id.* And, as mentioned above, as part of its investigations, OSC may issue subpoenas for documents and testimony. N.J. Stat. Ann. § 52:15B-8.

### B. The Delaware River Port Authority

DRPA is a bi-state agency originating from a compact (the "Compact") between New Jersey and Pennsylvania, as approved by Congress.[2] N.J. Stat. Ann. §§ 32:3-1 to -18; 36 Pa. Stat.

---

[1] The Comptroller Statute was subsequently expanded through amendments. N.J. Stat. Ann. §§ 52:15C-17 to C-24.

[2] For a fuller recitation of DRPA's origins, see *Moore v. Del. River Port Auth.*, 80 F. Supp. 2d 264 (D.N.J. 1999).

Ann. §§ 3503 to 3509; Pub. Res. No. 26, ch. 258, 47 Stat. 308 (1932).[3] The Compact refers to DRPA as "a single agency of both" New Jersey and Pennsylvania, and as "the public corporate instrumentality of" the two states for certain "public purposes, . . . exercising an essential governmental function in effectuating such purposes." N.J. Stat. Ann. §§ 32:3-1, -2; 36 Pa. Stat. Ann. § 3503; Compl. ¶ 19, ECF No. 1. DRPA's authorized purposes and functions include developing, operating, and maintaining the transportation infrastructure between New Jersey and Pennsylvania and ports along the Delaware River. N.J. Stat. Ann. § 32:3-2; 36 Pa. Stat. Ann. § 3503, art. I; Compl. ¶ 13; *see* DRPA, About DRPA.[4]

The Compact gives New Jersey considerable oversight of DRPA. For starters, DRPA is governed by 16 commissioners—eight from New Jersey and eight from Pennsylvania. N.J. Stat. Ann. § 32:3-3; 36 Pa. Stat. Ann. § 3503, art. II. The New Jersey commissioners are appointed by New Jersey's governor with the advice and consent of the New Jersey Senate. N.J. Stat. Ann. § 32:3-3. Each state's governor also enjoys veto power "over any action of any commissioner from that state." N.J. Stat. Ann. § 32:3-4; 36 Pa. Stat. Ann. § 3503, art. III. Under New Jersey's veto law, for example, the governor's veto of a New Jersey commissioner's action makes that action "null and void and of no effect." N.J. Stat. Ann. § 32:3-4c. DRPA can also promulgate rules or

---

[3] *See also* Pub. L. No. 573, ch. 921, 66 Stat. 738, 739 (1952); Pub. L. No. 574, ch. 922, 66 Stat. 747, 748 (1952), https://www.congress.gov/82/statute/STATUTE-66/STATUTE-66-Pg747.pdf#:~:text=Approved%20July%2017,%201952.%2060%20Stat.

[4] *Available at* https://drpa.org/about/. The Court may take judicial notice of "information [that] is publicly available on government websites." *Vanderklok v. United States*, 868 F.3d 189, 205 n.16 (3d Cir. 2017); *see Child.'s Health Def., Inc. v. Rutgers*, 93 F.4th 66, 71 n.3 (3d Cir. 2024) (taking judicial notice of materials on the website of "an instrumentality of the State of New Jersey"); *Furando v. Ortiz*, No. 20-cv-3739, 2020 U.S. Dist. LEXIS 70171, at *3 n.3 (D.N.J. Apr. 20, 2020) ("The Court may take judicial notice of public records and government documents on websites run by government agencies." (citing *Maliandi v. Montclair State Univ.*, 845 F.3d 77, 89 n.10 (3d Cir. 2016))); *see also United States Bank Nat'l Ass'n v. B-R Penn Realty Owner, LP*, No. 21-cv-0502, 2023 U.S. Dist. LEXIS 34643, at *39 (E.D. Pa. Mar. 2, 2023) (taking judicial notice of information on the website of "a government-charted private entity").

regulations only with New Jersey's and Pennsylvania's governors' approval. N.J. Stat. Ann. § 32:3-4.9. Every year, DRPA must provide Pennsylvania and New Jersey with a report detailing its operations and financial standing. N.J. Stat. Ann. § 32:3-13; Compl. ¶¶ 20–21. And, at least every five years, DRPA must also commission an outside management audit. *Id.*

### C. OSC's Past Investigation into Complaints of Fiscal Impropriety at DRPA

For more than a decade, DRPA has been the subject of public scrutiny based on reports of fiscal impropriety at the agency. In 2010, then-Governors Chris Christie of New Jersey and Ed Rendell of Pennsylvania publicly called for reform at DRPA following unearthed issues with its operations and practices. *Governor Rendell, Governor Christie Release New Correspondence Regarding Delaware River Port Authority Reforms*, PR NEWSWIRE (July 30, 2010, 12:02 p.m.).[5] The Delco Times reported that when DRPA responded with a series of reforms, Governor Christie vetoed some of them for being too soft—for example, he urged that DRPA should be investigated by OSC, not by "a law firm hired by the DRPA to do an investigation of the DRPA, being paid by the DRPA." *Christie to DRPA boss: Make changes – fast*, DELCO TIMES (Sept. 2, 2010, 4:13 a.m.).[6] And so, DRPA unanimously adopted a resolution inviting "any audit that [OSC] wishes to conduct." DRPA, *Board Resolution DRPA-10-040: Amending DRPA-10-040 Adopted August 18, 2010* (Aug. 25, 2010);[7] DRPA Minutes, p.4 (Aug. 25, 2010).[8]

---

[5] *Available at* https://www.prnewswire.com/news-releases/governor-rendell-governor-christie-release-new-correspondence-regarding-delaware-river-port-authority-reforms-99630429.html. A "government-issued press release is a matter of public record" that "may be considered on a motion to dismiss." *Lee v. TMZ Prod., Inc.*, 710 F. App'x 551, 558 n.8 (3d Cir. 2017).

[6] *Available at* https://www.delcotimes.com/2010/09/02/christie-to-drpa-boss-make-changes-fast/. The fact of an article's publication is properly noticed on a motion to dismiss. *Benak v. All. Capital Mgmt. L.P.*, 435 F.3d 396, 401 n.15 (3d Cir. 2006).

[7] *Available at* https://www.drpa.org/publish/library/DRPA-10-040_Amended.pdf.

[8] *Available at* https://www.drpa.org/pdfs/BoardMinutes_2010-08-25_DRPA.pdf.

