John P. Lacey, Esq.
Alexander J. Gacos, Esq.
CONNELL FOLEY LLP
One Newark Center
1085 Raymond Boulevard, 19th Floor
Newark, New Jersey 07102
(973) 436-5800
Attorneys for Defendant, *Kevin D. Walsh, Acting New Jersey State Comptroller, in his official capacity*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DELAWARE RIVER PORT AUTHORITY,<br><br>Plaintiff,<br><br>v.<br><br>KEVIN D. WALSH, Acting New Jersey State Comptroller, in his official capacity,<br><br>Defendant. | Civil Action No. 3:24-cv-8186<br><br>Hon. Michael A. Shipp, U.S.D.J.<br><br>Motion Day: January 6, 2025 |

**BRIEF IN RESPONSE TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT AND IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

Connell Foley LLP
One Newark Center
1085 Raymond Boulevard, 19th Floor
Newark, New Jersey 07102
(973) 436-5800
*Attorneys for Defendant, Kevin D. Walsh, Acting New Jersey State Comptroller, in his official capacity*

*Of Counsel*:
John P. Lacey, Esq.
Alexander J. Gacos, Esq.

*On the Brief*:
John P. Lacey, Esq.
Alexander J. Gacos, Esq.

# TABLE OF CONTENTS


PRELIMINARY STATEMENT ........ 1

LEGAL ARGUMENT ........ 3

POINT I 3

DRPA'S COMPLAINT SHOULD BE DISMISSED BECAUSE ITS CLAIMS ARE NOT RIPE FOR REVIEW. ........ 3

POINT II 5

THE COMPLAINT SHOULD BE DISMISSED BECAUSE DRPA FILED THIS LAWSUIT WITHOUT SATISFYING PRECONDITIONS UNDER THE COMPACT. ........ 5

POINT III 7

DRPA'S STATE-LAW CLAIMS ARE BARRED BY SOVEREIGN IMMUNITY AND WAIVER. ........ 7

POINT IV 8

DRPA'S COMPLAINT SHOULD BE DISMISSED BECAUSE DRPA'S CLAIMS OF IMMUNITY FROM STATE SUBPOENAS ARE LEGALLY UNFOUNDED AND CONTRARY TO THE COMPACT TERMS. ........ 8

A. The Compact's Terms Encompass the State's Subpoena Authority. ........ 9

1. Under the Terms of the Compact, the Compacting States Retained Investigative Authority, Including Subpoena Powers, over DRPA. ........ 9

2. The Parties' Course of Dealing, Including DRPA's Past Compliance with OSC's Inquiries, Confirms That DRPA Never Understood the Compact to Shield It from OSC's Investigative Authority. ........ 14

3. The Compact and Case Law Do Not Support DRPA's Expansive Position on the Scope of Sovereignty Surrendered. ........ 16

B. The Challenged Subpoenas Do Not Equate to Regulation, and DRPA Does Not Identify Any Law Stating Otherwise. ........ 20

CONCLUSION ........ 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barsky v. United States*
167 F.2d 241 (D.C. Cir. 1948), *cert. denied*, 334 U.S. 843 (1948) ....................................20, 21

*Bowen v. Pub. Agencies Opposed to Soc. Sec. Entrapment*
477 U.S. 41 (1986)....................................................................................................11

*In re Cnty. of Atl.*
230 N.J. 237 (2017) ..................................................................................................10

*Del. River & Bay Auth. v. N.J. Pub. Emp't Relations Com.*
112 N.J. Super. 160 (App. Div. 1970) .......................................................................21

*Del. River Joint Toll Bridge Comm'n v. George Harms Constr. Co.*
258 N.J. 286 (2024) ..............................................................................................18, 19

*Del. River Joint Toll Bridge Comm'n v. Sec'y the Pa. Dep't of Lab. & Indus.*
985 F.3d 189 (3d Cir. Jan. 12, 2021) ...................................................16, 17, 19, 21

*Del. River Port Auth. v. FOP*
290 F.3d 567 (3d Cir. 2002).......................................................................................17

*First Choice Women's Res. Centers, Inc. v. Platkin*
No. 23-cv-23076, 2024 WL 150096 (D.N.J. Jan. 12, 2024) (Shipp, J.)
...................................................................................................1, 3, 4, 8, 17, 18, 20

*First Choice Women's Res. Centers, Inc. v. Platkin*
No. 23-cv-23076, 2024 WL 4756044 (D.N.J. Nov. 12, 2024) ....................................5

*Freehold Cogeneration Assocs., L.P. v. Bd. of Regul. Comm'rs of State of N.J.*
44 F.3d 1178 (3d Cir. 1995)...........................................................................................5

*Grasso Foods, Inc. v. Entex Techs., Inc.*
No. 21-cv-17788, 2022 WL 2046936 (D.N.J. June 7, 2022).....................................10

*Heightened Indep. & Progress), Inc. v. Port Auth. of N.Y. & N.J.*
693 F.3d 345 (3d Cir. 2012)..................................................................................16, 21

*Hess v. Port Auth. Trans-Hudson Corp.*
513 U.S. 30 (1994).......................................................................................................16



16117855-9

*Int'l Union of Operating Eng'rs, Local 542 v. Del. River Joint Toll Bridge Comm'n*
311 F.3d 273 (3d Cir. 2002)....................16, 18, 21

*Int'l Union of Operating Eng'rs, Local 68 v. Del. River & Bay Auth.*
147 N.J. 433 (1997)....................15, 19

*Interstate Commerce Comm'n v. Goodrich Transit Co.*
224 U.S. 194 (1912)....................21

*Keystone Outdoor Advert. Co. v. Sec'y of the Pa. DOT*
No. 19-cv-5951, 2022 WL 2805335, (E.D. Pa. Jan. 24, 2020)....................17, 18, 19, 21

*King v. Christie*
981 F. Supp. 2d 296 (D.N.J. 2013)....................7

*Manahawkin Convalescent v. O'Neill*
217 N.J. 99 (2014)....................10

*Merrion v. Jicarilla Apache Tribe*
455 U.S. 130 (1982)....................11

*Middle S. Energy, Inc. v. Arkansas Pub. Serv. Comm'n*
772 F.2d 404 (8th Cir. 1985)....................5

*NE Hub Partners, L.P. v. CNG Transmission Corp.*
239 F.3d 333 (3d Cir. 2001)....................5

*New Jersey v. Delaware*
552 U.S. 597 (2008) (Scalia, J., dissenting)....................17

*New York v. New Jersey*
598 U.S. 218 (2023)....................8, 9, 10, 11, 12, 16

