ARCHER & GREINER
A Professional Corporation
1025 Laurel Oak Road
Voorhees, NJ 08043
(856) 795-2121
Attorneys for Plaintiff,
Delaware River Port Authority
By: CHRISTOPHER R. GIBSON, ESQ.
(Attorney #029861985)
PATRICK M. FLYNN, ESQ.
(Attorney #020141995)

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**TRENTON VICINAGE**

| | |
|---|---|
| DELAWARE RIVER PORT AUTHORITY,<br><br>Plaintiff,<br><br>vs.<br><br>KEVIN D. WALSH,<br>Acting New Jersey State Comptroller, in his official capacity,<br><br>Defendant. | **Civ. A. No. 3:24-cv-8186 (MAS-JTQ)** |

**PLAINTIFF DRPA'S REPLY BRIEF IN FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON DECLARATORY JUDGMENT CLAIM**

# TABLE OF CONTENTS

Page


TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

REPLY ARGUMENT ........ 1

- I. This Action Presents a Ripe, Justiciable "Case or Controversy". ........ 1
- II. The DRPA Compact Did Not Impose Preconditions to Filing this Action ........ 4
- III. DRPA's Action is Proper Under *Ex parte Young*. ........ 5
- IV. The DRPA Compact Does Not Authorize New Jersey To Unilaterally Apply Its Subpoena Power Against DRPA. ........ 6
  - A. Founder States' Surrender of Sovereignty is Comprehensive and Limited Only by Express Reservations of Authority. ........ 6
  - B. General Contract Construction Tools for Ambiguous Contracts Are Not Applicable Here. ........ 8
  - C. The Third Circuit Cases are Still Good Law. ........ 9
  - D. The Prohibition Against Unilateral Imposition of Additional State Law Obligations on Bi-State Entities is Not Limited Only to "Substantive" Laws. ........ 10
  - E. Walsh Has Not Identified an Express Reservation of Authority. ........ 12
  - F. DRPA's Voluntary Cooperation with Prior Investigations is Not an "Acknowledgment" of OSC Having Authority over DRPA ........ 14

CONCLUSION ........ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

Delaware River Joint Toll Bridge Comm'n v. Secretary Pa. Dep't of Labor & Indus.,
985 F.3d 189 (3d Cir. 2021) .............................................................*passim*

First Choice Women's Resource Centers, Inc. v. Platkin,
Civ. Act. No. 23-23076, 2024 WL 150096 (D.N.J. Jan. 12, 2024),
aff'd, No. 24-3124, 2024 WL 5088105 (3d Cir. Dec. 12, 2024)..........................1

Freehold Cogeneration Assocs., L.P. v. Board of Reg. Comm'rs,
44 F.3d 1178 (3d Cir. 1995) ....................................................................3

HIP Heightened Indep. & Progress, Inc. v. Port Auth. of N.Y. & N.J.,
693 F.3d 345 (3d Cir. 2012) ....................................................................6

Integrated Health Res., LLC v. Rossi Psychological Grp., P.A.,
537 F. Supp.2d 672 (D.N.J. 2008)............................................................8

International Union of Operating Engrs., Local 542 v. Delaware River Joint Toll Bridge Comm'n,
311 F.3d 273 (3d Cir. 2002) ...............................................................2, 6

Keystone Outdoor Ad. Co., Inc. v. Sec. of Pa. Dep't of Trans.,
Civ. A. No. 19-5951, 2022 WL 2805335 (E.D. Pa. July 18, 2022) .................4, 7

NE Hub Partners, L.P. v. CNG Transmission Corp.,
239 F.3d 333 (3d Cir. 2001) ....................................................................3

New York v. New Jersey,
598 U.S. 218 (2023).....................................................................3, 9, 10

**State Cases**

Ballinger v. Delaware River Port Auth.,
172 N.J. 586 (2002) ...........................................................................11

Del. River & Bay Auth. v. N.J. Pub. Emp. Rels. Comm'n,
112 N.J. Super. 160 (App. Div. 1970), aff'd, 58 N.J. 388 (1971).....................12

Del. River Joint Toll Bridge Comm'n v. George Harms Constr. Co., Inc.,
258 N.J. 286 (2024) ....................................................................................10

Manahawkin Convalescent v. O'Neill,
217 N.J. 99 (2014) ........................................................................................8

**State Statutes**

36 P.S. § 3503 (Art. IV)............................................................................5, 9

36 P.S. § 3503 (Art. I)...................................................................................5

36 P.S. § 3503 (Art. XII)..............................................................................8

N.J.S.A. 32:3-4.7(b).....................................................................................8

N.J.S.A. 32:3-5.........................................................................................5, 9

N.J.S.A. 32:3-13...........................................................................................8

## INTRODUCTION

Plaintiff, the Delaware River Port Authority ("DRPA") submits this reply brief in further support of its motion for summary judgment on its declaratory judgment claim.

