**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DELAWARE RIVER PORT AUTHORITY,<br><br>Plaintiff,<br><br>v.<br><br>KEVIN D. WALSH, Acting New Jersey State Comptroller, in his official capacity,<br><br>Defendant. | Civil Action No. 24-8186 (MAS) (JTQ)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Defendant Acting New Jersey State Comptroller Kevin D. Walsh's ("Defendant") Motion to Dismiss (ECF No. 5) Plaintiff Delaware River Port Authority's ("Plaintiff") Complaint (ECF No. 1). Plaintiff opposed (ECF No. 9) and filed a Cross-Motion for Summary Judgment ("Cross-Motion") (ECF No. 10). Defendant replied in further support of his Motion to Dismiss and opposed the Cross-Motion. (ECF No. 14.) Plaintiff replied in further support of its Cross-Motion. (ECF No. 15.) The Court has carefully considered the parties' submissions and reaches its decision without oral argument under Local Civil Rule 78.1(b). For the reasons below, Defendant's Motion to Dismiss is granted.

# I.    BACKGROUND

## A.    Factual Background[1]

This case arises out of Defendant's service of two subpoenas on Plaintiff in connection with Plaintiff's procurement of goods and services, leases and sale of real property, and collection, maintenance, and reporting of records. (Compl. ¶¶ 28-42, ECF No. 1; *see also id.* at Exs. 2-3.)

### 1.    The Parties

#### a.    Delaware River Port Authority

Plaintiff is a bi-state entity of New Jersey and Pennsylvania that "develop[s] and maintain[s] interstate transportation routes, namely bridges and port facilities, between the two states." (*Id.* ¶¶ 11-14.) Plaintiff was created by an interstate compact (the "Compact") between New Jersey and Pennsylvania in 1931 that was approved by the United States Congress in 1932. (*Id.* ¶¶ 11-12.) The Compact extends authority to Plaintiff to carry out certain "essential government functions." (*See id.* ¶ 19; *id.* at Ex. 1 ("Compact"), Art. I.) Namely, Article I of the Compact delineates the specific "public purposes" of Plaintiff, which Plaintiff "shall be deemed to be exercising an essential governmental function in effectuating." (Compact, Art. I.) Further, Article IV grants Plaintiff several enumerated powers "[f]or the effectuation of its authorized purposes" including "[t]o sue and be sued," hire or employ officers, agents, and employees, enter into contracts, acquire real and personal property, borrow money, exercise the right of eminent domain, and "exercise all other powers not inconsistent with the constitutions of the two States or of the United States, which may be reasonably necessary or incidental to the effectuation of its authorized purposes." (Compact, Art. IV.) Such powers may be altered or expanded "by the action

---

[1] For the purpose of considering the instant motion, the Court accepts all factual allegations in the Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

of either State concurred in by legislation of the other." (Compact, Art. IV.) The Compact also requires Plaintiff, among other things, to submit annual financial and operational information to the governors and legislatures of New Jersey and Pennsylvania, and at least every five years, to engage an independent firm to conduct "a management audit of [Plaintiff's] operational effectiveness and efficiency." (Compl. ¶¶ 19, 22 (quoting Compact, Art. XII).)

### b.    Acting Comptroller of New Jersey

Defendant is the Acting Comptroller of New Jersey (*id.* ¶ 5) and derives his authority from two New Jersey statutes: N.J.S.A. § 52:15B-1 *et seq.* (the "Inspector General Statute") and N.J.S.A. § 52:15C-1 *et seq.* (the "Comptroller Statute")[2] (*see id.* ¶ 43). The Inspector General Statute confers Defendant with the authority to ensure that "New Jersey State funding is spent in a responsible manner." (*Id.* ¶¶ 58-60 (citing N.J.S.A. § 52:15B-7).) It authorizes the creation of a

> program of investigation, to . . . investigate complaints concerning alleged fraud, waste, abuse, or mismanagement of State funds, designed to provide increased accountability, integrity, and oversight of: all recipients of State funds, including, but not limited to, State departments and agencies, independent authorities, county and municipal governments, and boards of education.

(*Id.* ¶ 59 (emphasis omitted) (quoting N.J.S.A. § 52:15B-7).) The Inspector General Statute further grants the Comptroller authority to investigate:

> the awarding and the execution of contracts awarded by the State, or any of its independent authorities, commissions, boards, agencies, or instrumentalities, which contracts involve a significant expenditure of public funds . . . and [to investigate] the performance of governmental officers, employees, appointees, functions, and programs in order to promote efficiency, to identify cost savings, and to detect and prevent misconduct within the programs and

---

[2] The New Jersey Office of the State Comptroller absorbed the state Office of the Inspector General in 2010, "consolidat[ing] the powers of New Jersey's Office of the Inspector General under the Office of the State Comptroller," including subpoena powers. (Compl. ¶¶ 45, 64.)

> operations of any governmental agency funded by, or disbursing, State funds.

(*Id.* ¶ 60 (emphasis omitted) (quoting N.J.S.A. 52:15B-7).) To effectuate this power, the Inspector General Statute grants the Comptroller authority to issue subpoenas for documents and testimony. (*Id.* ¶¶ 63-64 (citing N.J.S.A. § 52:15B-8(c)).)