In 2012, OSC published a report on DRPA's financial operations and practices, detailing "a history and culture of weak policies, procedures[,] and internal controls that have contributed to wasteful spending and mismanagement of the funds entrusted to DRPA by tollpayers." OSC Investigative Report, DRPA, at 1 (Mar. 29, 2012).[9] OSC found that DRPA paid insurance brokers more than $1.5 million in commissions for the placement of its insurance policies, regardless of whether each broker performed any service at all; that DRPA ignored significant policies and procedures related to the approval and monitoring of its $440 million economic development projects; that DRPA spent money from its "Social and Civil Sponsorship Fund," a fund meant to support "regional social service civic organizations," on organizations with ties to high-ranking DRPA officials, or on organizations that benefited DRPA officials in exchange for contributions; that DRPA's employee perk of getting free bridge passes had so little oversight that it was used by individuals who had no affiliation with DRPA; and that DRPA's lax expense-reimbursement process before 2010 enabled inappropriate expenditures. *Id.* at 1–8. For each finding, OSC recommended a reform that DRPA could implement to rectify the impropriety. *Id.* Afterward, DRPA issued a press release thanking OSC, "on behalf of all DRPA toll payers, the general public[,] and the DRPA itself," for identifying practices that necessitated reform. DRPA News Release, DRPA's Statement on New Jersey Comptroller's Report (Mar. 29, 2012).[10]

**D. OSC's Current Investigation of DRPA**

In 2020, DRPA issued a press release on the governor's referral to OSC of a complaint criticizing DRPA's sale of two real estate properties. *See* DRPA News Release, DRPA Issues Statement Regarding Complaint Forwarded to the Office of the State Comptroller (Jan. 29,

---

[9] *Available at* https://www.nj.gov/comptroller/news/docs/report_drpa_032912.pdf.

[10] *Available at* https://drpa.org/news/news.asp?param=2&num=4820&Archive=1.

2020).[11] DRPA defended its decision to sell what it described as "excess properties . . . unrelated to DRPA's core transportation mission." *Id.*

Years later, on July 2, 2024, OSC served DRPA with a subpoena duces tecum (the "Documents Subpoena") requesting seven categories of documents:

> 1. Any and all current policies and procedures governing the procurement of goods and services by the [DRPA] . . . including guidelines, directives, and other guidance for the acquisition of goods and services, both publicly bid and otherwise, and internal procedures for reviewing and awarding public bids;
>
> 2. A comprehensive list of any and all of the [DRPA's] contracts for goods or services, including construction, professional (e.g., legal, financial), and technical services, between [the DRPA] and any vendor, individual, business, or company, from January 1, 2021, to December 31, 2023. Include a detailed description of the goods or services provided, indication of whether the procurement was publicly bid, the vendor's name, the names of all known owners of the vendor, procurement dates, and the corresponding amounts;
>
> 3. A comprehensive list of all current vendors providing goods and/or services to the [DRPA], including construction, professional, and technical services;
>
> 4. Any and all current leases, subleases, and rental agreements between [the DRPA] and any individual, company, or business for use of real property owned, leased, or controlled by the [DRPA] in the State of New Jersey;
>
> 5. Any and all documents related to the 1984 lease agreement between the [DRPA] and Holt Logistics Corp. and related entities . . . for real property beneath the Walt Whitman Bridge, specifically in connection with Holt's wharf and marine terminal operations in Gloucester City, New Jersey. This request includes the original lease agreement and any subsequent amendments, modifications, or related agreements reducing rent payments or otherwise altering the lease terms;
>
> 6. Any and all procurement-related documents pertaining to Alpha Painting & Construction Co. and related entities; and

[11] *Available at* https://drpa.org/news/news.asp?param=2&num=8392.

> 7. Any and all documents related to independent external assessments conducted on [the DRPA's Inspector General]. This includes reports, correspondence, and any other materials indicating whether such assessments have occurred.

Compl. ¶ 29, Ex. 2.[12] The Documents Subpoena was returnable July 16, 2024. *Id.*

On July 17, OSC sent DRPA a subpoena ad testificandum (the "Testimony Subpoena") returnable on August 8, 2024. Compl. ¶ 36, Ex. 3. The Testimony Subpoena sought sworn testimony from DRPA's records custodian about DRPA's "collection and maintenance of records, and practice and procedures for responding to requests for information from government entities." *Id.*

DRPA responded that it would produce the documents requested only if the Comptroller withdrew the subpoenas. Compl. ¶ 42. DRPA then filed this federal action for declaratory and injunctive relief from the subpoenas.

In October 2024, OSC initiated a state-court action to enforce the subpoenas against DRPA. *See* Mot. to Enforce Subpoenas, *OSC v. DRPA*, MER-L-1997-24 (N.J. Super. Ct. Law Div. Oct. 9, 2024), Trans. ID: LCV20242607051. As of October 21, the court had not ruled on that motion.

## LEGAL ARGUMENT

Jurisdiction under Article III of the United States Constitution must be decided "as a threshold matter." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). Motions to dismiss on justiciability issues like ripeness implicate subject matter jurisdiction and are thus properly analyzed under Federal Rule of Civil Procedure (Rule) 12(b)(1). *Hartig Drug Co. v. Senju Pharm. Co.*, 836 F.3d 261, 267–68 (3d Cir. 2016); *Battou v. Sec'y United States Dep't of State*, 811 F. App'x 729, 732 (3d Cir. 2020) (citing *Armstrong World Indus., Inc. v. Adams*, 961

[12] Exhibits attached to the complaint may be considered on a motion to dismiss. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

F.2d 405, 410–11 (3d Cir. 1992)). A challenge to subject matter jurisdiction may be either facial or factual. *Gould Electronics Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). Relevant here, a facial challenge asserts that "the complaint, on its face, does not allege sufficient grounds to establish subject matter jurisdiction." *Iwanowa v. Ford Motor Co.,* 67 F. Supp. 2d 424, 438 (D.N.J. 1999). In analyzing a facial challenge, a court "must only consider the allegations of the complaint and documents attached thereto, in the light most favorable to the plaintiff." *Gould Electronics Inc.*, 220 F.3d at 176. A court considering a facial challenge construes the allegations in the complaint as true and determines whether subject matter jurisdiction exists. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

Next, to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)). A plaintiff cannot meet that standard by basing its claim on speculative allegations or theories of liability that are merely "conceivable." *See Saliba v. Attorney General of the United States*, 828 F.3d 182, 195 (3d Cir. 2016); *Kokinda v. Pa. Dep't of Corr.*, 779 F. App'x 944, 948 (3d Cir. 2019). Nor can it satisfy it by pleading threadbare recitals of the elements of a cause of action supported by conclusory statements. *See In re Horizon Healthcare Servs. Data Breach Litig.*, 846 F.3d 625, 633 (3d Cir. 2017).

DRPA's complaint should be dismissed under the strictures of Rule 12(b)(1) or 12(b)(6).

## POINT I

### DRPA'S CLAIMS ARE NOT RIPE FOR REVIEW AND THEREFORE THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THE COMPLAINT.