*Pievsky v. Ridge*
98 F.3d 730 (3d Cir. 1996)....................12

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*
566 U.S. 639 (2012)....................7

*U. S. ex rel. Ricketts v. Lightcap*
567 F.2d 1226 (3d Cir. 1977)....................3

*Rockies Exp. Pipeline LLC v. Ind. State Nat. Res. Comm'n*
No. 08-cv-1651, 2009 WL 3060216 (S.D. Ind. Sept. 23, 2009)....................5

*Sayles Hydro Assocs. v. Maughan*
985 F.2d 451 (9th Cir. 1993) ....................5

*Serico v. Rothberg*
234 N.J. 168 (2018) ....................10

*State v. Murphy*
36 N.J. 172 (1961), *overruled in part on other grounds*, *Del. River Joint Toll Bridge Comm'n v. George Harms Constr. Co.*, 258 N.J. 286 (2024) ....................13

*Tarrant Reg'l Water Dist. v. Herrmann*
569 U.S. 614 (2013)....................10, 14, 16

*Texas v. New Mexico*
462 U.S. 554 (1983)....................10

*TRW Inc. v. Andrews*
534 U.S. 19 (2001)....................13

*United States v. Powell*
423 U.S. 87 (1975) (Rehnquist, J.) ....................6

*United States v. Tobin*
195 F. Supp. 588 (1961), *rev'd on other grounds*, 306 F.2d 270 (D.C. Cir. 1962) ....................20, 21

*United States v. Winstar Corp.*
518 U.S. 839 (1996) (Scalia, J., concurring) ....................10

*Waterfront Comm'n of New York Harbor v. Elizabeth-Newark Shipping, Inc.*
164 F.3d 177 (3d Cir. 1998)....................6

*Wayne Land & Min. Grp. LLC v. Del. River Basin Comm'n*
894 F.3d 509 (3d Cir. 2018)....................9

**Statutes**

36 Pa. Stat. Ann. § 3503, art. III ....................10

N.J. Stat. Ann. § 30:4D-57(d)(2) ....................21

N.J. Stat. Ann. § 32:3-2....................5, 6, 7, 10, 19

N.J. Stat. Ann. § 32:3-4....................10

N.J. Stat. Ann. § 32:3-4.7(b)....................11

N.J. Stat. Ann. § 32:3-4.9 .......... 10

N.J. Stat. Ann. § 32:3-4c .......... 10

N.J. Stat. Ann. § 32:3-5 .......... 7, 13, 19

N.J. Stat. Ann. § 32:3-13 .......... 11

N.J. Stat. Ann. § 52:15C-6 .......... 15

N.J. Stat. Ann. § 52:15C-8 .......... 21

N.J. Stat. Ann. § 52:15C-10(b)(4) .......... 21

N.J. Stat. Ann. § 52:15C-11(c)-(d) .......... 21

N.J. Stat. Ann. § 52:15C-14 .......... 15

N.J. Stat. Ann. § 32:3-4.6 .......... 11

N.J. Stat. Ann. § 32:3-12 .......... 19

N.J. Stat. Ann. § 32:3-13.54 .......... 19

## PRELIMINARY STATEMENT

This Court lacks subject-matter jurisdiction over DRPA's claims in this action. The state court has not resolved OSC's subpoena enforcement action, and DRPA therefore has no legal obligation to comply. Under these circumstances, settled precedent teaches that DRPA's case has not ripened and must be dismissed on that ground alone. *See First Choice Women's Res. Centers, Inc. v. Platkin*, No. 23-cv-23076, 2024 WL 150096, at *3–4 (D.N.J. Jan. 12, 2024) (Shipp, J.).

If this Court adjudicates the merits of this case—and it should not, because the ripeness defect deprives this Court of Article III jurisdiction to do so—then DRPA's many concessions make resolving these motions straightforward. DRPA does not deny that it falls within the ambit of entities that OSC is statutorily empowered to investigate. (Pl. Br. 38, 52–53, ECF No. 10-1.) DRPA does not deny or refute the principle that requiring information about an entity is not regulation of that entity. (Def. Mot. 27, ECF No. 5-1.) DRPA does not deny that its claim of immunity would gut the Compact's accountability provisions (Def. Mot. 29–30), or that its novel legal theory would give it free rein to ignore subpoenas from OSC, the state judiciary, grand juries, and other administrative agencies (Def. Mot. 3). DRPA concedes—indeed argues—that OSC's subpoenas do "not impact DRPA's core functions – operation of the DRPA bridges and PATCO transit system." (Pl. Br. 37–38.) DRPA concedes that the states' surrender of sovereignty did not leave DRPA fully independent. (Pl. Br. 43.) DRPA concedes that it requested a "friendly subpoena" from OSC during its 2010 investigation and recognized that subpoena as legally binding. (Pl. Br. 14.) And DRPA signals that if it wins here, it will never have to comply with a state's request for information again. (Pl. Br. 29.)

The compacting states could not possibly have intended that consequence. When they entered the Compact, they surrendered only a specific portion of their sovereignty so that DRPA could serve a certain regional interest: operating bridges and transit systems. No part of that

limited surrender encompassed absolute immunity from state-issued subpoenas—not in law or fact or common sense. To the contrary, the Compact provisions retaining state oversight of DRPA naturally encompass the state's authority to request information from DRPA. Were that not the case, the state governors' rights to exercise their powers based on verifiably accurate information would be gutted. The oversight provisions would be worthless, and the results would be ludicrous—consequences, once again, that the states could not have intended when they entered into the Compact.

DRPA frames the issue here as "whether OSC can ***ever*** exert ***any*** subpoena power against DRPA." (Pl. Br. 22.) But that framing downplays the extreme reach of this action. DRPA claims immunity from ***all*** state laws enabling state-issued subpoenas—as a blanket exemption regardless of whether the law enables the state's oversight authority, imposes any substantive legal duties, or impairs any of DRPA's authorized purposes. No court has ever endorsed such an extreme theory. This Court should not be the first.

## LEGAL ARGUMENT

### POINT I

### DRPA'S COMPLAINT SHOULD BE DISMISSED BECAUSE ITS CLAIMS ARE NOT RIPE FOR REVIEW.

This Court could not have been clearer: A plaintiff's pre-enforcement challenge to the enforceability of a "non-self-executing state-administrative subpoena"—like DRPA's challenge to OSC's subpoenas—"ripen[s] only after the contingent future event that forms the basis of its alleged injury occurs, i.e., if and when the state court enforces the [s]ubpoena in its current form." *First Choice*, 2024 WL 150096, at *3–4. (Def. Mot. 11–12.) Here, the state court has not decided whether to enforce OSC's subpoenas against DRPA. As a result, this federal action is unripe.