## REPLY ARGUMENT

### I. THIS ACTION PRESENTS A RIPE, JUSTICIABLE "CASE OR CONTROVERSY".

Defendant Acting N.J. Comptroller Kevin D. Walsh's ("Walsh") ripeness argument consists entirely of mischaracterizing this matter as presenting the identical circumstances to First Choice Women's Resource Centers, Inc. v. Platkin, Civ. Act. No. 23-23076, 2024 WL 150096 (D.N.J. Jan. 12, 2024), aff'd, No. 24-3124, 2024 WL 5088105 (3d Cir. Dec. 12, 2024). Unlike First Choice, however, the issue here does not relate to the ***substance*** of the subpoenas. Rather, DRPA sued to protect its ***sovereignty and immunity*** as a bi-state entity, which precludes either founder state from unilaterally imposing state law obligations against DRPA. DRPA sued to obtain judicial confirmation that New Jersey cannot – without express consent from Pennsylvania – require DRPA to comply with the New Jersey state laws that supply Walsh's investigatory and subpoena power. That legal issue is ***completely independent from the substance (i.e., the details of the particular requests) of the subpoenas*** Walsh served. And, thus, the issue here is ***not*** equivalent to the First Choice plaintiff's argument that subpoena requests for

certain information violated its rights under the First Amendment or other U.S. Constitution provisions.

As bi-state entities' immunity from unilaterally-imposed state law obligations arises from the founder states' ***surrenders of sovereignty*** during formation of the bi-state entity, see, e.g., International Union of Op. Engrs., Local 542 v. Delaware River Joint Toll Bridge Comm'n, 311 F.3d 273, 276 (3d Cir. 2002), it is in some ways analogous to state sovereign immunity. And that is instructive as to why DRPA's suit is not "unripe". When a state entity is sued in contravention of its sovereign immunity, that entity does not have to wait until ***after*** judgment is entered against it to seek adjudication of its immunity. Litigation to protect sovereign immunity is not "unripe" just because the action against the state entity ultimately might fail on its merits. The injury occurs and the dispute becomes ripe as soon as action is taken that infringes upon the immunity. The state's sovereign immunity insulates it from ***being subject to the legal process***.

The same is true here. Walsh's acts of ***serving*** subpoenas on DRPA and suing for enforcement contravene DRPA's immunity from unilateral founder state action. That judgment has not been entered enforcing the subpoenas does not render this matter "contingent" or "unripe". The injury and violation of DRPA's legal rights arises from Walsh's pursuit of the subpoena process against DRPA, independent and regardless of the ultimate result of that process.

Another apt analogy is federal preemption of state administrative agency process. The U.S. Supreme Court has recognized that an interstate compact "'is not just a contract,' but also 'a federal statute enacted by Congress' that preempts contrary state law." New York v. New Jersey, 598 U.S. 218, 224 (2023). Walsh acknowledged in his initial brief that this matter presents the issue of "whether OSC's subpoenas are ***preempted*** by the [DRPA] Compact (a question of federal law)". (Def. Mov. Br. at 2) (emphasis added.) ***The Third Circuit has soundly rejected ripeness challenges to federal court actions seeking declaratory judgment that ongoing state agency action is preempted***. See, e.g., NE Hub Partners, L.P. v. CNG Transmission Corp., 239 F.3d 333, 342 (3d Cir. 2001); Freehold Cogeneration Assocs., L.P. v. Board of Reg. Comm'rs, 44 F.3d 1178 (3d Cir. 1995). As the Third Circuit explained, an argument that a federal declaratory judgment action is "unripe" because it is "contingent" on the result of the state administrative process "does not take into account … that ***preemption may operate to spare a party from that very process. In fact, the process itself may give rise to adversity so that an action challenging the process is ripe even before the process concludes***." NE Hub Partners, 239 F.3d at 342 (emphasis added).