The Comptroller Statute similarly tasks the Office of the State Comptroller with conducting:

> routine, periodic and random audits of the Executive branch of State government, including all entities exercising executive branch authority, public institutions of higher education, independent State authorities, units of local government and boards of education and . . . conducting assessments of the performance and management of programs of the Executive branch of State government, including all entities exercising executive branch authority, public institutions of higher education, independent State authorities, units of local government and boards of education and the extent to which they are achieving their goals and objectives.

(*Id.* ¶ 51 (emphasis omitted) (quoting N.J.S.A. 52:15C-5(a).) The Comptroller website brands the Comptroller as New Jersey's financial "watchdog," seeking to promote "accountability and transparency across government and to advocate on behalf of taxpayers." (*Id.* ¶ 47.)

### 2.    *The Subpoenas*

On July 2, 2024, Defendant issued a subpoena duces tecum to Plaintiff (the "Documents Subpoena") requesting "documents related to seven separate categories of requested information." (*Id.* ¶ 29; *see also id.* at Ex. 2.) The Documents Subpoena "demanded" that Plaintiff provide all requested information to Defendant by July 16, 2024. (*Id.* ¶ 30.) The Documents Subpoena further stated that it was issued pursuant to Defendant's statutory authority, and that "[f]ailure to comply with this Subpoena may render [Plaintiff] liable for contempt of court and such other penalties as are provided by law." (*Id.* ¶ 32; *see also id.* at Ex. 2.)

On July 17, 2024, Defendant sent Plaintiff a second subpoena, a subpoena ad testificandum ("the Testimony Subpoena" and, together with the Documents Subpoena, the "Subpoenas"), requesting that Plaintiff "provide sworn testimony under oath concerning [Plaintiff's] collection and maintenance of records, and practice and procedures for responding to requests for information from government entities." (*Id.* at Ex. 3; *see also id.* ¶¶ 36-37.) Like the Documents Subpoena, the Testimony Subpoena states that it was issued pursuant to Defendant's statutory authority and threatened Plaintiff with contempt of court and other penalties if Plaintiff did not comply with the terms of the subpoena. (*Id.* ¶¶ 38-39; *see also id.* at Ex. 3.)

After receiving the Subpoenas, Plaintiff "offered to voluntarily provide the documents requested in the Documents Subpoena" in exchange for Defendant's withdrawal of the Subpoenas. (*Id.* ¶ 42.) "That offer was not accepted." (*Id.*)

### B.  Procedural Background

On July 31, 2024, Plaintiff brought the instant action. (*See generally id.*) The Complaint includes two counts: declaratory judgment ("Count One"); and injunctive relief ("Count Two"). (*Id.* ¶¶ 72-84.) Specifically, Plaintiff claims that Defendant, in "impos[ing] legal obligations on [Plaintiff] through the Subpoenas," is "infring[ing] on the protections afforded [Plaintiff] in the Compact and is a violation of federal law." (*Id.* ¶¶ 74, 77 ("The [Defendant's] demands that [Plaintiff] comply with the Subpoenas infringes on [Plaintiff's] sovereign authority and rights under the Compact, the United States Constitution, and other federal law.").)

On October 21, 2024, Defendant moved to dismiss the Complaint for four reasons: (1) Plaintiff's claims are not ripe for review and therefore the Court lacks subject matter jurisdiction; (2) Plaintiff's claims were filed without proper authorization from its board; (3) Plaintiff's state-law claims are barred by sovereign immunity; and (4) the subpoenas are within

Defendant's statutory authority to issue and are not otherwise barred by the Compact. (*See generally* Def.'s Moving Br., ECF No. 5.) Plaintiff opposed (Pl.'s Opp'n Br., ECF No. 9), and Defendant replied (Def.'s Reply Br., ECF No. 14).

While this action was pending in this Court, in October 2024, Defendant filed a motion in the Superior Court of New Jersey to enforce the Subpoenas, and Plaintiff thereafter filed a motion to dismiss. (*See* Pl.'s Feb. 2025 Correspondence, ECF No. 16.) On January 30, 2025, the Superior Court denied Defendant's motion to enforce the Subpoenas against Plaintiff, stating that "comity and common-sense counsel deference to the Court's federal colleagues" and finding that the first-filed rule applied. (Pl.'s Feb. 2025 Correspondence at *4-6.[3])

## II.     LEGAL STANDARD

### A.     Motion to Dismiss—Rule 12(b)(1)

Under Federal Rule of Civil Procedure[4] 12(b)(1), a defendant may move to dismiss a matter for want of standing "because standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007) (citations omitted). "When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion." *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991). A motion to dismiss for lack of subject matter jurisdiction may either "attack the complaint on its face . . . [or] attack the existence of subject matter jurisdiction in fact, quite apart from any pleadings." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

A facial challenge asserts that "the complaint, on its face, does not allege sufficient grounds to establish subject matter jurisdiction." *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 438

---

[3] Page numbers preceded by an asterisk refer to the page numbers atop the ECF header.

[4] All references to "Rule" or "Rules" hereafter refer to the Federal Rules of Civil Procedure.