The Court should dismiss the complaint because DRPA's case is not ripe. Article III limits federal courts' jurisdiction to actual cases or controversies. U.S. Const., art. III, § 2, cl. 1. The

case-or-controversy limitation carries two requirements. First, plaintiffs must have standing to sue. *Greenberg v. Lehocky*, 81 F.4th 376, 384 (3d Cir. 2023) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013)). "To establish standing, a plaintiff must show an injury in fact fairly traceable to the challenged action that a favorable ruling may redress." *Id.* (citing *Clapper*, 568 U.S. at 409). "An injury in fact must be 'concrete and particularized,' not 'conjectural or hypothetical.'" *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). Second, a case must be ripe. *Nat'l Shooting Sports Found. v. Att'y Gen. of New Jersey*, 80 F.4th 215, 219 (3d Cir. 2023). It must not depend "on contingent future events that may not occur as anticipated, or indeed may not occur at all." *Id.* (quoting *Trump v. New York*, 592 U.S. 125, 131 (2020)). A complaint that does not meet this standard must be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1).

As this Court recently held, a plaintiff's pre-enforcement challenge to the enforceability of a "non-self-executing state-administrative subpoena" "ripen[s] only after the contingent future event that forms the basis of its alleged injury occurs, i.e., if and when the state court enforces the [s]ubpoena in its current form." *First Choice*, 2024 U.S. Dist. LEXIS 6993, at *4–5, 10 (holding that "a dispute regarding the enforceability of the State's non-self-executing state-administrative subpoena is not ripe for adjudication by a federal court"). In so holding, the Court reasoned that if it were to consider the plaintiff's claims before the state court enforced the subpoena, it would have to speculate whether the state court would in fact enforce the subpoena. *Id.* at *10–11.

*First Choice*'s holding is squarely on point. As in *First Choice*, OSC's subpoenas are "non-self-executing state-administrative" subpoenas. They derive their authority from N.J. Stat. Ann. § 52:15B-8(c), which makes clear that if OSC wishes to enforce a subpoena, it must file an enforcement action in state court and that a subpoena recipient cannot face penalties or contempt

for noncompliance unless and until the subpoena is enforced by the state court. *See* § 52:15B-8(c) ("If any person whom such subpoena is issued fails to" comply with the subpoena, OSC "may apply to the Superior Court and the court may order the person to appear and give testimony or produce the books, papers or other documents, as applicable. Any person failing to obey ***the court's order*** may be punished by the court as for contempt.") (emphasis added). Thus, as in *First Choice*, OSC's subpoenas "are not 'self-executing' because they require court intervention," and unless and until that intervention occurs, DRPA has not suffered an actual or imminent injury. 2024 U.S. Dist. LEXIS 6993, at *5.

DRPA's complaint should thus be dismissed for the same reason this Court *sua sponte* found subject matter jurisdiction lacking in *First Choice*: the state court has not decided whether to enforce OSC's subpoenas against DRPA.

## POINT II

## THE COMPLAINT MUST BE DISMISSED BECAUSE DRPA FILED THIS LAWSUIT WITHOUT PROPER AUTHORIZATION FROM ITS BOARD.

As a separate threshold matter, DRPA can file lawsuits only after satisfying certain statutory prerequisites—which DRPA failed to do here.[13] First, the Compact requires that for DRPA to initiate litigation, it must give prompt notice of such action to the attorneys general of Pennsylvania and New Jersey. N.J. Stat. Ann. § 32:3-2(i). DRPA must also make "provision for such notices . . . in a resolution authorizing any such . . . litigation" and "incorporate[] [the notices] in the minutes of the commission." *Id.* Even then, DRPA can sue only if "a majority of the members of the commission[s] from" Pennsylvania and New Jersey vote in favor of such action.

[13] Courts review a defense of lack of authority to sue under Rule 12(b)(6) "when the defect appears upon the face of the complaint." *Klebanow v. N.Y. Produce Exch.*, 344 F.2d 294, 296 n.1 (2d Cir. 1965).

N.J. Stat. Ann. § 32:3-4. Thus, if DRPA does not enter a formal resolution authorizing a lawsuit or receive approval from a majority of each state's commissioners, DRPA cannot bring the suit.

DRPA did not satisfy these statutory prerequisites. DRPA does not allege, nor does its website or meeting minutes from the past several months suggest, that it notified the attorneys general of Pennsylvania and New Jersey of its plan to sue the Comptroller. Nor did DRPA enter a formal resolution authorizing the litigation. *See* DRPA, July-September 2024 Board Minutes.[14] As a consequence of DRPA's noncompliance with the Compact, DRPA never had the right to sue the Comptroller in the first place. The Complaint should be dismissed for that reason alone.

## POINT III

### DRPA'S STATE-LAW CLAIMS ARE BARRED BY SOVEREIGN IMMUNITY.

As a further threshold matter, DRPA's ***state-law*** claim that the Comptroller violated the OIG or Comptroller Statutes in issuing the subpoenas, *see* Compl. ¶¶ 52–65, p.15, must be dismissed because it is barred by sovereign immunity under the Eleventh Amendment. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89 (1984). A state is not "subject to suit in federal court unless it has consented to suit." *Blatchford v. Native Vill. of Noatak & Circle Vill.*, 501 U.S. 775, 779 (1991). This prohibition extends to pendent state law claims against nonconsenting state defendants. *Hickson v. Marina Associates*, 743 F. Supp. 2d 362 (D.N.J. 2010); *Onyiuke v. New Jersey State Supreme Court*, 435 F. App'x 111 (3d Cir. 2011). Although the *Ex Parte Young* exception permits litigants to seek injunctive relief in federal court to prevent ongoing violations of ***federal*** law by state officials, *Pa. Fed'n of Sportsmen's Clubs v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002), no such exception exists for claims under ***state*** law: a plaintiff in federal court "may

[14] *Available* at https://www.drpa.org/board/board-agendas-minutes.html.

not bring state law claims—including state constitutional claims—against the State regardless [of] the type of relief it seeks," *King v. Christie*, 981 F. Supp. 2d 296, 310 n.12 (D.N.J. 2013) (citing *Pennhurst*, 465 U.S. at 104-06); *Defense Distributed v. Platkin*, 697 F. Supp. 3d 241, 275 (D.N.J. 2023) (dismissing "state law claims against a state actor" as barred by sovereign immunity).

Here, New Jersey has not waived its sovereign immunity for the claims asserted by DRPA. *Antonelli v. New Jersey*, 419 F.3d 267 (3d Cir. 2005). And the *Ex parte Young* exception does not apply to claims that the Comptroller violated state law by issuing subpoenas exceeding his authority under the OIG and Comptroller Statutes. *See Pennhurst*, 465 U.S. at 104–06. Therefore, DRPA's state-law claims against New Jersey are barred. *Strategic Environmental Partners, LLC v. Bucco*, 184 F. Supp. 3d 108 (D.N.J. 2016).