In response, DRPA all but admits that it seeks an advisory opinion on a contingent issue. It clarifies that it "has ***not*** sued to preclude" OSC "from obtaining the requested information," adding that it "offered to voluntarily" produce it.[1] (Pl. Br. 22.) Rather, DRPA says, it "sued to obtain resolution of a broader, more fundamental dispute that reaches beyond the particular subpoenas that OSC served on DRPA": "whether DRPA," as a bi-state agency, "is subject to OSC jurisdiction and subpoena authority," or "whether OSC can ***ever*** exert ***any*** subpoena power against DRPA." (Pl. Br. 22 (some emphasis omitted).) The Court should not entertain DRPA's curiosity. *See U. S. ex rel. Ricketts v. Lightcap*, 567 F.2d 1226, 1232 (3d Cir. 1977) ("Courts will not decide abstract legal issues posed by two parties; the issue in controversy must have a ***practical*** impact on the litigants." (emphasis added)). The only actual controversy raised in the Complaint is whether the two challenged subpoenas are valid—and that question is not ripe for review.

[1] A catalyst to OSC's subpoena-enforcement action was DRPA's resistance to producing a records custodian who could testify to the completeness of DRPA's so-called voluntary productions. *See generally* Mot. to Enforce & Lucas Cert., *OSC v. DRPA*, MER-L-1994-24 (N.J. Super. Ct. Law Div. Oct. 9, 2024), Trans. ID: LCV20242607051.

Because *First Choice* speaks so clearly about the lack of ripeness of DRPA's suit, DRPA attempts to get around it by pointing to supposed distinctions in the nature and scope of the underlying legal disputes. According to DRPA, the challenge in *First Choice* "was directed to the ***substance*** of the subpoena (i.e., whether the state agency was entitled to the information it sought), ***not*** whether the state agency had the ***jurisdiction and authority*** to issue any subpoena to the plaintiff." (Pl. Br. 30.) But neither characterization is quite right. In fact, the *First Choice* litigation implicated questions of jurisdiction and authority, because the plaintiff challenged the existence and constitutionality of the Attorney General's statutory basis to investigate First Choice via subpoena in the first place. *See* Pl.'s Mem. 31–38, *First Choice v. Platkin*, 23-cv-23076 (D.N.J. Dec. 14, 2023), ECF No. 6 (challenging the constitutionality of the Charitable Registration and Investigation Act, one of the statutes undergirding the subpoena); Pl. Reply 15, *First Choice v. Platkin*, 23-cv-23076 (D.N.J. Jan. 9, 2024), ECF No. 25 (arguing that "AG Platkin's brief also undermines his ability to show that any of the statutes he invokes ***give him authority to investigate*** First Choice," and asserting "[t]he absence of any valid statutory basis for this investigation") (emphasis added). And, as noted above, DRPA also quibbles with the substance of OSC's subpoenas insofar as it would deny OSC access to any witnesses or information beyond the scope of DRPA's so-called voluntary productions. *See* note 1 above.

Nor can DRPA salvage its claim by citing several cases for the proposition that a preemption challenge to an administrative process can ripen a case. None of the cases DRPA cites applies; those cases all involved plaintiffs' seeking to enjoin, sometimes through emergent relief, ongoing administrative processes, not non-self-executing subpoenas whose enforceability depends

on a contingent court ruling.[2] Here, by contrast, if both courts do nothing, OSC's non-self-executing administrative investigatory subpoenas will idle, and so may DRPA. *See First Choice Women's Res. Centers, Inc. v. Platkin*, No. 23-cv-23076, 2024 WL 4756044, at *11 (D.N.J. Nov. 12, 2024) ("[S]ubpoena issuance is a low bar and of no practical consequence in and of itself where the subpoena is non-self-executing, as here, because the Subpoena itself does not yet carry the power of law; a recipient can simply decline to respond at step two with no legal consequence." (citation omitted)).

Thus, this Court lacks subject-matter jurisdiction and should dismiss this case.

## POINT II

### THE COMPLAINT SHOULD BE DISMISSED BECAUSE DRPA FILED THIS LAWSUIT WITHOUT SATISFYING PRECONDITIONS UNDER THE COMPACT.

DRPA's arbitrary approach to compact-interpretation rears its head in another context—the preconditions necessary for DRPA to institute litigation. (Def. Mot. 12–13.) Under N.J. Stat. Ann. § 32:3-2(i), DRPA must notify the states and pass a resolution before it initiates or intervenes in "any litigation involving rates, preferences, rebates or other matters vital to the interest of the"

---

[2] *See NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 342 (3d Cir. 2001) (plaintiff sought to enjoin an ongoing "state permit process" that would "continue . . . unless enjoined"); *Freehold Cogeneration Assocs., L.P. v. Bd. of Regul. Comm'rs of State of N.J.*, 44 F.3d 1178, 1183, 1189 (3d Cir. 1995) (plaintiff sought "a judgment declaring that the [state regulatory board]'s order [was] preempted by [federal law] and a court order enjoining the enforcement of that order," as "proceedings before the [regulatory board] have been ongoing for nearly one year"); *Sayles Hydro Assocs. v. Maughan*, 985 F.2d 451, 453-54, 456 (9th Cir. 1993) (plaintiffs sought to enjoin an ongoing state permitting process requiring them to "jump through hoop after hoop . . . , regardless of the time and expense involved"); *Middle S. Energy, Inc. v. Arkansas Pub. Serv. Comm'n*, 772 F.2d 404, 406 (8th Cir. 1985) (plaintiffs sought to enjoin ongoing state agency "from continuing proceedings to determine whether" to void certain interstate power purchase contracts); *Rockies Exp. Pipeline LLC v. Ind. State Nat. Res. Comm'n*, No. 08-cv-1651, 2009 WL 3060216, at *1 (S.D. Ind. Sept. 23, 2009) (plaintiff sought to enjoin state regulator's administrative review of a state certificate of approval authorizing plaintiff to construct a natural gas pipeline).

DRPA. Citing the doctrine of *ejusdem generis*, DRPA argues that because this action does not involve a "matter[] vital" to its interest within the meaning of the economic matters listed earlier in the sentence, DRPA need not satisfy the preconditions of § 32:3-2(i). (Pl. Br. 36.)