Contrary to Walsh's assertion, DRPA is not seeking an "advisory opinion" about an "abstract" "contingent future event". There is a real, concrete dispute. The parties clearly dispute their respective rights in relation to each other – specifically, the parties dispute whether the DRPA Compact and federal interstate

compact law preclude Walsh from unilaterally exercising his N.J. state law subpoena power over the DRPA. And the dispute is concrete – Walsh served two subpoenas on DRPA and has filed a separate court enforcement action. Moreover, the parties' dispute is an ongoing dispute likely to arise again and again if not definitively resolved. This is the third time in the past dozen years that the Office of State Comptroller ("OSC") has sought to exercise investigatory authority over DRPA. (See SUMF at ¶¶ 22, 25, 27, 28.)

Other courts have recently adjudicated similar declaratory judgment actions brought by bi-state entities seeking confirmation of their immunity from unilateral founder state agency action. See Delaware River Joint Toll Bridge Comm'n v. Sec. Pa. Dep't of Labor & Indus., 985 F.3d 189 (3d Cir. 2021) (hereinafter "DRJTBC"); Keystone Outdoor Ad. Co., Inc. v. Sec. of Pa. Dep't of Trans., Civ. A. No. 19-5951, 2022 WL 2805335 (E.D. Pa. July 18, 2022).

In short, Walsh misunderstands the law when he argues that DRPA cannot seek declaratory judgment to protect its sovereignty and immunity until a state court rules that DRPA has violated New Jersey law by failing to comply with the subpoenas. DRPA's action presents a ripe, justiciable "case or controversy".

## II. THE DRPA COMPACT DID NOT IMPOSE PRECONDITIONS TO FILING THIS ACTION.

There is no merit to Walsh's contention that the DRPA Compact forbids DRPA from filing any legal action without first passing a formal resolution and

notifying the Attorneys General of the founder states. The DRPA Compact broadly authorizes the DRPA "to sue" and also to exercise "any and all powers which might be exercised by a natural person or a private corporation" – which includes the power to file suit. N.J.S.A. 32:3-5; 36 P.S. § 3503 (Art. IV). Those broad powers to sue are granted in the DRPA Compact without any attached limitations or preconditions. The DRPA Compact imposes the resolution and notice preconditions only as to "any litigation involving rates, preferences, rebates, or other matters vital to the interest of the Port District". N.J.S.A. 32:3-5(i); 36 P.S. § 3503 (Art. I). Had the founder states wanted to impose the resolution and notice preconditions to ***all*** suits by DRPA, then they could and would have said so, instead of expressly limiting those preconditions to certain specific kinds of suits.

As discussed in DRPA's initial brief, the doctrine of ejusdem generis requires the residual clause "other matters vital to the interest of the Port District" to be read as including only matters relating to important ***financial payment rights or obligations*** of DRPA. (See DRPA Mov. Br. at 36-37.) This lawsuit, which seeks a ruling confirming DRPA's sovereignty and immunity from unilateral founder state action, is ***not*** a suit to resolve financial payment rights or obligations.

## III. DRPA'S ACTION IS PROPER UNDER *EX PARTE YOUNG*.

Walsh concedes that, under the Ex parte Young doctrine, DRPA's action against him as a state officer allegedly violating federal law is not barred by Eleventh Amendment immunity. (Def. Opp. Br. at 7.) DRPA's Complaint does

not allege pendent state law claims, so Walsh's argument that DRPA's pendent state law claims are barred by sovereign immunity is misguided and irrelevant.

## IV. THE DRPA COMPACT DOES NOT AUTHORIZE NEW JERSEY TO UNILATERALLY APPLY ITS SUBPOENA POWER AGAINST DRPA.

As noted, DRPA and Walsh fundamentally disagree on whether the DRPA Compact reserves to New Jersey and its OSC the authority to impose subpoena obligations on DRPA without consent from Pennsylvania, the other founder state. Walsh argues that the DRPA Compact's silence on that issue means that New Jersey retained that authority when DRPA was formed. But Third Circuit law dictates exactly the opposite – silence means no such authority was retained, because any reservation of authority must be express and specific.