(D.N.J. 1999). As such, a facial challenge "calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6), i.e., construing the alleged facts in favor of the nonmoving party." *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). District courts considering a facial challenge, then, must construe the allegations in the complaint as true and determine whether subject matter jurisdiction exists. *Mortensen*, 549 F.2d at 891; *see also Cardio-Med. Assocs. Ltd. v. Crozer-Chester Med. Ctr.*, 721 F.2d 68, 75 (3d Cir. 1983). "Thus, '[t]o survive a motion to dismiss [for lack of standing], a complaint must contain sufficient factual matter' that would establish standing if accepted as true." *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 633 (3d Cir. 2017) (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

### B.    Motion to Dismiss—Rule 12(b)(6)

Rule 8(a)(2) "requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss under Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must identify "the elements a plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 676. Second, the court must identify all of the plaintiff's well-pleaded factual allegations, accept them as true, and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court can discard bare legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Third, the court must

7

determine whether "the [well-pleaded] facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc.*, 926 F.2d at 1409).

## III.    DISCUSSION

For the reasons set forth below, the Court finds that: (1) Plaintiff's claims are ripe for review; (2) Plaintiff's claims are not barred by sovereign immunity; and (3) Defendant's issuance of subpoenas does not violate Plaintiff's rights pursuant to the Compact. The Court addresses each finding in turn.[5]

### A.    Plaintiff's Claims Are Ripe

As a preliminary matter, the Court addresses whether Plaintiff's claims are ripe.

### *1.    Legal Standard*

"Article III of the Constitution limits the federal judiciary's authority to exercise its 'judicial [p]ower' to 'Cases' and 'Controversies'" over which the federal judiciary is empowered to decide. *Plains All Am. Pipeline L.P. v. Cook*, 866 F.3d 534, 538 (3d Cir. 2017) (quoting U.S. Const. art. III, § 2). "This case-or-controversy limitation, in turn, is crucial in 'ensuring that the Federal Judiciary respects the proper—and properly limited—role of the courts in a democratic society.'" *Id.* at 539 (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006)). The

---

[5] Having determined that the Compact does not bar Defendant from issuing subpoenas to Plaintiff, the Court declines to address Defendant's argument that Plaintiff's claims were filed without proper authorization pursuant to the Compact.

existence of a case or controversy, therefore, is a necessary "prerequisite to all federal actions, including those for declaratory or injunctive relief." *Phila. Fed'n of Tchrs. v. Bureau of Workers' Comp.*, 150 F.3d 319, 322 (3d Cir. 1998) (quoting *Presbytery of N.J. of Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1462 (3d Cir. 1994)).

Federal courts ensure that they are properly enforcing the case-or-controversy limitation "'through the several justiciability doctrines that cluster about Article III' . . . including 'standing, ripeness, mootness, the political-question doctrine, and the prohibition on advisory opinions.'" *Plains All Am. Pipeline L.P.*, 866 F.3d at 539 (quoting *Toll Bros., Inc. v. Township of Readington*, 555 F.3d 131, 137 (3d Cir. 2009)). "Ripeness concerns whether the legal issue at the time presented in a court is sufficiently concrete for decision." *United States ex rel. Ricketts v. Lightcap*, 567 F.2d 1226, 1232 (3d Cir. 1977). "Courts will not decide abstract legal issues posed by two parties; the issue in controversy must have a practical impact on the litigants." *Id.* (citing *Abbott Laby's v. Gardner*, 387 U.S. 136, 148-54 (1967)).

In its most basic form, an unripe claim is evident if upon inspection it is necessarily hypothetical, speculative, or contingent on some other yet-to-happen event. *Trump v. New York*, 592 U.S. 125, 131 (2020) (defining "ripe" as, in part, an issue that is "not dependent on 'contingent future events that may not occur as anticipated, or indeed may not occur at all'" (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)); *see also Marathon Petroleum Corp. v. Sec'y of Fin. for Del.*, 876 F.3d 481, 497 (3d Cir. 2017) (finding that when an alleged injury is premised on some speculative future harm, "a decision . . . would be inconclusive and lacking in practical utility absent further factual development").

Where a federal court finds that a claim is not ripe, the court lacks subject-matter jurisdiction to adjudicate the unripe claim. *Renne v. Geary*, 501 U.S. 312, 316 (1991) ("Concerns

of justiciability go to the power of the federal courts to entertain disputes, and to the wisdom of their doing so."). Importantly, federal courts are to "presume" they "lack jurisdiction unless the contrary appears affirmatively from the record." *Id.* (quoting *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 546 (1986)) (internal quotation marks omitted). Ultimately, "[i]t is the responsibility of the complainant [to clearly] allege facts demonstrating that [it] is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." *Id.* (quoting *Bender*, 475 U.S. at 546 n.8).

The Third Circuit considers whether claims for declaratory and injunctive relief are ripe under the three-factor *Step-Saver* test. *Plains All Am. Pipeline L.P.*, 866 F.3d at 540. The *Step-Saver* test directs courts to analyze: "(1) the adversity of the parties' interests[;] (2) the conclusiveness of the judicial judgment[;] and (3) the utility of that judgment." *Freehold Cogeneration Assocs., L.P. v. Bd. of Regul. Comm'rs of N.J.*, 44 F.3d 1178, 1188 (3d Cir. 1995); *see also NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 342 (3d Cir. 2001); *Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 647 (3d Cir. 1990).