Alternatively, this Court can decline to exercise supplemental jurisdiction over these state-law claims after dismissing the federal-law claims for lack of ripeness or failure to state a claim. *See, e.g.*, *Cnty. of Ocean v. Grewal*, 475 F. Supp. 3d 355, 386 (D.N.J. 2020) (noting that "the district court has discretion to decline to exercise supplemental jurisdiction if it has dismissed all [the federal] claims over which it has original jurisdiction," and so declining in a challenge to a state agency policy). The inclusion of federal-law claims does not permit this Court to review pendant state-law claims against state officials, as 28 U.S.C. § 1367 does not authorize jurisdiction over claims against non-consenting states. *King*, 981 F. Supp. 2d at 310 n.12 ("[S]upplemental jurisdiction does not authorize district courts to exercise jurisdiction over claims against nonconsenting states."); *Acosta*, 288 F. Supp. 3d at 626; *see also N.J. Payphone Ass'n v. Town of W. N.Y.*, 130 F. Supp. 2d 631, 634 (D.N.J. 2001) ("[T]he federal courts do not resolve difficult or important matters of state law where it is not necessary to do so.").

## POINT IV

### DRPA'S COMPLAINT SHOULD BE DISMISSED BECAUSE THE SUBPOENAS ARE WITHIN OSC'S STATUTORY AUTHORITY.

Even if this Court had subject matter jurisdiction, the Complaint would still fail because DRPA's only legal theories—that (1) OSC's enabling statutes do not permit OSC to subpoena DRPA, and (2) the Compact makes New Jersey powerless to subpoena DRPA—are wrong as a matter of law.

### A. State Law Grants OSC Clear Authority to Subpoena DRPA.

OSC's enabling statutes—the OIG Statute and Comptroller Statute—subject DRPA to OSC's subpoena powers. The straightforward language of both statutes expressly gives OSC wide latitude to carry out its oversight duties. The OIG Statute, for instance, permits OSC to subpoena "***any person*** whom [OSC] reasonably believes may be able to give information relating to a matter under investigation." N.J. Stat. Ann. § 52:15B-8(c) (emphasis added). OSC may use that broad subpoena power in exercising its authority to "investigate complaints concerning alleged fraud, waste, abuse, or mismanagement of State funds." N.J. Stat. Ann. § 52:15B-7. That broad grant of investigatory power is intended to promote "increased accountability, integrity, and oversight of" a non-exhaustive list of state entities and functions, including the following:

- ***all*** recipients of State funds, ***including, but not limited to,*** State departments and agencies, independent authorities, county and municipal governments, and boards of education;

- the awarding and the execution of contracts awarded by the State, or ***any*** of its independent authorities, commissions, boards, agencies, or instrumentalities, which contracts involve a significant expenditure of public funds or are comprised of complex or unique components, or both, as determined by [OSC]; and

- the performance of governmental officers, employees, appointees, functions, and programs in order to promote efficiency, to identify cost savings, and to detect and prevent misconduct within the programs and

> operations of ***any governmental agency*** funded by, or disbursing, State funds.

*Id.* (emphasis added); *see also* N.J. Stat. Ann. § 52:15B-8 (granting OSC "all the powers necessary to carry out the duties and functions and to fulfill the responsibilities described in [the OIG Statute] including the power to conduct investigations, and in pursuit thereof, evaluations, inspections, and other reviews").

Additionally, the Comptroller Statute charges OSC with auditing and monitoring areas of the state executive branch, "***including*** all entities exercising executive branch authority, public institutions of higher education, independent State authorities, units of local government and boards of education." N.J. Stat. Ann. § 52:15C-5 (emphasis added). Like the OIG Statute, the Comptroller Statute also authorizes OSC to audit and monitor government contracting, N.J. Stat. Ann. § 52:15C-7, giving OSC "all the powers necessary to carry out the duties and functions" of its oversight mission, N.J. Stat. Ann. § 52:15C-8. In fact, OSC may "call upon ***any*** department, office, division, agency or independent authority of State government to provide such information, resources, or other assistance deemed necessary," and those entities "***shall*** cooperate" with OSC. N.J. Stat. Ann. § 52:15C-6 (emphasis added).

The legislature's stated intent underlying OSC's enabling statutes also dictates reading them broadly enough to cover oversight investigations of DRPA. In the OIG Statute, the legislature stresses the "fundamental" goals that "***all government officials be publicly accountable*** for" the expenditures of taxpayer funds, and the "critically important" goal that "public officers and employees, ***at all levels of government***, discharge their duties and responsibilities in a lawful and ethical manner, while conserving the fiscal resources that have been entrusted to the government's care by the taxpayers." N.J. Stat. Ann. § 52:15B-1 (emphasis added). And in the Comptroller Statute, the legislature states the "compelling need" for "independence and integrity

in the financial oversight of the discharge of [the State government's] duties and responsibilities." N.J. Stat. Ann. § 52:15C-1. Indeed, recognizing that "numerous agencies" were responsible for "monitoring and auditing government programs and agencies, reviewing the performance of government functions and programs, and investigating misconduct by public employees, all aimed at providing accountability and transparency, promoting the efficiency and integrity of government operations, and identifying cost savings," the legislature consolidated OIG into OSC to "allow for the systematic, efficient, and coordinated review and oversight of the State and its subdivisions." N.J. Stat. Ann. § 52:15C-20.

Taken together, the enabling statutes give OSC broad oversight powers and responsibilities with a clear goal: to frustrate patterns of fraud, waste, and abuse involving New Jersey state funds. With respect to OSC's subpoena power, the best reading of those statutes is this: OSC can subpoena any person it believes may be able to provide information to a matter it is investigating, regardless of whether that person is the target of the investigation,[15] as part of its investigations into "complaints concerning alleged fraud, waste, abuse, or mismanagement of State funds," so that it may "provide increased accountability, integrity, and oversight of" all entities exercising executive branch authority and all recipients of state and public funds, including but not limited to state departments, offices, divisions, agencies, independent authorities, commissions, boards, instrumentalities, and other public entities; the performance of government officers, employees, appointees, functions, and programs; and government contracting. *See NJ Criminal Interdiction*

---

[15] DRPA need not be the subject of OSC's investigation for OSC to subpoena it. As mentioned, OSC may subpoena "any person" who OSC "reasonably believes" has "information related to a matter under investigation." N.J. Stat. Ann. § 52:15B-8(c). It is unclear whether DRPA would contest a subpoena when DRPA was not the primary target of the investigation—for example, if OSC were investigating a vendor that did business with DRPA and other state agencies or instrumentalities.