Yet DRPA does not follow its own rule. Even when DRPA moved to intervene in another case, arguing that its "interests may be impaired or affected by the outcome of this action, including . . . the DRPA's economic interest in revenues from the billboard licensing" at issue, DRPA still did not satisfy the preconditions of § 32:3-2(i). DRPA's Mot. to Intervene, *Keystone Outdoor Advert. Co. v. Sec'y of the Pa. DOT*, No. 19-cv-5951 (E.D. Pa. Jan. 24, 2020), ECF No. 5 at 3. DRPA's violations of even ministerial Compact provisions highlights the importance of the oversight provisions that DRPA seeks to thwart.

In all events, the doctrine of *ejusdem generis* cannot "be used to defeat the obvious purpose of legislation." *United States v. Powell*, 423 U.S. 87, 91 (1975) (Rehnquist, J.) (quoting *Gooch v. United States*, 297 U.S. 124, 128 (1936) (Reynolds, J.)). Nor should it "be employed when the intention of the legislature is otherwise evident." *Waterfront Comm'n of New York Harbor v. Elizabeth-Newark Shipping, Inc.*, 164 F.3d 177, 184 (3d Cir. 1998) (quoting *United States v. Frumento*, 563 F.2d 1083, 1090 (3d Cir. 1977)). Indeed, DRPA's view that the states intended for DRPA to give the attorneys general notice before it initiated a simple breach-of-contract action—but not before a facial constitutional challenge to the validity of a state statute—defies credulity.

Even if the doctrine of *ejusdem generis* were to apply, OSC's investigation would fit within DRPA's proposed economic characterization of the residual category. As part of its investigation, OSC will explore improprieties in DRPA's procurement process. (*See* Def. Mot. 8–9; Compl. ¶ 29, Ex. 2 (reciting subpoena's requested categories of documents).) That inquiry undoubtedly involves "***financial payment rights or obligations*** of DRPA." (Pl. Br. 37.) Thus, by DRPA's

own characterization of "other matters vital to" DRPA's interests, DRPA needed to satisfy all of preconditions of N.J. Stat. Ann. § 32:3-2(i)—not just the one requiring commissioners' approval—before it sued to stop the Comptroller's investigation.

Finally, DRPA overstates its authority to sue. It suggests (Pl. Br. 35) that its enumerated powers to "sue and be sued" and to "exercise all other powers," N.J. Stat. Ann. § 32:3-5(b) and (n), together trump the "other matters vital to the interest" limitation, N.J. Stat. Ann. § 32:3-2(i). But that suggestion ignores the "commonplace of statutory construction that the specific governs the general." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992)). The general/specific canon applies here: Because the Compact empowers DRPA to "sue and be sued" generally but elsewhere specifies a category of lawsuits requiring preconditions for suit, DRPA cannot skirt the specific limitations by citing the general provision. DRPA's *ejusdem generis* argument should be rejected for this additional reason.

**POINT III**

**DRPA'S STATE-LAW CLAIMS ARE BARRED BY SOVEREIGN IMMUNITY AND WAIVER.**

Sovereign immunity bars this Court from determining whether OSC violated New Jersey state law by issuing subpoenas that exceeded its subpoena authority "under the Comptroller Statute or the Inspector General Statute." (Def. Mot. 13–14; Compl. ¶¶ 52–65, p.15.) State law claims of that sort cannot be brought against the State in federal court. *King v. Christie*, 981 F. Supp. 2d 296, 310 n.12 (D.N.J. 2013) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 104–06 (1984)). DRPA does not appear to contest that basic proposition, although it seemingly responds to a different argument that OSC did not make—that the Eleventh Amendment forecloses the suit as a whole. (Pl. Br. 38.) In all events, DRPA's own brief disclaims that "DRPA's

Complaint asserts no such state law claim" based on violations of OSC's statutory subpoena authority under New Jersey law. (Pl. Br. 38.) Either on grounds of DRPA's waiver or sovereign immunity, DRPA is not entitled to relief on its theory that the Comptroller lacked statutory authority to issue the subpoenas.

## POINT IV

### DRPA'S COMPLAINT SHOULD BE DISMISSED BECAUSE DRPA'S CLAIMS OF IMMUNITY FROM STATE SUBPOENAS ARE LEGALLY UNFOUNDED AND CONTRARY TO THE COMPACT TERMS.

Even if this action were ripe, DRPA's claims of immunity from state subpoenas fail on their merits. As DRPA abandoned any challenge to OSC's powers under state law, the Court need only determine whether the Compact immunizes DRPA from compliance with lawfully issued state subpoenas. It does not. DRPA's contrary arguments rely on a wrongly narrow reading of the Compact and grossly expansive application of case law. Its main argument—that because "the creation of an interstate entity effects a complete, unambiguous surrender of sovereignty and control over everything within the interstate entity's ambit, except as specifically and expressly reserved in the interstate compact," DRPA enjoys immunity from OSC's subpoenas (Pl. Br. 50)—is wrong four times over.

***First***, the subpoenas are naturally encompassed by oversight authority that the states reserved under the Compact. For determining whether states reserved sovereign authority, DRPA demands a level of specificity that courts do not require. The compact need not explicitly mention the authority reserved; it suffices that the express terms naturally encompass authority that animates the terms. Or said differently, courts may give practical meaning to the drafters' intent even in the absence of explicit language. The U.S. Supreme Court recently cemented this principle in *New York v. New Jersey*, trumping any arguably contrary Third Circuit authority. ***Second***,

DRPA previously saw need to request and comply with OSC's subpoena, proving that DRPA appreciated the subpoena's legally binding effect. ***Third***, DRPA cites no precedent for its expansive theory that a bi-state agency's creation effects a "complete surrender" of all sovereignty not expressly reserved—because no supporting precedent exists. As DRPA's own case citations make clear, the scope of the surrender of sovereignty is defined by the authorized purposes and enumerated powers under the compact. ***Finally***, although a compacting state cannot unilaterally regulate or control a bi-state agency, OSC's subpoenas are not the kind of "regulation" or "control" that courts have prohibited. The dispute can and should end there.

### A. The Compact's Terms Encompass the State's Subpoena Authority.

The text of the Compact, the parties' past dealings, and other indicia of the compacting states' intent all point in the same direction: the Compact terms naturally encompass OSC's subpoena authority.[3]

#### 1. Under the Terms of the Compact, the Compacting States Retained Investigative Authority, Including Subpoena Powers, over DRPA.