### A. Founder States' Surrender of Sovereignty is Comprehensive and Limited Only by Express Reservations of Authority.

The Third Circuit Court of Appeals held in DRJTBC that New Jersey's and Pennsylvania's creation of an interstate compact entity constituted an "expansive" and "unambiguous surrender" through which they "'***relinquished all control over the [bi-state entity] unless otherwise stated in the compact***.'" DRJTBC, 985 F.3d at 195 (quoting HIP Heightened Indep. & Progress, Inc. v. Port Auth. of N.Y. & N.J., 693 F.3d 345, 358 (3d Cir. 2012)) (emphasis added). In so holding, the DRJTBC panel relied upon two prior Third Circuit decisions, both of which likewise held that an interstate compact's silence on an issue meant that the issue was ***not*** subject to unilateral control by either founder state. See id. (citing Int'l

Union of Op. Engrs., 311 F.3d at 281; HIP, 693 F.3d at 358). And, the Eastern District of Pennsylvania recently reiterated: "***By creating a bi-state entity, the states relinquish all control over the entity unless expressly reserved in the compact***." Keystone, Civ. A. No. 19-5951, 2022 WL 2805335 at *17 (citing DRJTBC). Thus, Walsh's argument that "DRPA cites no precedent for its expansive theory that a bi-state agency's creation effects a "complete surrender" of all sovereignty not expressly reserved—because no supporting precedent exists" is absolutely false. (See Def. Opp. Br. at 9.)

Walsh argues as a fall-back that the above-referenced Third Circuit case law requires a threshold finding that the matter on which a founder state seeks to unilaterally impose obligations is specifically and expressly listed in the "authorized purposes" or "enumerated powers" designated in the interstate compact. (Id. at 17-18.) This is simply a variation of the same failed argument that an interstate compact's silence on a particular matter allows a founder state to unilaterally impose state law obligations on that matter. In the Keystone case that Walsh cites, PennDOT made a similar argument that because outdoor advertising was not expressly listed among DRPA's authorized purposes, it should be deemed excluded from the founder states' surrender of sovereignty. Keystone, 2022 WL 2805335 at *6-*8. The Keystone court rejected that argument. Ibid.

Moreover, Walsh does not dispute that his subpoenas seek records generated from the kinds of operations (procurement of goods and services, real property

leasing, etc.) expressly listed among DRPA's authorized purposes and designated powers. (See ECF Doc. No. 9-6 at Ex. 14.) Furthermore, the DRPA Compact expressly requires DRPA to maintain, and to honor public requests for, production of records regarding procurement and other aspects of its operations. See N.J.S.A. 32:3-13; 36 P.S. § 3503 (Art. XII); N.J.S.A. 32:3-4.7(b). Thus, this dispute does ***not*** involve a subject completely outside of the DRPA Compact, making Walsh's "threshold issue" argument factually inapplicable as well as legally wrong.

**B. General Contract Construction Tools for Ambiguous Contracts Are Not Applicable Here.**

Walsh argues that the DRPA Compact, as a contract, should be read using general contract construction principles, which provide for resort to a variety "interpretive tools" when a contract is silent on an issue. (See Def. Opp. Br. at 9-10.) However, such contract construction principles are only applicable to resolve contractual ***ambiguity***. See, e.g., Integrated Health Res., LLC v. Rossi Psychological Grp., P.A., 537 F. Supp.2d 672, 675 (D.N.J. 2008); Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 118 (2014) ("If the language of a contract is plain and capable of legal construction, the language alone must determine the agreement's force and effect.") (internal quotes omitted).

As recognized by the Third Circuit, ***silence on a particular issue in an interstate compact is not ambiguity***. See DRJTBC, 985 F.3d at 195-96. The Third Circuit explained that New Jersey and Pennsylvania "ceded sovereign

authority to the [Bridge] Commission when they authorized it, in the broadest terms, '[t]o exercise *all other powers* ... which may be reasonably necessary or incidental to the effectuation of its authorized purposes ... *except* the power to levy taxes.' Pub. L. No. 74-411, § 9, 49 Stat. at 1060 (emphasis added). As the District Court noted, '[t]he ordinary meaning of "all other powers" does not provide a limitation retaining the Commonwealth's police power.'" DRJTBC, 985 F.3d at 196. The identical language identified by the Third Circuit in the Bridge Commission's compact as a broad, ***unambiguous surrender of sovereignty over everything not expressly reserved*** also appears in the DRPA Compact. N.J.S.A. 32:3-5; 36 P.S. § 3503 (Art. IV). As there is no ambiguity, there is no need for resort to contract construction principles.