### 2.    *Applicability of* First Choice

Before diving into the *Step-Saver* test, the Court addresses Defendant's argument that *First Choice Women's Resource Centers, Inc. v. Platkin*, No. 23-23076, 2024 WL 150096 (D.N.J. Jan. 12, 2024) is directly applicable, and therefore this matter is not ripe for review. (Def.'s Moving Br. 10-12; Def.'s Reply Br. 3-5.) Specifically, Defendant argues that here, like in *First Choice*, the "subpoenas 'are not "self-executing" because they require court intervention,' and unless and until that intervention occurs, [Plaintiff] has not suffered an actual or imminent injury." (Def.'s Moving Br. 12 (quoting *First Choice*, 2024 WL 150096, at *3).) The Court disagrees.

In *First Choice*, this Court held that "a dispute regarding the enforceability of the State's non-self-executing state administrative subpoena[6] [wa]s not ripe for adjudication by a federal court" because, absent enforcement, the plaintiff had not suffered the alleged injury. *First Choice*, 2024 WL 150096, at *3-4 ("Because this Court cannot yet know whether the state court tasked by the New Jersey state legislature with overseeing subpoena enforcement proceedings like this will, in fact, enforce the Subpoena in its current form, this matter is not ripe for resolution because no actual or imminent injury has occurred.").

While the facts in this case are similar to those in *First Choice* because both cases arose from the service of "non-self-executing state administrative subpoena[s]," the alleged injuries are distinct. *First Choice*, 2024 WL 150096, at *5 n.7. In *First Choice*, the alleged injury was contingent upon the enforcement of the subpoena. 2024 WL 150096, at *4 ("[A] constitutionally-sufficient injury can only occur . . . if the state court tasked with enforcing the subpoena refuses to quash or modify the constitutionally-infirm subpoena."). In contrast, here, Plaintiff's alleged injury is being wrongly subjected to Defendant's subpoena authority. (Compl. ¶ 3 ("[Defendant's] attempt . . . to compel [Plaintiff] to provide documents and witness testimony, infringes upon [Plaintiff's] sovereign authority under the Compact and deprives [Plaintiff] of its liberty, rights and privileges secured under the United States Constitution and federal law.").) Such an injury is not contingent on the enforcement of the Subpoenas, but is rather contingent on the issuance of the Subpoenas, themselves. That the alleged injury in *First Choice* was contingent on subpoena enforcement was the dispositive factor for determining ripeness. 2024 WL 150096, at *4

---

[6] The subpoena in question derived its authority from two state-statutory sources which required that "if the State wants to enforce a subpoena against a non-compliant subpoena recipient, it must file an enforcement action in state court seeking a judgment of contempt against the recipient." *First Choice*, 2024 WL 150096, at *3. Accordingly, the subpoenas were "not 'self-executing' because they require[d] court intervention." *Id.*

("Plaintiff's claims related to the [s]ubpoena's enforceability in this matter would ripen only after the contingent future event that forms the basis of its alleged injury occurs, i.e., if and when the state court enforces the Subpoena in its current form."). The distinct nature of Plaintiff's alleged injury here thus distinguishes Plaintiff's claims from those in *First Choice*. As such, the Court finds that *First Choice* is not directly applicable in this matter.

### 3.    Step-Saver *Test*

Having determined that First Choice is not applicable, the Court moves on to the *Step-Saver* test to determine whether Plaintiff's claims are otherwise ripe for review. First, the Court addresses the first factor of the *Step-Saver* test: adversity. "'[F]or there to be an actual controversy[,] the defendant must be so situated that the parties have adverse legal interests.'" *Presbytery of N.J. of Orthodox Presbyterian Church*, 40 F.3d at 1463 (quoting *Step-Saver*, 912 F.2d at 648). Adversity may exist when a party challenges the *authority* of another to subject it to a particular process. *See Freehold Cogeneration Assocs., L.P.*, 44 F.3d at 1189 (holding that a preemption challenge to ongoing proceedings before the N.J. Board of Regulatory Commissioners was ripe even though "the plaintiff did not challenge the state's ultimate substantive decision, but rather its authority to conduct proceedings"); *Siemens USA Holdings Inc. v. Geisenberger*, 17 F.4th 393, 413 (3d Cir. 2021) (citing *Marathon Petroleum*, 876 F.3d at 498-99) ("[W]e have held there is sufficient adversity in an auditing-authority challenge when a state has actually requested information and the request is itself the claimed harm.").

The Court finds the reasoning of *Marathon Petroleum Corp.* particularly compelling. 876 F.3d at 498-99. In *Marathon*, the plaintiffs, two Delaware business entities, brought suit against the Secretary of Finance for Delaware, "challeng[ing] Delaware's right to conduct an audit." *Id.* at 484. Plaintiffs argued that "under the rules of priority and preemption laid down by the Supreme

Court, "the State must . . . be barred from auditing [plaintiffs] in connection with [whether certain funds were subject to escheatment]." *Id.* Delaware, in response, argued that the claim was not ripe "because no action [had] been taken to enforce compliance with the audit and thus participation in the audit [had] been and still is voluntary." *Id.* In its analysis, the Third Circuit distinguished between challenges to the "scope and intensity" of the audit versus challenges to the State's auditing authority. *Id.* at 496-99. As to the State's auditing authority, the Third Circuit applied the *Step-Saver* test and determined that when the injury "is the process itself," then the interests of the parties are sufficiently adverse, and the claim is ripe to address. *Id.* (quoting *Sayles Hydro Assocs. v. Maughan*, 985 F.2d 451, 454 (9th Cir. 1993)).