*LLC v. Walsh*, No. A-4009-21, 2022 N.J. Super. Unpub. LEXIS 2311, at *2–3 (N.J. Super. Ct. App. Div. Nov. 23, 2022), *leave to appeal denied*, 253 N.J. 278 (2023) (applying OSC's subpoena power under the OIG Statute to a private police training vendor, explaining that "OSC and the powers it wields are the amalgamation of [OIG], [OMIG], and [OSC]" and linking OSC's subpoena power with other powers under the Comptroller Statute).[16] Under this wide-ranging authority, OSC's subpoena powers clearly extend to DRPA, regardless of its status as a bi-state agency.

DRPA conspicuously avoids saying it does not receive state funds. Instead, DRPA carefully alleges only that it "is not ***dependent*** on funds from the State of New Jersey." Compl. ¶ 61 (emphasis added). DRPA's carefulness is no surprise, as it plainly is a "recipient of state funds." N.J. Stat. Ann. § 52:15B-7. DRPA collects hundreds of millions of dollars in revenue from bridge tolls and Port Authority Transit Corporation (PATCO) train charges every year. *See, e.g.*, DRPA, *2023 Annual Comprehensive Financial Report*, at 7, 15 (July 16, 2024) ("*2023 ACFR*").[17] That revenue qualifies as state funds, which DRPA collects with the states' and Congress's permission through the Compact so that DRPA can carry out its transportation duties.[18] *See* N.J. Stat. Ann. § 32:3-13.56; 36 Pa. Stat. Ann. § 3503.7 (authorizing DRPA to collect tolls "in accordance with the [DRPA Compact] as it may deem . . . necessary for the use of the . . . bridges, projects[,] and other

[16] "When interpreting state law, [federal courts] follow a state's highest court; if that state's highest court has not provided guidance, [federal courts] are charged with predicting how that court would resolve the issue." *In re Energy Future Holdings Corp.*, 842 F.3d 247, 253–54 (3d Cir. 2016) (quoting *Ill. Nat'l Ins. Co. v. Wyndham Worldwide Operations, Inc.*, 653 F.3d 225, 231 (3d Cir. 2011)).

[17] *Available at* drpa.org/pdfs/ar2023.pdf.

[18] To resolve all doubt, even if toll revenue were somehow not "state funds," and even if DRPA had not received other sources of state funds, OSC could still subpoena DRPA, whose "contracts involve significant expenditure of public funds." N.J. Stat. Ann. § 52:15B-7. That toll revenue qualifies as public funds is beyond dispute.

undertakings authorized by the [DRPA Compact] and to use and pledge the same as provided in the [DRPA Compact]"); *see also N.J. Sports & Exposition Auth. v. McCrane*, 61 N.J. 1, 23 (1972) ("[T]he word 'State' includes the legislatively created autonomous corporate agencies or instrumentalities which carry on various aspects of its governmental activities. The [New Jersey Sports and Exposition Authority] being such an instrumentality it seems only sensible to say that the revenues received by it in effectuating and carrying on the delegated governmental purpose, including the revenue from horse racing, are revenues received for the support of government.").

Apart from toll revenue, DRPA has for years—indeed, since its creation—received large amounts of federal and state funds by other means. *See* N.J. Stat. Ann. § 32:3-7 (requiring DRPA to repay New Jersey "[a]n amount equal to the moneys contributed by [New Jersey] toward the cost of acquiring property for and constructing [the Benjamin Franklin Bridge]"). In the last two years alone, DRPA reportedly received nearly $30 million in federal and state grants. DRPA, *2023 ACFR*, at 45; *see also* DRPA, *2022 ACFR*, at 88 (July 27, 2023) (describing "federal and state grants" of $11,049,00 in 2022 and $7,365,000 in 2021 from the Federal Transit Administration ('FTA') and "other government agencies").[19] DRPA has also reportedly received non-grant funds from other New Jersey agencies, including NJ Transit, South Jersey Transportation Authority, and the New Jersey Department of Transportation. *See* NJ Transit, *NJ Transit Board Advances South*

[19] *Available at* drpa.org/pdfs/ar2022.pdf. For funding amounts in earlier years, see DRPA, *2020 ACFR*, at 86 (June 30, 2021), drpa.org/pdfs/ar2020.pdf (showing "federal and state grants" of $21,992,000 in 2020 and $22,139,000 in 2019); DRPA, *2018 ACFR*, at 93 (June 30, 2019), drpa.org/pdfs/ar2018.pdf ($26,994,000 in 2018 and $7,557,000 in 2017); DRPA, *2016 ACFR*, at 98 (June 30, 2017), drpa.org/pdfs/ar2016.pdf ($2,237,000 in 2016 and $36,758,000 in 2015); DRPA, *2014 ACFR*, at 76 (June 19, 2015), drpa.org/pdfs/ar2014.pdf ($16,431,000 in 2014 $17,673,000 in 2013); DRPA, *2012 ACFR*, at 75 (July 26, 2013), drpa.org/pdfs/ar2012.pdf ($25,042,000 in 2012 and $33,021,000 in 2011); DRPA, *2010 ACFR*, at 70 (June 28, 2011), drpa.org/pdfs/ar2010.pdf (showing grants from the FTA and NJ Transit for $20,603,000 in 2010 and $11,443,000 in 2009).

*Jersey Transportation Projects* (Dec. 9, 2009);[20] DRPA, *Board Resolution DRPA-12-019: Glassboro-Camden Line EIS* (Feb. 15, 2012);[21] DRPA Office of the Inspector General, *Audit of Glassboro - Camden Line (GCL) Project* (May 31, 2023), at 11.[22] These facts alone are dispositive. Even the narrowest reading of OSC's statutory powers permits it to subpoena a "recipient of state funds." The Court may therefore dismiss the Complaint on this basis alone.

In addition, DRPA is also subject to OSC's oversight based on DRPA's status as a state agency, independent authority, instrumentality, or all three, that awards and executes government contracts involving "a significant expenditure of public funds." N.J. Stat. Ann. § 52:15B-7. Because the enabling statutes do not define these terms, the Court gives the words their "ordinary and well-understood meanings." *Great Atl. & Pac. Tea Co. v. Borough of Point Pleasant*, 137 N.J. 136, 143 (1994) (citing *Levin v. Parsippany-Troy Hills*, 82 N.J. 174, 182 (1980)); *see Gil v. Clara Maass Med. Ctr.*, 450 N.J. Super. 368, 385 (Super. Ct. App. Div. 2017) ("The lack of a definition . . . does not . . . 'automatically' create an ambiguity." (citing *Priest v. Roncone*, 370 N.J. Super. 537, 544 (Super. Ct. App. Div. 2004), where the court relied on a general-purpose dictionary to define a disputed contract term))).

First, DRPA is an "independent state authority" and "instrumentality" for purposes of OSC's oversight. The Compact calls DRPA "the public corporate ***instrumentality*** of the Commonwealth of Pennsylvania and the State of New Jersey for" certain "public purposes, . . . exercising an essential governmental function in effectuating such purposes." N.J. Stat. Ann. § 32:3-2; 36 Pa. Stat. Ann. § 3503 (emphasis added). The Compact's label for DRPA aligns with

---

[20] *Available at* njtransit.com/press-releases/nj-transit-board-advances-south-jersey-transportation-projects.