The compact-interpretation process has one goal: determine the compacting parties' intent. *Wayne Land & Min. Grp. LLC v. Del. River Basin Comm'n*, 894 F.3d 509, 534 (3d Cir. 2018) ("The interpretation that should prevail is the one that aligns best with the drafters' intent."). The process begins with the "express terms" of the compact, which best reflect the parties' intent. *New York v. New Jersey*, 598 U.S. 218, 223 (2023) (quoting *Tarrant Reg'l Water Dist. v. Herrmann*, 569 U.S. 614, 628 (2013)). If the Compact text does not speak directly to the precise issue, the Court applies "other interpretive tools"—for example, "background principles of contract law," "[f]undamental structural considerations," "the parties' course of dealing," "[p]rinciples of state

[3] For the full legal framework of compact interpretation, see Point IV.B of the Comptroller's motion brief. (Def. Mot. 23.)

sovereignty," how "other interstate . . . compacts have treated" the issue, and relevant undisputed facts. *New Jersey*, 598 U.S. at 224–26; *Tarrant*, 569 U.S. at 631; *Texas v. New Mexico*, 462 U.S. 554, 568 (1983). The parties' intent can also be presumed or implied in fact. *United States v. Winstar Corp.*, 518 U.S. 839, 920 (1996) (Scalia, J., concurring) (noting that "a rule of presumed (or implied-in-fact) intent" is among "normal principles of contract interpretation").

Courts interpret compacts "as a whole in a fair and common sense manner," advancing "the underlying purpose," minding "the parties' practical construction of the contract," giving "a reasonable, lawful[,] and effective meaning to all the terms," and avoiding "an interpretation which leaves a part unreasonable, unlawful, or of no effect." *Manahawkin Convalescent v. O'Neill*, 217 N.J. 99, 118 (2014); *Serico v. Rothberg*, 234 N.J. 168, 178 (2018); *In re Cnty. of Atl.*, 230 N.J. 237, 255 (2017); *Grasso Foods, Inc. v. Entex Techs., Inc.*, No. 21-cv-17788, 2022 WL 2046936, at *5 (D.N.J. June 7, 2022).

Read as a whole, the Compact confirms that the states intended to retain effective oversight of DRPA. *See, e.g.*, N.J. Stat. Ann. § 32:3-4; 36 Pa. Stat. Ann. § 3503, art. III; N.J. Stat. Ann. § 32:3-4c (reserving to each governor the authority to veto "any action of any commissioner from that state," which makes that action "null and void and of no effect"); N.J. Stat. Ann. § 32:3-4.9 (allowing the DRPA to promulgate rules or regulations only with New Jersey's and Pennsylvania's governors' approval). The provisions of the governors' oversight authority naturally encompass the right to collect and verify information necessary to effectuate that authority. That is especially apparent given the Compact's mandate that DRPA "[c]o-operat[e] with all other bodies interested or concerned with, or affected by the promotion, development or use of the Delaware river and the Port District," which includes the State. N.J. Stat. Ann. § 32:3-2(d).

The compacting states' intentions are even more apparent when considering these provisions alongside others that clearly embrace public oversight. For example, the Compact defines "public business" as "matters which relate in any way, directly or indirectly, to the performance of the functions of the Delaware River Port Authority or the conduct of its business." N.J. Stat. Ann. § 32:3-4.6. For another, the Compact requires DRPA to abide by the most transparent provisions of New Jersey's Open Public Meetings Act and Pennsylvania's Sunshine Act. N.J. Stat. Ann. § 32:3-4.7(b).

Taken together, the terms and spirit of these provisions make clear that the states intended to retain external oversight of DRPA, including the mechanisms necessary to exercise that oversight. The sum of the Compact overwhelmingly favors state oversight, not the type of absolutist rule that DRPA invents to undermine baseline oversight, such as the audit and reporting requirements under N.J. Stat. Ann. § 32:3-13, which imposes more oversight, not less. To read the Compact in a way that hollows the states' oversight provisions, rather than gives meaning to them, would be to destroy their purpose, allowing DRPA to operate in a way that invites fraud, waste, and abuse of the public funds with which it operates. (Def. Mot. 18.)

And yet, that is exactly what DRPA asks this Court to do. Fixated on the Compact's lack of express reference to "New Jersey OSC investigations," DRPA suggests that a state reserves authority only if it does so with explicit specificity in the compact. (Pl. Br. 10–11, 45, 51–52.) DRPA is wrong. Not only does DRPA's absolutist argument defy principles of state sovereignty,[4] but courts plainly do not require the level of explicit specificity that DRPA demands.

---

[4] *See New Jersey*, 598 U.S. at 218–19 ("'The background notion that a State does not easily cede its sovereignty has informed' this Court's 'interpretation of interstate compacts." (quoting *Tarrant*, 569 U.S. at 631)); *Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 148 (1982) ("To presume that a sovereign forever waives the right to exercise one of its sovereign powers unless it expressly reserves the right to exercise that power . . . turns the concept of sovereignty on its head."); *Bowen*

In fact, courts have interpreted compacts as encompassing rights and obligations not explicitly mentioned in their compacts. For instance, in *Spence-Parker v. Del. River & Bay Auth.*, the Court held that a bi-state entity was amenable to common law contract claims, based on a sensible reading of the compact terms: the "power to contract and sue over contractual breaches carries with it the attendant possibility that the Authority itself may be sued for breach of contract," because it "would be a perverse rule of law if the authority was empowered to enter into contracts without being held accountable under the law of contracts." 616 F. Supp. 2d 509, 522 (D.N.J. 2009). For another, in *E. Paralyzed Veterans Ass'n, Inc. v. City of Camden*, DRPA conceded that Pennsylvania employees of the DRPA "must observe stop-lights in New Jersey," even absent express language in the Compact. 111 N.J. 389, 400 (1988).[5]

Then in *Pievsky v. Ridge*, the court of appeals construed the Compact as permitting each compacting state's governor to remove the state's commissioners at will, even though the Compact "does not explicitly state whether the commissioners may be removed by the governor prior to the expiration of their term." 98 F.3d at 734. And in *New York v. New Jersey*, the U.S. Supreme Court applied background principles of common law and state sovereignty to fill a void in an agency-creating compact, ultimately holding that New Jersey could unilaterally withdraw despite the compact's silence on withdrawals. 598 U.S. at 226. The Supreme Court's decision in *New York v. New Jersey* directly forecloses DRPA's contention that states surrender all sovereign powers not explicitly stated in a compact—that's the exact opposite of what the Supreme Court held just last year.

---

*v. Pub. Agencies Opposed to Soc. Sec. Entrapment*, 477 U.S. 41, 52-53 (1986) (referring to "Court's often-repeated admonitions that contracts should be construed, if possible, to avoid foreclosing exercise of sovereign authority").