**C. The Third Circuit Cases are Still Good Law.**

The U.S. Supreme Court did ***not*** overrule the above-referenced Third Circuit precedent in its decision in New York v. New Jersey. ***That case did not involve the issue presented here and in the above-discussed Third Circuit cases – one founder state attempting to unilaterally impose state law obligations on a bi-state entity.*** Rather, New York involved only the limited, straightforward issue of whether a founder state can ***withdraw from*** a bi-state entity that it created. Relying upon the "default contract-law rule – that contracts calling for ongoing and indefinite performance may be terminated by either party", the Court found that it

was within the founder states' expectation when they entered into the interstate compact that either could terminate that compact at will. Id. at 225.

Nowhere in the New York decision did the Court even discuss, let alone purport to overrule, the Third Circuit's ruling in DRJTBC that the compact language (the same language that appears in the DRPA Compact) broadly and unambiguously surrendered sovereignty as to all matters not expressly reserved. See generally id. Had the Supreme Court intended to overrule DRJTBC, or the prior Third Circuit decisions on which it was based, the Court would have said so.

Moreover, the N.J. Supreme Court relied upon DRJTBC when it ruled just a few months ago that New Jersey and Pennsylvania had surrendered their sovereignty regarding whether a bi-state entity could use project labor agreements, despite that the bi-state entity's compact was silent regarding project labor agreements. See Delaware River Joint Toll Bridge Comm'n v. George Harms Constr. Co., Inc., 258 N.J. 286, 306 (2024) (citing DRJTBC, 985 F.3d at 196). The N.J. Supreme Court also quoted and relied upon the New York decision in that same decision, giving no indication that it perceived any conflict between those two lines of case law. See id. at 302.

### D. The Prohibition Against Unilateral Imposition of Additional State Law Obligations on Bi-State Entities is Not Limited Only to "Substantive" Laws.

Walsh argues that conducting investigations and serving "subpoenas for information" (which Walsh asserts are neither "substantive" nor "punitive") is not

"regulation" of DRPA, and thus is not barred by interstate compact law recognizing that "bistate entities created by compact . . . are not subject to the unilateral control of any one of the States.'" Hess, 513 U.S. at 42; (See Def. Opp. Br. at 20-21.) However, interstate compact law does not merely bar a founder state from unilaterally "regulating" a bi-state entity. A founder state cannot unilaterally impose ***any additional duty or obligation*** on a bi-state entity. See, e.g., Int'l Union of Op. Engrs., 311 F.3d at 278 (consent of both founder states required for "additional duties" to be imposed); Ballinger v. Delaware River Port Auth., 172 N.J. 586, 594 (2002) ("the unilateral imposition of ***additional duties*** on [a bi-state] authority ... is impermissible"). Walsh absolutely is trying to impose additional duties or obligations on DRPA through his subpoenas – (1) an obligation to search for, gather, review, and produce thousands of documents, and (2) an obligation to produce a witness to be questioned under oath, under penalty of perjury. (See ECF Doc. No. 9-6 at Exs. 14, 17.)

Walsh does not cite any case holding that the prohibition against unilateral imposition of additional duties/obligations is limited to only those deemed "substantive" – that supposed limitation was invented by Walsh's counsel. Subjecting a bi-state entity to any duty/obligation beyond what is expressly provided for in the entity's interstate compact (which is both contract and legislation) requires ***amendment or modification*** of that compact. See, e.g., Int'l

Union of Op. Engrs., 311 F.3d at 276-81. There is no exception to that requirement for supposed "non-substantive" duties/obligations.

Moreover, to allow one founder state to impose "non-substantive" obligations would undermine one of the primary reasons for bi-state entities' separate sovereignty and independence. Bi-state entities are created so that regional issues can be managed without the burden and delay of multiple states having to formally negotiate every such issue on an individual basis. See Hess, 513 U.S. at 40. Subjecting a bi-state entity to any provisions under either founder state's law that are deemed "non-substantive" would severely impair the entity's freedom to act – especially where the founder states' law regarding the supposed "non-substantive" obligations is contrary or inconsistent. See Del. River & Bay Auth. v. N.J. Pub. Emp. Rels. Comm'n, 112 N.J. Super. 160, 166 (App. Div. 1970), aff'd, 58 N.J. 388 (1971) ("To sanction such practice would lead to discord and a destruction of the purposes for which such bi-state agencies are formed.")