Here, Plaintiff challenges Defendant's authority to unilaterally "conduct investigations . . . and to further those investigations by issuing subpoenas under New Jersey law in an attempt to compel [Plaintiff] to provide documents and witness testimony." (Compl. ¶ 3.) Since "the claimed injury 'is the process itself,' . . . the interests of the parties are clearly adverse." *Marathon Petroleum Co.*, 876 F.3d at 499 (quoting *Sayles Hydro Assocs.*, 985 F.2d at 454); *NE Hub*, 239 F.3d at 342 ("[T]he process itself may give rise to adversity so that an action challenging the process is ripe even before the process concludes."). Plaintiff's alleged injury "is the process itself," *id.*; it is the allegedly wrongful subjection to Defendant's subpoena authority. (Comp. ¶ 3). The parties, thus, are sufficiently adverse.

Second, the Court addresses the *Step-Saver* factor of conclusiveness. A judgment is conclusive where it "definitively would decide the parties' rights." *NE Hub*, 239 F.3d at 344. This factor demands that the Court consider "the extent to which further factual development of the case would facilitate decision, so as to avoid issuing advisory opinions, or whether the question presented is predominantly legal." *Id.* This factor "is part and parcel of the constitutionally

mandated inquiry into the existence of a case or controversy." *Travelers Ins. Co. v. Obusek*, 72 F.3d 1148, 1155 (3d Cir. 1995). Here, the question presented to the Court is predominantly legal: whether Defendant's issuance of the Subpoenas violates the Compact. (*See* Compl. ¶¶ 74, 77.) As such, any judgment entered regarding Defendant's authority to subpoena Plaintiff would be conclusive and definitively determine the parties' rights and obligations regarding the Subpoenas. *See Marathon Petroleum Corp.*, 876 F.3d at 499 (finding that "any judgment . . . regarding the authority to audit w[ould] be conclusive because it 'definitively would decide the parties' rights'"); *Wayne Land & Mineral Grp. LLC v. Del. River Basin Comm'n*, 894 F.3d 509, 523 (3d Cir. 2018) (finding that "granting or denying [appellant's] requested declaratory relief w[ould] conclusively determine whether [appellant] can forego the expense of applying to the Commission"); *Siemens USA Holdings Inc.*, 17 F.4th at 414 (holding that "[t]he conclusiveness and practical utility considerations . . . weigh in favor of ripeness because any judgment issued on [appellant's] preemption claim 'definitively would decide the parties' rights' and would inform the parties' decisions about compliance and enforcement" (quoting *NE Hub*, 239 F.3d at 344)). The second factor, therefore, weighs in favor of ripeness.

Third, the Court addresses the final *Step-Saver* factor: utility of the judgment. Under this factor, "a case should not be considered justiciable unless 'the court is convinced that [by its action] a useful purpose will be served.'" *Presbytery of N.J. of Orthodox Presbyterian Church*, 40 F.3d at 1464 (quoting *Step-Saver*, 912 F.2d at 649). Here, the Court finds that a judgment would be useful because it would "clarify [the] legal relationships" so that Plaintiff and Defendant "could make responsible decisions about the future." *Marathon Petroleum Co.*, 876 F.3d at 499 (quoting *Step-Saver*, 912 F.2d at 649) (finding that a decision addressing whether a state had the authority

14

to conduct an audit would be "of real practical value to the parties"). As such, the third factor weighs in favor of ripeness.

Having found that each of the three *Step-Saver* factors weigh in favor of ripeness, the Court, accordingly, finds Plaintiff's claims are ripe for review.

### B.      Plaintiff's Claims Are Not Barred by Sovereign Immunity

Next, the Court addresses whether Plaintiff's claims are barred by sovereign immunity under the Eleventh Amendment. For the reasons set forth below, the Court concludes the claims are not barred.

Defendant argues that the Complaint alleges that Defendant violated the Inspector General Statute and the Comptroller Statute by issuing subpoenas beyond its authority and that such a "*state-law* claim . . . must be dismissed because it is barred by sovereign immunity under the Eleventh Amendment." (Def.'s Moving Br. 13 (emphasis in original).) Specifically, Defendant argues that because it did not consent to suit and because the *Ex Parte Young* exception "permit[ting] litigants to seek injunctive relief in federal court to prevent ongoing violations of federal law by state officials" is only applicable to federal law claims, the "state-law claims" alleged by Plaintiff are barred by sovereign immunity and must be dismissed. (*Id.* at 13-14.)

Plaintiff maintains that it does not allege a state-law claim and accordingly argues that Defendant's sovereign immunity defense is meritless. (Pl.'s Opp'n Br. 38.) Namely, Plaintiff "contends that [Defendant's] issuance of the Subpoenas to [Plaintiff] violated the . . . Compact and federal law governing interstate compacts," and thus positions the claim "squarely within the *Ex Parte Young* exception to sovereign immunity." (*Id.* at 38-40 (internal quotation marks and citations omitted).)