[21] *Available at* drpa.org/publish/library/DRPA-12-019.pdf.

[22] *Available at* drpa.org/pdfs/OIG_2023-05-31_Audit-of-GCL-Project.pdf.

the plain meaning of "instrumentality," which is "a means or agency through which a function of another entity is accomplished, such as a branch of a governing body," *see Instrumentality*, BLACK'S LAW DICTIONARY (12th ed. 2024), or "something that serves as an intermediary or agent through which one or more functions of a larger controlling entity are carried out; a part or branch especially of a governing body," *Instrumentality*, MERRIAM-WEBSTER.COM DICTIONARY.[23] An "authority" may be "a government agency or corporation that administers a revenue-producing public enterprise" or a "government agency or public office responsible for an area of regulation." Authority, MERRIAM-WEBSTER.COM DICTIONARY.[24] And an "independent agency" is an agency "not under the direction of the executive," *Independent Agency*, BLACK'S LAW DICTIONARY (12th ed. 2024), "not part of any of the three branches of government," or a "unit of government created by legislation to administer the law in a particular area of public concern," *Independent Agency*, MERRIAM-WEBSTER.COM DICTIONARY.[25] DRPA fits both definitions. It operates with significant autonomy from direct executive control and carries out important government functions and programs on behalf of New Jersey and Pennsylvania, such as executing its core transportation infrastructure mission.

For the same principal reasons, DRPA just as easily classifies as a "state agency," or something akin to one, for purposes of OSC's oversight under the OIG Statute. A "state agency" is "an executive or regulatory body of a state," including "officers, departments, divisions, bureaus, boards, and commissions." *State Agency*, BLACK'S LAW DICTIONARY (12th ed. 2024). The Compact refers to DRPA as a "single ***agency of both states*** empowered to further the aforesaid

---

[23] *Available at* merriam-webster.com/dictionary/instrumentality.

[24] *Available at* merriam-webster.com/dictionary/authority.

[25] *Available at* merriam-webster.com/dictionary/agency.

interests of both states." N.J. Stat. Ann. § 32:3-1 (emphasis added). And DRPA operates like a state agency—for example, the DRPA board's actions can be vetoed by the governor, N.J. Stat. Ann. § 32:3-4a to -4c; DRPA employees may enroll in the New Jersey State Health Benefits Plan, N.J. Stat. Ann. § 34:1B-163; and some DRPA employees have been enrolled in New Jersey's public employee retirement system (PERS) since January 2006, N.J. Stat. Ann. § 43:15A-73. Given the text of the Compact, the plain meaning of the term "state agency," and all of the ways that DRPA operates like any other state agency, the subpoenas are further supported by OSC's oversight authority over agencies and instrumentalities of state government exercising executive branch authority.[26]

Finally, as a bi-state agency that operates on state funds, DRPA qualifies as "any governmental agency funded by, or disbursing, State funds." N.J. Stat. Ann. § 52:15B-7. The OIG Statute expressly grants OSC oversight of the "performance" of "officers, employees, appointees, functions and programs" of such agencies. *Id.*

In short, OSC's subpoenas are valid and enforceable under the OIG Statute and the Comptroller Statute. Thus, this Court should reject DRPA's request for relief from the subpoenas and dismiss the Complaint.

---

[26] Separately, OSC has oversight authority under the Comptroller Statute because DRPA exercises delegated "executive branch authority." N.J. Stat. Ann. § 52:15C-8. Through their interstate agreement, New Jersey and Pennsylvania delegated certain executive functions to DRPA, including the management of transportation infrastructure across the Delaware River between the two states. That function plainly constitutes an exercise of executive power, regardless of DRPA's independent agency characteristics. *See* pages 20–21 above; *cf. Seila L. LLC v. CFPB*, 591 U.S. 197, 220 (2020) (describing CFPB as "an independent agency . . . vested with significant executive power").

**B. DRPA's Claims of Immunity from State Subpoenas Are Legally Unfounded and Contrary to the Compact's Provisions for Accountability.**

As a bi-state agency, DRPA still must comply with subpoenas issued by agencies empowered by the state's legislature, like any other individual or entity. Nothing in the Compact suggests otherwise.

Courts interpret interstate compacts "as contracts under the principles of contract law." *New York v. New Jersey*, 598 U.S. 218, 223–25 (2023) (quoting *Tarrant Reg'l Water Dist. v. Herrmann*, 569 U.S. 614, 628 (2013)). To discern whether DRPA may evade OSC's subpoenas, the Court "begin[s] by examining the express terms of the Compact as the best indication of the intent of the parties." *Id.* at 223 (quoting *Tarrant*, 569 U. S. at 628). If the Compact is silent on that issue, the Court looks to "other interpretive tools to shed light on the intent of the Compact's drafters." *Tarrant*, 569 U.S. at 631. These interpretive tools include "background principles of contract law," "[p]rinciples of state sovereignty," how "other interstate . . . compacts have treated" the issue, "the parties' course of dealing," relevant undisputed facts, and "[f]undamental structural considerations." *New Jersey*, 598 U.S. at 224–26; *Tarrant*, 569 U.S. at 631; *Texas v. New Mexico*, 462 U.S. 554, 568 (1983).

At all steps, courts must mind "[t]he background notion that a State does not easily cede its sovereignty." *New Jersey*, 598 U.S. at 225 (quoting *Tarrant*, 569 U. S. at 631). For a state to "relinquish its sovereign powers," then, courts "expect a clear indication of such devolution, not inscrutable silence." *Tarrant*, 569 U.S. at 632; *see Int'l Union of Operating Eng'rs, Local 542 v. Del. River Joint Toll Bridge Comm'n*, 311 F.3d 273, 276 (3d Cir. 2002) ("[A] surrender of state sovereignty should be treated with great care, and the Supreme Court has stated that courts should not find a surrender unless it has been 'expressed in terms too plain to be mistaken.'" (quoting *Jefferson Branch Bank v. Skelly*, 66 U.S. 436, 446 (1862))). This principle applies especially

strongly here, where the sovereign authority at issue—the "broad power to compel residents to testify in court or before . . . agencies"—is "among the necessary and most important powers of the states . . . to assure the effective functioning of government in an ordered society." *Kastigar v. United States*, 406 U.S. 441, 444 (1972) (quoting *Murphy v. Waterfront Comm'n*, 378 U.S. 52, 93–94 (1964) (White, J., concurring) (observing that "such testimony constitutes one of the Government's primary sources of information")).