[5] "Though state law is not binding, federal courts show deference to prior state adjudications and rulings in construing an interstate compact." *Pievsky v. Ridge*, 98 F.3d 730, 733 (3d Cir. 1996).

DRPA's argument ignores all these circumstances in which state law, although not explicitly mentioned in the compact, applies to bi-state agencies. And worse, if DRPA's argument were correct, bi-state agencies would never be subject to any state law not mentioned within the four corners of their compacts—despite the overwhelming contrary authority mentioned above. Thus, this Court should reject DRPA's argument that a bi-state agency need only comply with state law that the compact explicitly mentions.

DRPA also misses the point of the Comptroller's argument that DRPA's claims of immunity violate the Compact's accountability provisions. (Def. Mot. 29; Pl. Br. 52–54.) The Compact's inclusion of various accountability provisions strongly supports that the compacting states intended to reserve oversight of DRPA. Any contrary interpretation would render the accountability provisions meaningless, as DRPA would never have reason to honestly comply with states' requests for information (even requests under the OPMA); the state would have to sue DRPA to confirm whether DRPA complied with the request under the Compact. No compacting state would ever intend such a chaotic, unworkable dynamic. And so the accountability provisions must "be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (internal quotation marks omitted).[6]

Nor does DRPA deny that OSC's position aligns with the approach of other state compacts under which states retain investigative authority over bi-state agencies. (Def. Mot. 28–29.) *See*

---

[6] That the Compact empowers DRPA to "sue and be sued" also shows the states' intent to make DRPA amenable to subpoenas. N.J. Stat. Ann. § 32:3-5(b). After all, a proceeding against a party "for the production of documents, whether the proceeding originate by subpoena or some more plenary process, becomes a 'suit' in every real sense when the" party "disputes the right asserted." *State v. Murphy*, 36 N.J. 172, 185 (1961), *overruled in part on other grounds, Del. River Joint Toll Bridge Comm'n v. George Harms Constr. Co.*, 258 N.J. 286, 303 n.4 (2024).

*Tarrant*, 569 U.S. at 633 (examining "customary practices employed in other interstate compacts"). For another example, the New Jersey Legislature issued subpoenas to the Port Authority of New York and New Jersey, among other parties, during its investigation into the so-called Bridgegate scandal, to uncover misconduct related to the George Washington Bridge lane closures. *See* N.J. Legislature, *Interim Report to the New Jersey Legislature Regarding the September 2013 Closure of George Washington Bridge Access Lanes in Fort Lee, N.J.*, Select Comm. on Investigation, at 1 (Dec. 10, 2014).[7]

Tellingly, DRPA cites no examples of other interstate compacts that either (a) expressly reserve the compacting states' subpoena powers or (b) have been interpreted to immunize the agency from a compacting state's investigative subpoenas. This Court should not set a precedent that would make the DRPA an outlier among other bi-state agencies.

Thus, the Court should reject DRPA's unreasonable interpretation of the Compact and find that the Compact's oversight provisions naturally encompass the state's sovereign subpoena authority.

### 2. The Parties' Course of Dealing, Including DRPA's Past Compliance with OSC's Inquiries, Confirms That DRPA Never Understood the Compact to Shield It from OSC's Investigative Authority.

The Comptroller's motion recounted DRPA's past acquiescence to the same oversight authority that OSC invokes now. (*See* Def. Mot. 26, 28.) As DRPA cannot dispute that record, it tries to discount it by emphasizing that DRPA "voluntarily invited" OSC to issue a "friendly subpoena" in connection with its 2010 investigation. (Pl. Br. 14.)

But that characterization makes no legal difference. The usual purpose animating a request for a "friendly subpoena" is to supply a legal basis for disclosure of sensitive information that the

[7] *Available at* https://pub.njleg.gov/publications/reports/Interim_Report.pdf.

disclosing party, who wishes to cooperate, otherwise could not turn over but for the existence of legal process requiring such disclosure. And the "friendly subpoena" mechanism works to facilitate cooperation precisely because the parties understand it to be legally binding and therefore capable of compelling disclosure. Had DRPA believed it was beyond the reach of OSC's subpoena power, what function did the friendly subpoena serve? And not only did DRPA request and comply with OSC's friendly subpoena in 2010, it also provided many documents and witnesses in response to OSC's requests pursuant to other authorities under N.J. Stat. Ann. § 52:15C-14 (permitting OSC to access all government records and require executive branch agency "assistance" and cooperation) and N.J. Stat. Ann. § 52:15C-6 (granting OSC similar powers with respect to state government entities).

Throughout the process, DRPA complied with OSC's requests without objection, and OSC could have sought court relief under N.J. Court Rule 4:67-6 if DRPA failed to comply. *See Int'l Union of Operating Eng'rs, Local 68 v. Del. River & Bay Auth.*, 147 N.J. 433, 445 (1997) ("[A] bi-state agency consents to a single creator state's exercise of jurisdiction when the agency either voluntarily cooperates with the creator state in the exercise of jurisdiction or agrees to meet the requirements of the law of that state." (citing *E. Paralyzed Veterans*, 111 N.J. at 402)). Despite DRPA's newly minted position that it is categorically beyond OSC oversight, the parties' course of dealing confirms that DRPA understood OSC to have enforceable oversight authority over it.[8]

[8] The Court can dismiss this action on the current record as a matter of law. But if the court were to determine that further fact-finding would be helpful, the parties' course of dealing is likely to be a central topic to explore in discovery.

### 3. The Compact and Case Law Do Not Support DRPA's Expansive Position on the Scope of Sovereignty Surrendered.

No one disputes that by forming DRPA, the states surrendered "a portion of their sovereignty over certain . . . operations in order to better serve the regional interest." *Int'l Union of Operating Eng'rs, Local 542 v. Del. River Joint Toll Bridge Comm'n*, 311 F.3d 273, 276 (3d Cir. 2002). But DRPA's statement that creation of a bi-state agency achieves a "complete surrender of sovereign authority" lacks quotation marks for a reason: no court has ever said it. (Pl. Br. 52.)

To be sure, the law distinguishes between an interstate compact that "shifts a part of a state's authority to another state or states"[9] and one that "shifts a part of a state's authority . . . to the agency the several states jointly create to run the compact." *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 42 (1994). In the agency-creation context, the parties' intention to surrender at least some sovereignty is unambiguous; it is the point of the compact. *Del. River Joint Toll Bridge Comm'n v. Sec'y the Pa. Dep't of Lab. & Indus.*, 985 F.3d 189, 195 (3d Cir. Jan. 12, 2021) ("*DRJTBC*") (citing *hip (Heightened Indep. & Progress), Inc. v. Port Auth. of N.Y. & N.J.*, 693 F.3d 345, 358 (3d Cir. 2012).