### E. Walsh Has Not Identified an Express Reservation of Authority.

The burden rests on Walsh to show a specific, express reservation in the DRPA Compact for New Jersey to unilaterally exercise investigatory and subpoena power over DRPA. Walsh has failed to satisfy that burden.

Walsh points to language in the DRPA Compact that (1) provides the founder states' governors with limited veto power; (2) requires the governors' approval of any DRPA regulations; (3) requires DRPA to "[c]o-operat[e] with all

other bodies interested or concerned with, or affected by the promotion, development or use of the Delaware river and the Port District"; and (4) requires DRPA to abide by the more stringent provisions of either New Jersey's Open Public Meetings Act or Pennsylvania's Sunshine Act. (Def. Opp. Br. at 10-11.) ***However, none of those provisions expressly reserve authority for New Jersey to unilaterally investigate and subpoena DRPA.*** Walsh argues that the "spirit" of those provisions shows that the founder states wanted to reserve broad, full oversight authority over DRPA. (See ibid.) But that argument asks the Court to find an ***implicit*** reservation of authority – the exact opposite of the "***express***" reservation that Walsh must establish. Moreover, express reservations on ***other topics*** reinforces that the absence of any express reservation of New Jersey's right to unilaterally investigate and subpoena DRPA means that the founder states did not intend to reserve such authority. See DRJTBC, 985 F.3d at 196.

Walsh argues that failure to accept his position would leave DRPA free from any governmental accountability. (See Def. Opp. Br. at 13.) Not so. It simply means that New Jersey must rely upon the various accountability provisions that the two founder states bargained for in the DRPA Compact. And, if New Jersey has any concerns, it must work through proper channels within DRPA, rather than through unilateral application of state laws.

### F. DRPA's Voluntary Cooperation with Prior Investigations is Not an "Acknowledgment" of OSC Having Authority over DRPA.

Walsh argues that DRPA's voluntary cooperation with prior OSC investigations was an "acknowledgment" that the DRPA Compact reserves unilateral investigative authority for New Jersey and its agencies. It was not. In 2010, the founder state governors jointly requested that DRPA voluntarily consent to investigations/audits by the OSC and Pennsylvania's Auditor General, respectively. Far from being an "acknowledgment" of OSC investigative authority over DRPA, it is exactly the opposite. If OSC had unilateral authority to investigate DRPA, then there would have been no need to seek consent from either Pennsylvania or DRPA. New Jersey's request for DRPA's voluntarily consent to an investigation acknowledged that New Jersey did ***not*** reserve unilateral investigative authority in the DRPA Compact.

As to a certain limited subset of documents – mainly personnel records – DRPA requested OSC to issue a "friendly" subpoena so sensitive personal information would be deemed provided in response to a legal request rather than just having been informally released. (See SUMF at ¶ 23.) However, DRPA ***voluntarily*** asking OSC to issue a subpoena ***with DRPA's consent*** is not an "acknowledgment" that OSC has authority to unilaterally issue subpoenas to compel involuntary cooperation from DRPA.

When OSC undertook another investigation in 2020, OSC did not send a subpoena, but instead sent a letter asking DRPA to provide certain information. (See SUMF at ¶ 25.) Tellingly, OSC purported that its 2020 information request was authorized by DRPA's prior resolution providing ***voluntary consent*** in connection with the 2010 investigation. (See SUMF at ¶ 25, Exs. 11, 12.) DRPA again voluntarily agreed to provide the requested information, but its response letter specifically stated: "We want to make expressly clear . . . that DRPA's decision to voluntarily provide this information should not be viewed as an acknowledgement of OSC's authority to investigate or audit the DRPA, a waiver of DRPA's immunity from unilateral regulation, or a commitment of DRPA to provide any additional information in response to any future request by OSC." (See SUMF at ¶ 26.) Walsh's assertion that this constituted "acknowledgment" by DRPA of OSC authority over DRPA is nonsensical.

## CONCLUSION

DRPA respectfully requests that the Court grant DRPA's cross-motion for summary judgment on its declaratory judgment claim.

Respectfully submitted,

ARCHER & GREINER
A Professional Corporation
Attorneys for Plaintiff
By: *s/ Christopher R. Gibson*
Christopher R. Gibson, Esq.
Patrick M. Flynn, Esq.

Dated: December 30, 2024

229803692 v1