15

The Eleventh Amendment provides that "[t]he [j]udicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Amendment provides "states with immunity from suit . . . in federal court not only from suits brought by citizens of other states, but also from suits brought by their own citizens." *Gattuso v. N.J. Dep't of Hum. Servs.*, 881 F. Supp. 2d 639, 645 (D.N.J. 2012) (citing *Hans v. Louisiana*, 134 U.S. 1, 13-14 (1890)). This immunity extends to suits against state officers acting in their official capacity. *Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002).

An exception to the State's Eleventh Amendment immunity is the *Ex Parte Young* doctrine. Under *Ex Parte Young*, "individual state officers can be sued . . . for prospective injunctive and declaratory relief to end continuing or ongoing violations of federal law." *MCI Telecom Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 506 (3d Cir. 2001) (citing *Ex Parte Young*, 209 U.S. 123 (1908)). *Ex Parte Young* is based on the theory that a state officer has no authority to violate federal law and thus, when the official does so, even pursuant to state law, the official "is stripped of his official or representative character and becomes subject to the consequences of his individual conduct." *Id.*

The Supreme Court has found that the *Ex Parte Young* exception should not be given an expansive scope. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102-03 (1984). For *Ex Parte Young* to apply, a suit must seek both prospective relief and a remedy to an ongoing or continuing violation of federal law. *Green v. Mansour*, 474 U.S. 64, 68 (1985); *see also Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (holding that whether *Ex Parte Young* applied required a "straightforward inquiry into whether the complaint alleges an ongoing

16

violation of federal law and seeks relief properly characterized as prospective"); *Christ the King Manor, Inc. v. Sec'y of HHS*, 730 F.3d 291, 318-19 (3d Cir. 2013) (holding that *Ex Parte Young* only allows suits "that seek prospective relief to end an ongoing violation of federal law" and finding that in making these determinations, courts "must look to the substance rather than the form of the relief requested" (internal quotation marks and citations omitted)).

Here, Plaintiff alleges that Defendant, by issuing the Subpoenas on Plaintiff, is "infring[ing] on the protections afforded [Plaintiff] in the Compact." (Compl. ¶¶ 74, 77 ("The [Defendant's] demands that [Plaintiff] comply with the Subpoenas infringes on [Plaintiff's] sovereign authority and rights under the Compact.").) Under the Compact Clause of the United States Constitution, Art. I, § 10, cl. 3, "[n]o State shall, without the Consent of Congress, . . . enter into any Agreement or Compact with another State . . . ." The Supreme Court has held that "congressional consent transforms an interstate compact within this Clause into a law of the United States," and therefore "the construction of an interstate agreement sanctioned by Congress under the Compact Clause presents a federal question." *Cuyler v. Adams*, 449 U.S. 433, 438 (1981); *see also Spence-Parker v. Del. River & Bay Auth.*, 616 F. Supp. 2d 509, 516 (D.N.J. 2009) (quoting *Int'l Union of Operating Eng'rs, Loc. 542 v. Del. River Joint Toll Bridge Comm'n*, 311 F.3d 273, 279 n.4 (3d Cir. 2002)) ("The construction of a bistate compact is 'a question of federal law.'"). Since Plaintiff alleges that Defendant is infringing its rights under the Compact—an interstate compact approved by Congress—Plaintiff therefore alleges a violation of federal law. Contrary to what Defendant argues, Plaintiff does not allege that Defendant violated New Jersey's Inspector General Statute and Comptroller Statute, but rather that Defendant violated the Compact. (*See* Compl. ¶¶ 2, 16, 78.)

Plaintiff seeks relief in the form of an injunction and declaration concerning the New Jersey Comptroller's authority to investigate and issue subpoenas to Plaintiff. (*See id.* ¶¶ 72-84.) Such relief seeks to conform the New Jersey Comptroller's conduct with federal law—the Compact—and therefore qualifies as prospective relief as required under *Ex Parte Young. See Del. River Joint Toll Bridge Comm'n v. Sec'y Pa. Dep't of Lab. & Indus.*, No. 20-1898, 2021 WL 97430 (3d Cir. Jan. 12, 2021) (holding that the relief a bi-state entity sought—a declaration concerning Pennsylvania's power to regulate its building under a Compact approved by Congress—fell squarely within the *Ex Parte Young* exception to sovereign immunity). Since the Court finds that Plaintiff seeks "prospective injunctive and declaratory relief to end continuing or ongoing violations of federal law," the Court finds that *Ex Parte Young* applies, and that Plaintiff's claims are not barred by sovereign immunity. *MCI Telecom Corp.*, 271 F.3d at 506.

### C.    Defendant's Issuance of the Subpoenas Does Not Violate the Compact

Having determined that the case is ripe and that Plaintiff's claim is not barred by sovereign immunity, the Court addresses the question of whether Defendant's issuance of the non-self-executing administrative Subpoenas to Plaintiff violates Plaintiff's rights established pursuant to the Compact. (*See* Compl. ¶¶ 72-84.)