**1. The Compact's Express Terms and Structure Make Clear that the States Did Not Cede Sovereign Investigative Authority Over DRPA.**

Nothing in the Compact suggests, much less expressly states, that New Jersey ceded its sovereign investigative authority over DRPA. DRPA erroneously claims, however, that by requiring DRPA to audit itself and provide the states with reports on its financial and operational activities, the Compact "explicitly envisions" that "DRPA – not either Pennsylvania or New Jersey – shall investigate or otherwise audit" DRPA's "operational effectiveness." Compl. ¶¶ 20–22, 27; *see* N.J. Stat. Ann. § 32:3-13. DRPA ignores the Compact's express provisions of state oversight of DRPA's actions—the governors' veto power and the need for the governors' approval in DRPA rulemaking. N.J. Stat. Ann. § 32:3-4; 36 Pa. Stat. Ann. § 3503, art. III; N.J. Stat. Ann. § 32:3-4c; N.J. Stat. Ann. § 32:3-4.9. DRPA also mischaracterizes OSC's use of subpoenas to gather information from DRPA as an impermissible form of "unilateral regulation." Compl. ¶¶ 2–3.

DRPA attempts to evade OSC's investigation by shoehorning its audit and reporting requirements under N.J. Stat. Ann. § 32:3-13 into its authorized purposes and functions under § 32:3-2. To do so, DRPA misinterprets the Compact provision giving DRPA "all other powers" that "may be reasonably necessary or incidental" to "the effectuation of its ***authorized purposes***" or to "the exercise of any of the ***foregoing powers***," and "generally to exercise in connection with

its ***property and affairs***." N.J. Stat. § 32:3-5(n) (emphasis added). DRPA's misinterpretation of § 32:3-5(n) lacks merit and should be rejected.

DRPA's audit and reporting requirements fit into none of the "reasonably necessary or incidental" uses of "all other powers." As the Compact's express terms and structure make clear, DRPA's audit and reporting requirements are not part of any of its "authorized purposes." *See* N.J. Stat. Ann. §§ 32:3-2 (providing DRPA's initial purposes and functions); N.J. Stat. § 32:3-13.35 (providing additional powers for a bridge and ferry boat services); N.J. Stat. § 32:3-13.42 (providing additional powers for ferry boat services). Nor are they among the "foregoing powers" delineated in § 32:3-5 "[f]or the effectuation of [DRPA's] authorized purposes." And DRPA does not audit itself or report to the state "generally . . . in connection with its property and affairs," § 32:3-5(n); it does so as required by a separate section of the Compact, § 32:3-13.

This critical distinction between expressly authorized purposes and delineated powers, on the one hand, and separately provided audit and reporting requirements, on the other, makes all the difference. *Cf. Del. River Joint Toll Bridge Comm'n v. Oleksiak*, 612 F. Supp. 3d 428, 448 (E.D. Pa. 2020) ("We are not faced with a power claimed by one of the compacting states which is arguably not addressed in the Compact. We are only faced with compacting states agreeing to a specific grant of authority to a bi-state entity accompanied by another specific grant of "any and all powers" to carry out this same authority.").

The rest of the Compact, when read as a whole, underscores this distinction even more. "Provisions in a compact should be interpreted in light of the document as a whole." *Wayne Land & Mineral Grp. LLC v. Del. River Basin Comm'n Maya Van Rossum*, 894 F.3d 509, 532 (3d Cir. 2018) (citing *Idaho v. Coeur D'Alene Tribe*, 794 F.3d 1039, 1045 (9th Cir. 2015)). Here, the audit and reporting requirements bolster other provisions advancing the states' oversight authority over

DRPA. As mentioned, the Compact allows New Jersey's governor to veto "any action of any commissioner from that state," which makes that action "null and void and of no effect." N.J. Stat. Ann. § 32:3-4; 36 Pa. Stat. Ann. § 3503, art. III; N.J. Stat. Ann. § 32:3-4c. It also allows DRPA to promulgate rules or regulations only with New Jersey's and Pennsylvania's governors' approval. N.J. Stat. Ann. § 32:3-4.9.

New Jersey's governor has applied that veto authority without DRPA's objection—indeed, with DRPA's adherence. In 2010, New Jersey's governor vetoed DRPA's resolution to implement "oversight and audit procedures" beyond the Compact's audit and reporting requirements; so DRPA amended its resolution to "permit and cooperate in any audit that [OSC] wishes to conduct." *Compare* DRPA, *Board Resolution DRPA-10-040: Requiring the Authority to Create an Audit Committee* (Aug. 18, 2010) (vetoed),[27] *with* DRPA, *Board Resolution DRPA-10-040: Amending DRPA-10-040 Adopted August 18, 2010* (Aug. 25, 2010) (approved).[28] Thus, DRPA's illusory claim that it may evade additional oversight in performing its audit and reporting requirements ignores not only the express terms and context of the Compact but also DRPA's own past conduct.

DRPA's incorrect theories hinge on its expansive misreading of two cases—*Delaware River Joint Toll Bridge Commission v. Secretary Pennsylvania Department of Labor & Industry*, 985 F.3d 189, 195 (3d Cir. 2021) ("*DRJTBC*"); and *Operating Engineers*, 311 F.3d 273. *See* Compl. ¶¶ 26, 48. First, in *DRJTBC*, the court held that Pennsylvania could not enforce building safety regulations against a bi-state agency whose building projects were part of its "authorized purposes" and delineated "powers" under the compact. 985 F.3d at 196 (citing Pub. L. No. 74-411, § 9, 49 Stat. at 1060, 1062). Thus, *DRJTBC* concerned the state's right to regulate powers

---

[27] *Available at* https://www.drpa.org/publish/library/DRPA-10-040.pdf.

[28] *Available at* https://www.drpa.org/publish/library/DRPA-10-040_Amended.pdf.

that the compact expressly granted to the bi-state agency "[t]o assist the [agency] in the discharge of its duties." *Id.* at 191; *see* DRJTBC Compact, N.J. Stat. Ann. § 32:8-3 & 36 Pa. Stat. Ann. § 3401, art. II (granting DRJTBC specific powers "[f]or the effectuation of its authorized purposes").

Second, in *Operating Engineers*, the court rejected a local union's argument that New Jersey's and Pennsylvania's "complementary and parallel" employee relations laws "effectively amended" the compact and "therefore require[d] the Commission to engage in collective bargaining." 311 F.3d at 275. The *Operating Engineers* court reasoned that "New Jersey and Pennsylvania ha[d] not exhibited any express intent to amend the Compact or apply their collective bargaining laws to the Commission's employees." *Id.* at 280.