But even so, the scope of a surrender of state sovereign authority is limited by the scope of the bistate agency's core purposes. A compacting state surrenders only "a limited portion of its sovereignty to the" bi-state authority, and the scope of that surrender is limited by the authorized purposes and enumerated powers under the compact. *Spence-Parker*, 616 F. Supp. 2d at 518 (interpreting a compact "to assess whether the states' surrender of sovereignty encompassed

[9] *See, e.g., Tarrant*, 569 U.S. at 618 (interpreting a multistate compact formed to distribute water rights); *accord New Jersey*, 598 U.S. at 226 (distinguishing the subject compact from "compacts setting boundaries, apportioning water rights, or otherwise conveying property interests").

exposing the DRBA to suit under" a New Jersey statute); *see Del. River Port Auth. v. FOP*, 290 F.3d 567, 571 (3d Cir. 2002) ("Nor is [DRPA] vested with attributes of state sovereignty," as its "powers and duties are framed entirely by the Compact" (internal citation omitted)). And so, when "[t]here is no way the Compact can be interpreted ***other than*** as a yielding by both States of what they claimed to be their sovereign powers"—as here, where the point of the compact was to shift only some sovereignty to DRPA—"[t]he only issue is ***what*** sovereign powers were yielded, and that is best determined from the language of the Compact, with no thumb on the scales." *New Jersey v. Delaware*, 552 U.S. 597, 629–30 (2008) (Scalia, J., dissenting).

DRPA cites no case—and the Comptroller is aware of none—in which a court shielded a bi-state agency from an administrative, non-substantive state law that neither diminishes nor impairs the agency's authorized purposes and functions or enumerated powers. Every single case cited by DRPA dealt with a state's attempt to regulate how the bi-state agency carried out its authorized purposes or enumerated powers. And none of these cases recognizes the "complete surrender" theory that DRPA advances.

Consider DRPA's most recent case, where the court had the benefit of all landmark precedent cited by DRPA. In *Keystone Outdoor Advert. Co., Inc. v. Sec'y of the Pa. DOT*, the court employed a two-step test to "determine whether [Pennsylvania] surrendered its power to enforce outdoor advertising laws on DRPA property": ***first***, the court determined "whether the DRPA [was] acting within its authorized purposes"; and ***second***, the court looked to "the powers granted to the DRPA to determine whether the Compact expressly reserved any power over outdoor advertising to the states." No. 19-cv-5951, 2022 WL 2805335, at *6 (E.D. Pa. July 18, 2022). At the second step, the court observed: "All parties agree, as do we, that the Third Circuit's decision in *DRJTBC*"—another case on which DRPA heavily relies—"stands for the proposition

that when a bi-state entity created by Compact acts in accordance with its ***authorized purposes***, the scope of the surrender of authority should be construed broadly and includes the general surrender of police powers, unless expressly reserved."[10] *Keystone*, 2022 WL 2805335, at *8 (citing *DRJTBC*, 985 F.3d at 196) (emphasis added). Given that the Compact empowers DRPA to exercise "all powers" that may be "necessary or incidental" to carrying out its "authorized purposes" or enumerated "foregoing powers"—which include broad powers over the use of its real property and power to "enter into contracts"—the court held that "Pennsylvania ceded its sovereign authority to enforce its outdoor advertising regulations as to billboards owned or managed by the DRPA." *Id.* at *9.

DRPA ignores the parts of its own cited case law that limit the scope of the surrender of sovereignty to the authorized purposes and enumerated powers. Indeed, "determining whether a state can unilaterally regulate the bi-state entity on a particular issue . . . is 'a question of the ***rights and powers*** [the states] surrendered to the [entity] in their negotiated Compact." *Id.* at *6 (quoting *Del. River Joint Toll Bridge Comm'n v. Oleksiak*, 612 F. Supp. 3d 428, 434 (E.D. Pa. 2020)) (alterations added in *Keystone*) (emphasis added). So, although sometimes surrenders of sovereignty include powers not explicitly mentioned in the compact, they have never exceeded the

[10] The other cases cited by DRPA stand for the same proposition. *See Operating Eng'rs*, 311 F.3d at 281 (local union could not enforce collective bargaining laws against a bi-state agency whose compact empowered it to "appoint employees, determine their qualifications and duties, and fix their salaries," and did not require it to "bargain collectively with employee unions" (citing N.J. Stat. Ann. § 32:8-3(f)–(h))); *Spence-Parker*, 616 F. Supp. 2d at 518 (plaintiff could not enforce state whistleblower-protection and antidiscrimination laws against her former employer, a bi-state entity, whose enumerated powers include determining employees' "terms of office and all other conditions and terms of employment and retention" (quoting N.J. Stat. § 32:11E-1, Art. VII(e))); *Del. River Joint Toll Bridge Comm'n v. George Harms Constr. Co.*, 258 N.J. 286, 307 (2024) (building contractor could not enforce competitive bidding laws against a bi-state agency whose "grants of authority" and "enumerated powers" under the compact "clearly encompass[]" the challenged bidding activity).

"subjects expressly mentioned," much less extended "far beyond topics specifically mentioned," as DRPA falsely claims. (Pl. Br. 45–46.) Sovereign authority outside the bi-state agency's authorized purposes or enumerated powers—here, state administrative, non-substantive investigatory subpoenas—falls outside the scope of the surrendered authority.

It is noteworthy that DRPA claims that OSC's subpoenas violate "DRPA's sovereign right to be free from unilateral New Jersey regulation" (Pl. Br. 46), without identifying the aspect of DRPA's sovereignty that the subpoenas supposedly impair or regulate. DRPA even concedes that OSC's subpoenas do "not impact DRPA's core functions – operation of the DRPA bridges and PATCO transit system." (Pl. Br. 37–38.) The concession highlights the crucial difference between DRPA's action and all the cases DRPA cites: OSC's subpoena authority does not even arguably implicate DRPA's authorized purposes or enumerated powers. Unlike the building safety regulations in *DRJTBC*, the collective bargaining laws in *Operating Eng'rs*, the whistleblower-protection and antidiscrimination laws *Spence-Parker*, the bidding laws in *George Harms*, and the outdoor advertising regulations in *Keystone*—all of which impaired the bi-states agencies' purposes and powers expressly provided under the compacts—here, sovereign investigatory authority is not encompassed by DRPA's authorized purposes or enumerated powers. N.J. Stat. Ann. §§ 32:3-2 and -5.[11]

[11] As a final point, if DRPA were correct that the states intended the scope of the surrender of sovereign authority to be "complete," the states would not have exempted DRPA from paying taxes under N.J. Stat. Ann. § 32:3-12 and -13.54. They would have understood that a "complete surrender" would have resulted in DRPA's automatic exemption from paying taxes. (These tax exemptions have nothing to do with the states' express reservation of "the power to levy taxes or assessments" under § 32:3-5(n).)