It is well settled that "[a] bi-state entity, created by compact, is not subject to the unilateral control of any one of the States that compose the federal system." *HIP Heightened Indep. & Progress, Inc. v. Port Auth. of N.Y. & N.J.*, 693 F.3d 345, 356 (3d Cir. 2012) (quoting *Loc. 542*, 311 F.3d at 281) (internal quotation marks omitted). When states enter into such compacts under the Compact Clause, they "'surrender . . . a portion of their sovereignty' to an 'independently functioning part[ ] of a regional polity and of a national union.'" *Id.* (quoting *Loc. 542*, 311 F.3d at 276). But "'[t]he background notion that a State does not easily cede its sovereignty has

informed [the Supreme Court's] interpretation of interstate compacts.'" *New York v. New Jersey*, 598 U.S. 218, 225 (2023) (quoting *Tarrant Reg'l Water Dist. v. Herrmann*, 569 U.S. 614, 631 (2013)); *see also HIP Heightened Indep. & Progress, Inc.*, 693 F.3d at 357 ("[T]he Supreme Court has stated that courts should not find a surrender [of sovereignty] unless it has been 'expressed in terms too plain to be mistaken.'" (quoting *Loc. 542*, 311 F.3d at 276)).

To determine the exact confines of what sovereignty states have ceded to a bi-state entity under a compact, courts apply principles of contract law. *Wayne Land & Mineral Grp. LLC*, 894 F.3d at 527 (quoting *Tarrant Reg'l Water Dist.*, 569 U.S. at 628). Under these principles, the court must first look to the express terms of the Compact to determine the parties' intent regarding the scope of their surrender of sovereignty to the bi-state entity. *See id.*; *Spence-Parker*, 616 F. Supp. 2d at 515 (quoting *Doe v. Pa. Bd. of Prob. & Parole*, 513 F.3d 95, 105 (3d Cir. 2008) ("The terms of a state's surrender of a portion of its sovereignty to a compact clause entity are found in the compact agreement itself, which is a 'contract[ ] subject to the principles of contract law.'")).

In general, courts undertake this analysis in two steps. First, the court determines whether the action performed by the bi-state entity falls within the bi-state entity's authorized purposes and powers, as determined by the text of the compact. *See Keystone Outdoor Advert. Co., Inc. v. Sec'y of Pa. Dep't of Transp.*, No.19-5951, 2022 WL 2805335, at *6 (E.D. Pa. July 18, 2022) ("determining whether a state can unilaterally regulate the bi-state entity on a particular issue . . . is a question of the rights and powers the states surrendered to the entity in their negotiated Compact" (cleaned up)). If the court finds that the action does fall within the authorized purposes and powers of the bi-state entity, the court next determines whether the states have nonetheless reserved their

authority over the action at issue, either expressly in the Compact or via concurring legislation.[7] *See id.* In sum, the court looks to whether "[t]he compacting states . . . agreed to forfeit their sovereign power." *Del. River Joint Toll Bridge Comm'n v. Oleksiak*, 612 F. Supp. 3d 428, 445 (E.D. Pa. 2020), *aff'd*, No. 20-1898, 2021 WL 97430 (3d Cir. Jan. 12, 2021).

Here, the factual posture does not fit within this general framework. Plaintiff has not acted, and the Court has not been presented with the question of whether Plaintiff's actions fall within its authorized purposes and powers under the Compact. Rather, the Court is presented with the question of whether Defendant's actions—issuance of the Subpoenas—violates Plaintiff's rights established under the Compact. (*See generally* Compl.) When presented with this issue, the Third Circuit instructs the court to look to Defendant's actions to see if they "fall within the scope of the Compact's text." *Wayne Land & Mineral Grp. LLC*, 894 F.3d at 528; *see also Del. River Joint Toll Bridge Comm'n*, 985 F.3d at 195 (reviewing "whether [the secretary's] proposed [regulatory]

---

[7] *See e.g.*, *Keystone Outdoor*, 2022 WL 2805335, at *8 (finding that bi-state entity was acting within authorized purpose by contracting with a third party to host billboards on its property and the compact did not "expressly reserve authority to the states in the area of outdoor advertising," the Secretary of Pennsylvania Department of Transportation could not enforce its outdoor advertising regulations on such billboards); *Del. River Joint Toll Bridge Comm'n v. Sec. of Pa. Dep't of Labor*, 985 F.3d 189, 195-96 (3d Cir. 2021) (finding that because the interstate entity was acting within its express power and purposes when it constructed an "Administration Building" as part of a bridge project and the party states did not expressly reserve their authority to enforce building safety regulations, the Secretary could not enforce the regulations); *Loc. 542*, 311 F.3d at 280 (finding that because the interstate entity had the power to appoint employees, determine qualifications and duties of appointees, and enter into contracts to effectuate its purpose of administering, operating, and maintaining bridges and port facilities, and the party states did not reserve the authority to impose their employee relations acts, the entity was not required to engage in collective bargaining); *Spence-Parker*, 616 F. Supp. 2d at 518-21 (finding that because "the [c]ompact expressly invests in the [a]uthority the power to employ staff 'as it may require for the performance of its duties and to fix and determine their qualifications, duties, compensation, pensions, *terms of office and all other conditions and terms of employment and retention*,'" and the party states did not reserve the authority to apply New Jersey's Conscientious Employee Protection Act or Law Against Discrimination via concurring legislation, the [a]uthority was not subject to the laws (emphasis in original)).

activities . . . fall within the scope of the Compact's text"). The Court finds that Defendant's actions do not fall within the scope of the Compact for the reasons below.