Neither *DRJTBC* nor *Operating Engineers* addresses a situation like the one here, where OSC seeks to investigate DRPA's compliance ***with the Compact***—not to enforce substantive state law. OSC's subpoenas for information do not offend any of the Compact's terms. Nor do they regulate or impede DRPA's "authorized purposes" of developing and maintaining interstate transportation routes between the two states. N.J. Stat. Ann. §§ 32:3-2, -5; 36 Pa. Stat. Ann. § 3503, art. I; *see Barsky v. United States*, 167 F.2d 241, 245 (D.C. Cir. 1948) ("[T]he requiring of information concerning a business is not regulation of that business." (quoting *Interstate Commerce Comm'n v. Goodrich Transit Co.*, 224 U.S. 194, 211 (1912))).

For these additional reasons, DRPA's claim of immunity from OSC's subpoenas fails as a matter of law.

### 2. DRPA's Past Compliance With OSC Subpoenas Undermines Its Position on OSC's Investigative Authority.

"A 'part[y's] course of performance under the Compact is highly significant' evidence of its understanding of the compact's terms." *Tarrant*, 569 U.S. at 636 (quoting *Alabama v. North Carolina*, 560 U.S. 330, 346 (2010)) (alteration in *Tarrant*).[29]

As an initial matter, this Court need not consider the parties' course of performance, because the Compact's and enabling statutes' language and structure prove that OSC's subpoenas are features of the oversight authority retained by the states. *See* Point IV.B.1 above. In case there was any doubt, DRPA's actions during OSC's first investigation confirm that DRPA never viewed the self-auditing requirement as the exclusive means of New Jersey's oversight of DRPA. According to DRPA's minutes and resolutions, DRPA never contested Governor Christie's veto of its resolution on its audit practices. *See* notes 27–28 above. In fact, DRPA did the opposite: It responded by amending the resolution in accordance with the governor's objections, welcoming "any audit that OSC wishes to conduct." *See* note 28 above. In doing so, DRPA recognized that it was subject to the same oversight authority that OSC invokes now. Indeed, just as in its first investigation, OSC seeks information about DRPA's current procurement policies and procedures, contracts and vendors, land deals, and internal inspector general's practices. Nothing has changed since the first investigation, except DRPA's unexplainable about-face.

### 3. Other State Compacts Do Not Cede Investigative Authority Over Bi-State Agencies.

The Comptroller's position aligns with how other compacts treat states' investigatory authority over bi-state agencies. For example, the New York Office of the Inspector General

---

[29] At least one court of appeals has considered a state's course of dealing with the bi-state entity, as opposed to with the state's fellow compacting state. *See Metro. Wash. Airports Auth. v. Pan*, 106 F.4th 355, 367 n.8 (4th Cir. 2024).

investigated the Waterfront Commission of New York Harbor, as detailed in the scathing 2009 report.[30] That investigation, just like OSC's here, followed the governor's executive order directing the inspector general to "examine, investigate, review and make recommendations with respect to the management and affairs of the Waterfront Commission of New York Harbor"—which involved issuing subpoenas. Exec. Order 18 (Spitzer, Oct. 15, 2007), N.Y. Comp. Codes R. & Regs. (NYCRR) Tit. 9 § 6.18.

**4. DRPA's Claim of Immunity Violate the Compact's Accountability Provisions.**

Finally, DRPA's claim of immunity could render the Compact's accountability measures meaningless. "[C]ourts enforce contracts based on," among other things, "the underlying purpose of the contract." *Serico v. Rothberg*, 234 N.J. 168, 178 (2018) (quoting *In re Cnty. of Atl.*, 230 N.J. 237, 255 (2017)) (internal quotation marks omitted). When ambiguity exists, courts "consider the parties' practical construction of the contract as evidence of their intention and as controlling weight in determining a contract's interpretation." *In re Cnty. of Atl.*, 230 N.J. at 255 (quoting *Cnty. of Morris v. Fauver*, 153 N.J. 80, 103 (1998)); *see Manahawkin Convalescent v. O'Neill*, 217 N.J. 99, 118 (2014) ("Contracts should be read 'as a whole in a fair and common sense manner.'" (quoting *Hardy ex rel. Dowdell v. Abdul-Matin*, 198 N.J. 95, 103 (2009))). And "[a]n interpretation which gives a reasonable, lawful[,] and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect." *Grasso Foods, Inc. v. Entex Techs., Inc.*, No. 21-cv-17788, 2022 U.S. Dist. LEXIS 101300, at *13–14 (D.N.J. June 7, 2022) (citation omitted).

---

[30] *Available at* https://www.wcnyh.gov/news/IG%20Investigation_8-11-2009.pdf#:~:text=York%20State%20Inspector%20General%20found%20that%20the%20unique.

Excusing DRPA from compliance with OSC's subpoenas would create a dangerous precedent. It would undermine the Compact's audit and reporting requirements by throttling the State's ability to verify DRPA's self-reporting. And it would flout the legislature's public policy goals of advancing "the public's awareness of and participation in governmental actions," a "more open . . . government" and "greater . . . understanding and participation of the public in government," "the public's fundamental right to know the process of governmental decision-making and to review the reasons for those decisions," and ensuring that the actions of "government and the agencies created thereby . . . remain fully accountable to the public." N.J. Stat. § 32:3-4.5 (describing public policy reasons for DRPA to conduct open meetings).

As this Court has observed,

> [T]he threat to the public fisc and the potential to undermine trust in government arising from a lack of transparency in the operations of such an important regional agency is manifest. The DRPA is, in essence, a taxing authority exercised through its power to collect tolls and it spends a considerable amount of money on public expenditures in the Philadelphia region. The travelling public has a right to know that such funds are spent fairly and wisely for the public good and not for the benefit of a favored few.

*Alpha Painting & Constr. Co. v. Del. River Port Auth. of Pa.*, No. 16-cv-05141, 2018 U.S. Dist. LEXIS 104695, at *20 (D.N.J. June 22, 2018). The Compact was meant to be read in a way that gives meaning to its accountability provisions, not in a way the cedes the oversight authority needed for the accountability provisions. Allowing DRPA to shoehorn the Compact's accountability measures into DRPA's authorized purposes and functions would defeat the common-sense purpose for including accountability measures, resulting in an "interpretation which leaves a part . . . of no effect."

As a matter of law, DRPA cannot prove that the Compact's imposition of some oversight measures under § 32:3-13 relinquished—"in terms too plain to be mistaken"—the states' right to

ask DRPA for more information by means of subpoenas. *Operating Eng'rs*, 311 F.3d at 280 (quoting *Skelly*, 66 U.S. at 446). Neither the Compact nor DRPA's status as a bi-state agency allows DRPA to evade OSC's subpoenas. DRPA's complaint therefore must be dismissed.

## CONCLUSION

For the foregoing reasons, the Comptroller respectfully requests that the Court dismiss the Complaint.

Respectfully submitted,

**CONNELL FOLEY LLP**
*Attorneys for Defendant,*
*Kevin D. Walsh, Acting New Jersey State Comptroller, in his official capacity*

Dated: October 21, 2024

By: s/ John P. Lacey
John P. Lacey, Esq.