### B. The Challenged Subpoenas Do Not Equate to Regulation, and DRPA Does Not Identify Any Law Stating Otherwise.

DRPA's brief failed to confront the longstanding principle that subpoenas for information do not "regulate" the recipient's operations. (Def. Mot. 27.) *See Barsky v. United States*, 167 F.2d 241, 245 (D.C. Cir. 1948), *cert. denied*, 334 U.S. 843 (1948) ("[T]he requiring of information concerning a business is not regulation of that business." (quoting *Interstate Commerce Comm'n v. Goodrich Transit Co.*, 224 U.S. 194, 211 (1912))); *United States v. Tobin*, 195 F. Supp. 588, 608 (1961), *rev'd on other grounds*, 306 F.2d 270 (D.C. Cir. 1962) ("Neither does the fact that the subpoena requested documents closely related to the Authority's day-by-day operations require a conclusion that the committee's purpose was to 'regulate' these operations. To require information about the Authority is not to regulate the Authority . . . ." (citing *Barsky*, 167 F.2d at 245)). The Court should therefore join the courts that recognized this commonsense principle.

Though DRPA cites precedent for interpreting "all other powers" as encompassing "police power" (Pl. Br. 49 (citing *DRJTBC*, 985 F.3d at 196)), DRPA does not argue that OSC's subpoena authority equates to a "police power" that expands or changes what actions can be punished as violations of the law. Nor can it. In *Smith & Wesson Brands, Inc. v. Att'y Gen. of New Jersey*, the Third Circuit confirmed that the State's enforcement of a statutorily authorized, non-self-executing investigative subpoena differs from an action to punish wrongdoing: ***first***, a subpoena-enforcement action alleges a procedural-rule violation (failure to produce documents), not a violation of any substantive legal duty; and ***second***, a subpoena-enforcement action seeks only document production, not some retributive sanction imposed to punish some wrongful act. 27 F.4th 886, 889, 892–83 (3d Cir. 2022).

If the *Smith & Wesson* subpoenas, which derived from a substantive statute (the New Jersey Consumer Fraud Act), did not involve substantive legal duties, OSC's subpoenas certainly do not

either. Indeed, OSC's subpoenas and primary enforcement tools are nothing like the substantive laws in the cases cited by DRPA.[12] OSC has limited enforcement powers,[13] and it does not seek to apply any of them as to DRPA's operations. Instead, it merely seeks to collect information from DRPA and, if appropriate, report relevant information to the public—activities that courts have explicitly disclaimed could constitute regulation. *See Tobin*, 195 F. Supp. at 608; *Barsky*, 167 F.2d at 24; *Goodrich Transit*, 224 U.S. at 211. DRPA does not cite a single case that equates a state's subpoena or request for information to "unilateral control" over DRPA, *DRJTBC*, 985 F.3d at 195, and for good reason: OSC is unaware of any case that stands for that startling principle.

And because OSC's subpoenas neither regulate nor control DRPA, they do not implicate the concerns underlying the prohibition against unilateral regulation: to prevent "a single state" from "dictat[ing] the policy of a bi-state agency." *Del. River & Bay Auth. v. N.J. Pub. Emp't Relations Com.*, 112 N.J. Super. 160, 166 (App. Div. 1970) (cautioning that unilateral regulation risked "discord," "confusion[,] and conflicts," and may destroy "the purposes for which such bi-

---

[12] *See DRJTBC*, 985 F.3d at 191–92 (plaintiff, a bi-state entity, sought a judgment declaring that the state could not enforce building safety regulations against a bi-state agency); *hip*, 693 F.3d at 349 (plaintiffs, organizations and an individual, sued to compel a bi-state agency to comply with state civil rights and construction laws); *Operating Eng'rs*, 311 F.3d at 276 (plaintiff, a union, sued to compel a bi-state entity to comply with New Jersey collective bargaining laws); *Spence-Parker*, 616 F. Supp. 2d at 509 (plaintiff sued her former employer, a bi-state entity, under the New Jersey Conscientious Employee Protection Act (CEPA), the New Jersey Law Against Discrimination (NJLAD), and state common law); *Keystone*, 2022 WL 2805335, at *1–4 (plaintiffs sought a judgment declaring that defendant PennDOT could not enforce state billboard regulations against DRPA).

[13] *See, e.g.*, N.J. Stat. Ann. § 52:15C-8 (empowering OSC to "propose and enforce remediation plans" as to the executive branch of state government); N.J. Stat. Ann. § 52:15C-11(c)-(d) (empowering OSC to recommend that the governor "initiate disciplinary proceedings" against officials and employees of executive branch agencies, and recommend that the governor withhold state funds from a local government entity or impose a corrective or remedial action plan requiring prior approval by OSC); N.J. Stat. Ann. § 30:4D-57(d)(2) (empowering MFD to take administrative enforcement actions relating to the Medicaid program); N.J. Stat. Ann. § 52:15C-10(b)(4) (empowering OSC to "direct the contracting unit not to proceed with the procurement" if OSC determines that the procurement (over $12,500,000) violates applicable rules).

state agencies are formed”); *see E. Paralyzed Veterans*, 111 N.J. at 398 (explaining that a state’s unilateral regulation of a bi-state agency “would lead to discord and a destruction of the ***purposes*** for which such bi-state agencies are formed” (quoting *Bell v. Bell*, 83 N.J. 417, 424 (1980)) (emphasis added)). OSC’s subpoenas, and OSC’s investigation more broadly, do nothing of the sort.

Thus, the Court should reject DRPA’s challenge on the grounds that OSC’s subpoenas—without more—do not constitute the kind of “regulation” that states cannot impose unilaterally. This point alone disposes of DRPA’s case.

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss the Complaint and deny DRPA's motion for summary judgment.

CONNELL FOLEY LLP
Attorneys for Defendant, *Kevin D. Walsh, Acting New Jersey State Comptroller, in his official capacity*
1085 Raymond Boulevard, 19th Floor
Newark, New Jersey 07102
(973) 436-5800

BY: s/ John P. Lacey
JOHN P. LACEY, ESQ.

DATE: December 16, 2024