Simply put, there is no text in the Compact to suggest that Plaintiff's authorized purposes and powers include the issuance of subpoenas or self-investigation in the form of subpoenas. (*See generally* Compact.) Without such a purpose or power, there is nothing to bar Defendant from issuing the Subpoenas to Plaintiff.[8] The Court "may not read into [the Compact] language or intent that is simply not there." *Loc. 542*, 311 F.3d at 280.

While Article XII of the Compact includes mandates for Plaintiff to annually submit certain information to the party states and to "cause a management audit of its operational effectiveness and efficiency" by an independent entity at least every five years, (Compact, Art. XII), such mandates, by their plain text, do not equate to or touch upon issuance of subpoenas or Plaintiff's authority in relation to subpoenas. *See Loc. 542*, 311 F.3d at 276 ("Such a surrender of state sovereignty should be treated with great care, and the Supreme Court has stated that courts should not find a surrender unless it has been 'expressed in terms too plain to be mistaken.'") (quoting *Jefferson Branch Bank v. Skelly*, 66 U.S. 436, 446 (1861)). Seeing no text in the Compact to support the argument that subpoena issuance is a purpose and power of Plaintiff, it follows that Defendant's express reservation of such authority either in the language of the Compact or via concurring legislation is unnecessary, as such sovereign authority was never ceded. *See New York*, 598 U.S. at 225 ("'The background notion that a State does not easily cede its sovereignty has informed [the Supreme Court's] interpretation of interstate compacts.'") (quoting *Tarrant Reg'l*

---

[8] To the contrary, one of Plaintiff's enumerated purposes is "[c]o-operation with all other bodies interested or concerned with, or affected by the promotion, development or use of the Delaware River and the Port District." (Compact, Art. I.)

*Water Dist.*, 569 U.S. at 631). Plaintiff's rights under the Compact, accordingly, are not violated by Defendant's issuance of a non-self-executing state administrative subpoena.

Despite having found that Defendant's actions issuing the Subpoenas are not barred under the Compact, the Court finds it necessary to distinguish other cases concerning bi-state entities cited by Plaintiff. Contrary to those cases, Defendant does not seek to "control" or "regulate" Plaintiff, as was the intention in other cases involving bi-state entities. *See, e.g., Keystone Outdoor*, 2022 WL 2805335, at *3 (holding that the Secretary of Pennsylvania Department of Transportation violated the Compact by attempting to enforce its outdoor advertising regulations on billboards located on the Delaware River Port Authority's property); *Del. River Joint Toll Bridge Comm'n*, 985 F.3d at 192 (holding that the Secretary of Pennsylvania Department of Labor violated a compact by attempting to enforce its building and safety regulations against the bi-state entity). Comparing cases involving the act of being issued a subpoena with cases where parties sought enforcement of the use of collective bargaining laws, *Loc. 542*, 311 F.3d at 274-75, employment protection laws and laws against discrimination, *Spence-Parker*, 616 F. Supp. 2d at 518-21, construction codes, *Del. River Joint Toll Bridge Comm'n*, 985 F.3d at 192-93, and billboard regulations, *Keystone Outdoor*, 2022 WL 2805335, at *3, is inapposite. Here, Defendant has no authority to control or regulate Plaintiff, nor does he claim to have such authority.[9] The Subpoenas are non-self-executing state administrative subpoenas with which Plaintiff has no obligation to

---

[9] Perhaps a more appropriate comparison is likening the issuance of a non-self-executing administrative subpoena with the act of bringing a lawsuit, which Defendant *explicitly* has the ability to do by the express terms of the Compact. (*See* Compact, Art. IV ("For the effectuation of its authorized purposes [Plaintiff] is hereby granted the . . . power[] [t]o sue and be sued.").)

comply, and Defendant has no ability to enforce independently.[10] Plaintiff is merely being subjected to the *issuance* of a non-self-executing state administrative subpoena. As such, Plaintiff's cases are not applicable, and the Court finds that Defendant's issuance of a non-self-executing state administrative subpoena to Plaintiff, by itself, does not violate the Compact.

## IV.    CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is granted. Also pending before the Court is Plaintiff's Cross-Motion for Summary Judgment. (ECF No. 10.) Because the Court grants Defendant's Motion to Dismiss, Plaintiff's pending Motion for Summary Judgment is denied as moot. Should Plaintiff file an amended complaint, Plaintiff may refile its motion for summary judgment at that time. The Court will issue an Order consistent with this Memorandum Opinion.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

---

[10] To compel enforcement of the Subpoenas, the Comptroller must "apply to the Superior Court and the court may order the person to appear and give testimony or produce the books, papers or other documents, as applicable." N.J. Stat. Ann. 52:15B-8. Only after the Superior Court orders compliance with the Subpoenas may "[a]ny person failing to obey the court's order . . . be punished by the court as for contempt." *Id.*